**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:22-cv-80418-MIDDLEBROOKS/MATTHEWMAN

CITY OF ATLANTA POLICE
OFFICERS' PENSION PLAN and
CITY OF ATLANTA FIREFIGHTERS'
PENSION PLAN, Individually and On
Behalf of All Others Similarly Situated,

                       Plaintiff,

    v.

CELSIUS HOLDINGS, INC., JOHN
FIELDLY, and EDWIN NEGRON-
CARBALLO.

                       Defendants.

CLASS ACTION

## DEFENDANTS' MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

**<u>TABLE OF CONTENTS</u>**

                                                                                    **Page**

MOTION TO DISMISS ........................................................................................... 1

MEMORANDUM OF LAW ................................................................................... 1

I.      FACTUAL BACKGROUND ....................................................................... 4

        A.      The Company and the Individual Defendants. ................................. 4

        B.      The Company's Exponential Growth in Fiscal-Year 2021 .................. 4

        C.      Celsius Issues a Restatement. ........................................................... 5

II.     APPLICABLE LEGAL STANDARD .......................................................... 7

III.    ARGUMENT AND CITATION TO AUTHORITY ...................................... 8

        A.      The Complaint Should Be Dismissed For Failure to Plead Scienter
                Adequately. ....................................................................................... 8

                1.      Misinterpreting GAAP Does Not Establish a Strong Inference of
                        Scienter. ................................................................................. 10

                2.      No Strong Inference of Scienter Arises from the Restatement. ............... 12

                3.      The Individual Defendants' Trading History Rebuts an Inference
                        of Scienter. ............................................................................. 14

                4.      The Individual Defendants' Bonuses Do Not Establish a Strong
                        Inference of Scienter. .............................................................. 16

                5.      Senior Leadership Roles Do Not Establish a Strong Inference of
                        Scienter. ................................................................................. 17

                6.      The Confidential Witnesses Do Not Support a Strong Inference of
                        Scienter. ................................................................................. 18

        B.      Conclusions About Internal Controls Constitute Non-Actionable Opinions........ 18

IV.     CONCLUSION............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Broad v. Rockwell Int'l Corp.*,
   642 F.2d 929 (5th Cir. 1981) ................................................................................9

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) .................................................................4, 8, 17

*Burbidge v. Adtran, Inc.*,
   No. 5:20-cv-50-LCB, 2021 U.S. Dist. LEXIS 146185 (N.D. Ala. Mar. 31, 2021) .................13

*Carvelli v. Ocwen Fin. Corp.*,
   934 F.3d 1307 (11th Cir. 2019) ..............................................................7, 18, 19

*Climo v. Office Depot, Inc.*,
   No. 11-80364-CIV-RYSKAMP/VITUNAC, 2012 U.S. Dist. LEXIS 200377
   (S.D. Fla. May 23, 2012) ...................................................................................12

*Constr. Laborers Pension Tr. of Greater St. Louis v. Neurocrine Biosciences, Inc.*,
   No. 07CV1111-IEG-RBB, 2008 U.S. Dist. LEXIS 38899 (S.D. Cal. May 12, 2008) ............16

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ..............................................................................4

*Druskin v. Answerthink, Inc.*,
   299 F. Supp. 2d 1307 (S.D. Fla. 2004) .............................................................14, 15

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
   594 F.3d 783 (11th Cir. 2010) ..........................................................11, 15, 16, 17

*Fin. Acq. Partners LP v. Blackwell*,
   440 F.3d 278 (5th Cir. 2006) .........................................................................10, 11

*Fryman v. Atlas Fin. Holdings, Inc.*,
   No. 18-cv-01640, 2022 U.S. Dist. LEXIS 70597 (N.D. Ill. Apr. 18, 2022) ...........................19

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) .......................................................................7, 10

*In re HomeBanc Corp. Sec. Litig.*,
   706 F. Supp. 2d 1336 (N.D. Ga. 2010) ...................................................................8

*In re Jiangbo Pharm., Inc., Sec. Litig.*,
   884 F. Supp. 2d 1243 (S.D. Fla. 2012) ................................................................17

*In re John Alden Fin. Corp. Secs. Litig.*,
  249 F. Supp.2d 1273 (S.D. Fla. 2003) ..................................................................14

*In re Livent Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001)...................................................................13

*In re Med/Waste, Inc., Sec. Litig.*,
  No. 99-1684-CIV-GOLD, 2000 U.S. Dist. LEXIS 22505 (S.D. Fla. Aug. 30, 2000).............12

*In re Serologicals Sec. Litig.*,
  No. 1:00-cv-1025, 2003 U.S. Dist. LEXIS 27465 (N.D. Ga. Feb. 20, 2003).........................12

*In re Smith Gardner Sec. Litig.*,
  214 F. Supp. 2d 1291 (S.D. Fla. 2002) ..................................................................17

*In re Sportsline.com Sec. Litig.*,
  366 F. Supp. 2d 1159 (S.D. Fla. 2004) ................................................2, 8, 10, 17

*Lanfear v. Home Depot, Inc.*,
  679 F.3d 1267 (11th Cir. 2012) ..............................................................................7

*McDonald v. Alan Bush Brokerage Co.*,
  863 F.2d 809 (11th Cir. 1989) ...............................................................................9

*Metro. Transp. Auth. Defined Ben. Pension Plan Master Tr. v. Welbilt, Inc.*,
  No. 8:18-cv-3007-T-30AEP, 2020 U.S. Dist. LEXIS 33664 (M.D. Fla. Feb. 6, 2020) ..........13

*Mizzarro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ...............................................................8, 15, 18

*Mulvaney v. Geo Grp., Inc.*,
  237 F. Supp. 3d 1308 (S.D. Fla. 2017) ..................................................................17

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)................................................................................................19

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ................................................................................15

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot*,
  No. 07-81038-CIV-HURLEY, 2010 U.S. Dist. LEXIS 165829 (S.D. Fla. Jan. 14, 2010) .....18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...................................................................................9, 12, 13

*Thorpe v. Walter Inv. Mgmt., Corp.*,
  111 F. Supp. 3d 1336 (S.D. Fla. 2015) ..............................................................7, 16

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    2017 U.S. Dist. LEXIS 45501 (S.D.N.Y. Mar. 28, 2017) ......................................................19

*Ziemba v. Cascade Int'l, Inc.*,
    256 F.3d 1194 (11th Cir. 2001) ...........................................................................................10

**RULES**

Fed. R. Civ. P. 9(b) .....................................................................................................................7, 8

Fed. R. Civ. P. 12(b)(6)....................................................................................................................7

**STATUTES**

15 U.S.C. § 78j(b) Section 10(b) ..................................................................................................1, 8

15 U.S.C. § 78t(b) Section 20(a)...................................................................................................1, 8

15 U.S.C. § 78u-4(b)(1), (2) ............................................................................................................2

15 U.S.C. § 78u-4(b)(2) ...................................................................................................................8

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b).....................................2, 7, 8, 10

**OTHER AUTHORITIES**

S. Rep. No. 104-98, *reprinted* in 1995 U.S.C.A.A.N. 679, 690 .....................................................2

## MOTION TO DISMISS

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, *et seq.*, Defendants Celsius Holdings, Inc. ("Celsius" or the "Company"), John Fieldly, and Edwin Negron-Carballo (with Mr. Fieldly, collectively, the "Individual Defendants") move to dismiss Plaintiff's Amended Complaint for Violations of the Federal Securities Laws (the "Complaint" or "Compl.") (DE 44) with prejudice.  In support of the Motion, Defendants submit the following Memorandum of Law.

## MEMORANDUM OF LAW

As sometimes happens at public companies, Celsius restated its financial results for two quarters in fiscal-year 2021 after reevaluating its past interpretation of certain accounting principles.  Throughout that year, the Company applied Generally Accepted Accounting Principles ("GAAP") to account for certain non-cash expenses related to share-based compensation.  After subsequent discussions with its auditors, however, the Company determined it had misinterpreted the relevant GAAP guidance and, as a result, understated those non-cash expenses in the second and third quarters.  Celsius promptly and appropriately notified investors and restated its non-cash expenses for those two quarters.  The restatement had no effect on the revenue and cashflows that the Company reported in those quarters, and, by extension, no effect on key financial metrics like Adjusted Earnings Before Income Taxes, Depreciation, and Amortization ("Adjusted EBITDA").

While the securities laws encourage (and in some instances require) such prompt disclosures, Plaintiff seeks to subvert those laws by bringing a classic strike suit premised solely on the market's alleged reaction to the restatement.  The Complaint asserts Securities Exchange Act claims under Section 10(b), 15 U.S.C. § 78j(b), against all Defendants and under Section 20(a), 15 U.S.C. § 78t(b), against the Individual Defendants.

1

This case exemplifies why Congress passed the PSLRA.  Through its passage, Congress sought to address strike suits that "chill corporate disclosure" and that are "often based on nothing more than a company's announcement of bad news, not evidence of fraud."  S. Rep. No. 104-98, *reprinted* in 1995 U.S.C.A.A.N. 679, 690.

To stem the tide of frivolous strike suits, the PSLRA imposed heightened pleading standards, including the requirements that a plaintiff allege specific facts establishing (1) a material misstatement and (2) a strong inference of scienter (or an intent to deceive).  15 U.S.C. § 78u-4(b)(1), (2).  The Complaint falls far short of this standard because its claims hang on nothing more than Celsius' past misinterpretation of the relevant GAAP guidance – but that is not enough to plead fraud.  *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1165 (S.D. Fla. 2004).  Other than highlighting issues Celsius publicly disclosed, the Complaint alleges no specific facts about the alleged fraud and bears all the hallmarks of unactionable fraud by hindsight.

***The Complaint Does Not Adequately Plead Scienter***:  The failure to interpret GAAP correctly and a restatement, without more, simply cannot serve as a basis to infer scienter under the PSLRA.  In certain limited situations, courts might consider a GAAP violation as an indication of scienter if accompanied by "red flags" that should have put defendants on notice of an alleged fraud (for example, a whistleblower).  But the Complaint offers nothing of that kind.  Instead, the Complaint twists its analysis in a knot by characterizing the misinterpretation of GAAP as a red flag – contending the interpretation of GAAP here was so *easy* that a failure to interpret it correctly is severely reckless.  The Complaint improperly asks the Court to accept this legal conclusion based on an anonymous expert's unfounded and sweeping opinions, not particularized factual allegations as required by the PSLRA.  The Complaint also cherry picks allegations to prop up assertions about the Individual Defendants' motives and opportunities to commit the alleged fraud.

2

For example, the Complaint raises an alarm about 20,000 shares Mr. Fieldly sold during the Class Period, but does not disclose that he sold 150,000 shares immediately prior to the Class Period, retained hundreds of thousands of shares throughout the Class Period, and saw his position decline in value over that period. The Complaint also hides that Mr. Negron-Carballo sold no shares during the Class Period and similarly saw his position lose value. These considerations make the Complaint's theory completely implausible. The Complaint's contentions about the Individual Defendants' purported motives to achieve cash bonuses also fail because the Complaint fails to allege they received extraordinary bonuses tied to any alleged wrongdoing. Finally, the Complaint includes allegations tied to several confidential witnesses – not a single one of whom mentions any alleged fraud. At worst, the confidential witnesses accuse executives at a high-growth company of wanting to conserve cash, not commit fraud.

*Statements of Opinion are Not Actionable:* Celsius' fiscal-year 2021 financials filings disclosed the Individual Defendants conducted a review and concluded Celsius maintained effective internal controls. Celsius later disclosed it had identified material weaknesses in those controls. As with scienter, the Complaint contends this disclosure alone satisfies the PSLRA's heightened standards. But the Complaint fails to plead particularized facts to show the Individual Defendants had reached a different conclusion back in fiscal-year 2021 or the falsity of some embedded fact in these opinion statements – *e.g.*, that the Individual Defendants reviewed the controls.

The Complaint fails to meet the PSLRA's exacting standards. It is an opportunistic attempt to punish Celsius for its proper public disclosures and should be dismissed with prejudice.

3

I.      **FACTUAL BACKGROUND**

A.      **The Company and the Individual Defendants.**

Celsius is based in Boca Raton, Florida, and sells its beverage products in the energy drink and liquid supplement markets in the U.S. and abroad.[1]  It competes with a "large number of manufacturers, most of which have substantially greater financial, marketing and distribution resources and name recognition than" Celsius.[2]  Those competitors include The Coca-Cola Company, Monster Energy, and Red Bull.[3]  Though small in comparison, Celsius has grown rapidly, expanding from 154 to 225 employees in 2021.[4]

The Individual Defendants are current and former Celsius executives.  Mr. Fieldly has served as Celsius' CEO since 2018 and as Chairman of the Board of Directors (the "Board") since August 2021.  (Compl. ¶ 27).  Mr. Negron-Carballo served as Celsius' CFO during the Class Period.  (*Id.* ¶ 28).  Mr. Negron-Carballo retired as CFO in April 2022, but remains a Celsius employee to "ensure a smooth transition" for his successor.  (*Id.* ¶ 17).

B.      **The Company's Exponential Growth in Fiscal-Year 2021.**

The Complaint acknowledges Celsius' remarkable growth in fiscal-year 2021.  (*Id.* ¶ 3).  It describes Celsius' revenues as "growing exponentially, from $50 million in the first quarter, to $65 million in the second, and $94.9 million in the third quarter."  (*Id.*).  And the Complaint relays the market's positive reaction to Celsius' rising revenues: "Investors and analysts alike cheered as

---

[1] Celsius Holdings, Inc., Annual Report (Form 10-K), at 1 (Mar. 16, 2022), attached as Ex. A to the Declaration of Theodore J. Sawicki ("Decl.") filed herewith.  The Court may consider documents the complaint incorporates by reference.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  In securities cases, the Court may also take judicial notice of relevant documents filed with the SEC.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

[2] Celsius Holdings, Inc., Annual Report (Form 10-K), at 12 (Mar. 16, 2022) (Decl. Ex. A).

[3] *Id.*

[4] *Id.* at 11.

4

Celsius experienced this growth, and sent its stock price soaring, from $58.54 on January 4, 2021, to a high of $108.07 on November 1, 2021." (*Id.*).

The Complaint acknowledges this "massive growth came at a cost," observing that Celsius' net income had remained stagnant relative to revenue. (*Id.* ¶ 41). As it did with revenue, the Complaint describes analysts' reaction to the profits Celsius reported. (*Id.* ¶¶ 51-54). For example, a week after Celsius reported net income of $585,424 for the first quarter of fiscal-year 2021 (against $50 million in revenue), an analyst "cautioned that 'Celsius has operated at a loss for most of its recent history'" and had reported profit margins in the negative double digits in prior years. (*Id.* ¶ 51). The Complaint also notes that analysts maintained a focus on Celsius' cash expenses in 2021 because of global supply chain issues. (*Id.*).

### C.     Celsius Issues a Restatement.

On March 1, 2022, Celsius announced it would restate its unaudited consolidated financial statements for the second and third quarters of 2021.[5] The announcement explained that the previous day, February 28, 2022, the Board's Audit Committee had decided to restate the unaudited statements for those periods after discussions with management, Celsius' current auditor (Ernst & Young), and its previous auditor (Assurance Dimensions).[6] Celsius retained Ernst & Young in June 2021, making the fiscal-year 2021 financial statements the first ones Ernst & Young audited for the Company.[7] Celsius explained that, during the preparation of its fiscal-year 2021 audited financial statements, the Company concluded it had understated the non-cash expense of share-based compensation associated with some former employees and directors in the second and

---

[5] Celsius Holdings, Inc., Current Report (Form 8-K), at 1 (Mar. 1, 2022) (Decl. Ex. B).
[6] *Id.*
[7] Celsius Holdings, Inc., Annual Report (Form 10-K), at F-2, F-4 (Mar. 16, 2022) (Decl. Ex. A).

third quarters as a result of misinterpreting GAAP.[8]  Celsius further disclosed the effect of this restatement on net income by disclosing a restated net income of $779,991 for the second quarter (compared to the $3,960,344 originally reported) and negative net income of $9,370,647 for the third quarter (compared to the $2,745,791 originally reported).[9]  The Company did not restate the revenue and cashflow reported for those quarters, and the restatement had no impact on key financial metrics like Adjusted EBITDA.[10]

As to the nature of the GAAP error, the Complaint asserts that, pursuant to the relevant GAAP provision, FASB ASC Topic 718 ("ASC 718"), "stock option compensation expenses are supposed to be calculated and recognized on a company's income statement using the fair market value of the stock as of the date of termination or retirement of an employee."  (Compl. ¶ 69).  During a March 1, 2022 investor call, Mr. Fieldly explained that the error in applying ASC 718 at least in part arose from the fact that some of the former employees and retired directors at issue would continue to provide services to Celsius under contracts past the date of their termination or retirement: "It was also – it's a technical aspect there because some of them are still providing services through contractual services . . . . That was an error in interpretation there on those stock awards."  (*Id*. ¶ 88).  In other words, in light of their service obligations, the Company originally understood the date of termination for the relevant employees and directors had not yet occurred under the Company's interpretation of ACS 718.  That, in turn, meant the Company could continue to recognize the expense of their share-based compensation over time and until their services to the Company ceased.  The restatement corrected this misinterpretation of GAAP.  At the same

---

[8] Celsius Holdings, Inc., Current Report (Form 8-K), at 1-2 (Mar. 1, 2022) (Decl. Ex. B).
[9] *Id*.
[10] *Id*.

time, Celsius disclosed management had concluded that "[a]s a result of a breakdown in the design of controls over modifications to their share-based compensation . . . a material weakness exist[ed] in the Company's internal controls over financial reporting." (*Id*. ¶ 137).

Celsius filed its Form 10-K for fiscal-year 2021 on March 16, 2022, which included the restated financials.[11] The restatement did not impact the tremendous revenue growth, cash, and other key metrics Celsius reported in fiscal-year 2021.[12] Indeed, Celsius' stock price *rose* on the first trading day after Celsius issued the 10-K.[13] The Complaint defines a putative "Class Period" that runs from August 12, 2021, Celsius' announcement of its unaudited second quarter results, to March 1, 2022, the date it announced the restatement. (Compl. ¶ 1).

## II.    APPLICABLE LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) mandates dismissal when a complaint "fail[s] to state a claim upon which relief can be granted." To prevail on a securities fraud claim, a complaint must plead, among other elements, (1) a material misstatement, and (2) scienter. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). Although the Court must assume the truth of facts alleged in the Complaint, "[c]onclusory allegations will not suffice to state a claim." *Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1351 (S.D. Fla. 2015). A plaintiff asserting securities fraud must not only avoid conclusory allegations, but also must plead such fraud with particularity because the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA apply to such a claim. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1263-65 (11th Cir. 2006).

---

[11] Celsius Holdings, Inc., Annual Report (Form 10-K), at F-26 (Mar. 16, 2022) (Decl. Ex. A).
[12] *Id*. at F-27.
[13] Celsius historical stock prices downloaded from Yahoo! Finance (Decl. Ex. C). The Court can take judicial notice of stock prices. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1282 n.17 (11th Cir. 2012).

For its part, Rule 9(b) "requires that in all averments of fraud the circumstances constituting fraud be stated with particularity." *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1162. "The PSLRA has raised the pleading requirements in private securities lawsuits" above those set in Rule 9(b) and requires a plaintiff to plead a material misstatement and scienter "with particularity." *Id.* The Complaint utterly fails to meet these requirements, and the Court should therefore dismiss the action with prejudice. [14]

## III.    ARGUMENT AND CITATION TO AUTHORITY

### A.    The Complaint Should Be Dismissed For Failure to Plead Scienter Adequately.

To meet the PSLRA's heightened standard for pleading scienter, a complaint must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A complaint must allege with particularity "that the defendants either intended to defraud investors or were severely reckless when they made allegedly materially false or incomplete statements." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008). Failure to meet this requirement mandates dismissal. *See In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1352 (N.D. Ga. 2010) (stating that the failure to establish any one of the elements of a securities fraud claim, including a "strong inference of scienter," is sufficient grounds to dismiss a complaint).

In the Eleventh Circuit, "a showing of mere motive and opportunity is insufficient to plead scienter." *Bryant*, 187 F.3d at 1287. A mistake or error similarly falls short: "[s]evere recklessness

---

[14] Because the Complaint does not plead a primary violation under Section 10(b), no control person liability under Section 20(a) exists as a matter of law. *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1175.

is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989) (quoting *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir. 1981)).

"To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). In performing this comparative analysis, the court "must consider not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.*

The Complaint asks the Court to infer that Defendants intended to defraud investors or acted with severe recklessness based on the following allegations: (1) Celsius failed to apply GAAP correctly (Compl. ¶¶ 2, 9, 76-79, 84, 90, 96); (2) Celsius restated its past financials results to correct its errors (*id.* ¶¶ 2, 84, 90-91, 100, 133, 136); (3) Mr. Fieldly sold stock during the Class Period (*id.* ¶¶ 16, 27, 55-57, 139); (4) the Individual Defendants had the motive to overstate net income to achieve certain bonus benchmarks (*id.* ¶¶ 140-41); (5) the Individual Defendants were senior executives and had direct involvement in the negotiation of the share-based compensation at issue (*id.* ¶¶ 27-29, 146-48); and (6) confidential witnesses identified faults within Celsius' operations (*id.* ¶¶ 30-35, 58, 143, 147).

Whether considered individually or collectively, these allegations fail to give rise to a strong inference of scienter for the reasons outlined below.

### 1.   *Misinterpreting GAAP Does Not Establish a Strong Inference of Scienter.*

The Complaint's claims wholly rest on Celsius' error in applying GAAP.  (*Id.* ¶¶ 76-79).

Plaintiff chose shaky ground, because courts have held allegations concerning "a defendant's

failure to follow GAAP or publication of inaccurate accounting figures" do not alone state a

securities fraud claim.  *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1165.  Rather, such

allegations, at best, raise an inference management "failed to prepare or review the financial

statements in accordance with an accepted standard of reasonable care."  *Garfield*, 466 F.3d at

1270.   GAAP violations, "without more, may establish negligence, but can never establish

scienter."  *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1165.

In certain circumstances, allegations of GAAP violations, when combined "with

allegations of ignoring red flags," may support a securities fraud claim.  *Ziemba v. Cascade Int'l,

Inc.*, 256 F.3d 1194, 1209-10 (11th Cir. 2001).  The Complaint is utterly silent on any of the red

flags one might expect to see, such as allegations that a whistleblower raised concerns or warnings

from analysts.  *Id.* at 1210.  Unable to plead actual "red flags," the Complaint contends that the

erroneous application of ASC 718 acts as the "red flag" itself, touting an anonymous expert's

opinion that ASC 718 offers "unequivocal" guidance.  (Compl. ¶¶ 6, 75).  In other words, the

Complaint's flawed theory is that ASC 718 is so straightforward that any erroneous application of

its guidance is severely reckless.

The Court should disregard this contention for several reasons.  First, the Court should

decline to consider the opinions of the cited so-called expert – whose qualifications remain a

mystery – because conclusory expert "opinions cannot substitute for facts under the PSLRA."  *Fin.

Acq. Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006).  The purported expert offers

only conclusory opinions, including the sweeping opinion that the entire "accounting community

10

considers" ASC 718 "unequivocal with regard to expensing share-based compensation on income statements." (Compl. ¶ 6, 75). Such opinions do not deserve the Court's consideration on a motion to dismiss. *Fin. Acq. Partners LP*, 440 F.3d at 285-86 (affirming decision to disregard expert's opinion and deeming consideration of that opinion inappropriate at motion to dismiss stage).

Second, the Court does not have to accept as true the Complaint's contention that violating ASC 718 raises an inference of severe recklessness, because the Eleventh Circuit has recognized that contention as a legal conclusion, not a factual allegation. *See Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 792 (11th Cir. 2010) (holding the Court was "not required to accept" the legal conclusion that the accounting guidance at issue "was a simple accounting policy, a violation of which would be reckless.").

Finally, a comparison of the Complaint's allegations about ASC 718's application with Celsius' statements about the accounting errors suggests that applying ASC 718 to the awards involved a certain amount of subjectivity, which cuts against a strong inference of scienter. The Complaint describes ASC 718's guidance as "unequivocal" with respect to accounting for the expense of share-based compensation for terminated or retired employees. (Compl. ¶¶ 6, 75). The Complaint asserts that, upon the individuals' termination or resignation, Celsius needed to determine whether the "original vesting conditions" for their awards were still capable of "achievement." (*Id.* ¶¶ 70-71). If Celsius concluded the original vesting conditions were not capable of achievement, it should have recognized the cost of the awards as of the termination or resignation date. (*Id.* ¶ 71). The Complaint identifies the original vesting conditions here as "additional years of service . . . ." (*Id.*). During an investor call, Mr. Fieldly explained that an ambiguity arose when applying ASC 718 to the awards at issue because some of the former employees would continue to provide services to Celsius – following their termination or

11

resignation – under contracts with Celsius.  "[I]n regards to some of the employees, it was also – it's a technical aspect there because some of them are still providing services through contractual services . . . . That was an error in interpretation there on those stock awards." (*Id.* ¶ 88).  The inference that the continued service of some employees complicated the analysis of the original vesting conditions and caused the Company to misapply ASC 718 in good faith or, at worst, through negligence, is at least as strong or stronger than any inference of severe recklessness. *Tellabs, Inc.*, 551 U.S. at 323-24 ("a court must consider plausible, nonculpable explanations for the defendant's conduct").

## 2. *No Strong Inference of Scienter Arises from the Restatement.*

The Complaint improperly suggests the restatement alone should raise an inference of scienter.  But "courts have routinely held that a restatement in and of itself is not sufficient to establish scienter." *Climo v. Office Depot, Inc.*, No. 11-80364-CIV-RYSKAMP/VITUNAC, 2012 U.S. Dist. LEXIS 200377, at *16 (S.D. Fla. May 23, 2012).  At best, the restatement only indicates what Celsius disclosed – it misapplied GAAP. *Id.* ("A restatement means only that after issuing a financial statement, a company learns that these financials can no longer be relied upon.").  And a restatement's magnitude does not qualify as a red flag that can bootstrap GAAP errors into an inference of scienter. *In re Med/Waste, Inc., Sec. Litig.*, No. 99-1684-CIV-GOLD, 2000 U.S. Dist. LEXIS 22505, at *28 n.9 (S.D. Fla. Aug. 30, 2000) (GAAP errors and "the magnitude of a financial restatement" not enough to support an inference of "extreme recklessness" without "additional facts, circumstances or 'red flags' from which" a strong inference of scienter would arise).

In the end, the Complaint's contention that the restatement creates a strong inference of scienter "exemplifies pleading fraud by hindsight, an impermissible method of pleading fraud." *In re Serologicals Sec. Litig.*, No. 1:00-cv-1025, 2003 U.S. Dist. LEXIS 27465, at *34, *48-49

(N.D. Ga. Feb. 20, 2003) (dismissing complaint and rejecting plaintiffs' argument that the magnitude of defendants' restatement created a strong inference of scienter).  And the same holds true for the Complaint's allegations concerning Celsius' disclosure of material weaknesses in its internal controls.  *See Burbidge v. Adtran, Inc.*, No. 5:20-cv-50-LCB, 2021 U.S. Dist. LEXIS 146185, at *31 (N.D. Ala. Mar. 31, 2021) (claim premised on disclosure of material weaknesses in internal controls "akin to 'fraud by hindsight,' and comes up short as a matter of law").

Contrary to the Complaint's faulty theory, Celsius' timely restatement and disclosure of material weaknesses raise an inference of *good faith*, not an intent to violate the federal securities laws.  *See generally Tellabs, Inc.*, 551 U.S. at 323-24.  Celsius announced the restatement on March 1, 2022, a day after the Audit Committee concluded – with the advice of its auditors – that Celsius needed to undertake the restatement.[15]  Two weeks later, Celsius filed its Form 10-K for fiscal-year 2021, which included the restated results.[16]

Given the speed with which Defendants acted, the "strongest inference" to draw is that Defendants were "pursuing the truth – not attempting to deceive investors."  *Metro. Transp. Auth. Defined Ben. Pension Plan Master Tr. v. Welbilt, Inc.*, No. 8:18-cv-3007-T-30AEP, 2020 U.S. Dist. LEXIS 33664, at *15 (M.D. Fla. Feb. 6, 2020).  This quick disclosure also stands completely at odds with the Complaint's theory that the Individual Defendants intentionally misstated expenses because they "wanted the ride" of Celsius' stock gains "to continue as long as possible . . . ." (Compl. ¶ 15).  The Complaint does not address this contradiction, because it makes no sense.  Nor does the contention Defendants announced bad news during a market sell-off to "lessen" its impact.  (*Id.* ¶ 18).  The Court need not accept such nonsensical allegations as true.  *In re Livent*

---

[15] Celsius Holdings, Inc., Current Report (Form 8-K), at 1 (Mar. 1, 2022) (Decl. Ex. B).
[16] Celsius Holdings, Inc., Annual Report (Form 10-K), at F26-F27 (Mar. 16, 2022) (Decl. Ex. A).

*Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent . . . .").

### 3.   *The Individual Defendants' Trading History Rebuts an Inference of Scienter.*

The Complaint alleges Mr. Fieldly "was motivated to issue false statements" so that he could "cash out" his Celsius "stock at artificially inflated prices" – *i.e.*, his sale of 20,000 shares in December 2021.  (Compl. ¶ 139).  When a complaint contends stock sales raise a strong inference of scienter, "plaintiffs bear the burden of showing that sales by insiders were in fact unusual or suspicious in amount and in timing."  *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1335 (S.D. Fla. 2004) (internal quotation marks and citation omitted).  Whether the Complaint here has met that burden turns upon three factors.  *Id*. at 1336 (citing *In re John Alden Fin. Corp. Secs. Litig.*, 249 F. Supp.2d 1273, 1282 (S.D. Fla. 2003)).

The first factor examines whether all the Individual Defendants sold stock.  *Druskin*, 299 F. Supp. 2d at 1336.  Here, although the Complaint casts Mr. Negron-Carballo as a key player in the alleged fraud, he did not sell any stock during the Class Period.  Indeed, the value of his position declined by more than 14% over the Class Period.[17]  The fact Mr. Negron-Carballo did not sell stock and actually saw the value of his position decline during the Class Period rebuts any inference of scienter.  *Id*.  (no inference of scienter where "focal point" of fraud allegations sold no stock and saw his holdings decline during class period).

---

[17] Celsius' stock price was $73.32 on August 12, 2021 and $62.80 on March 1, 2022 representing a 14.35% decrease over the Class Period.  *See* Celsius historical stock prices downloaded from Yahoo! Finance (Decl. Ex. C).  The last Form 4 filed for Mr. Negron-Carballo, filed in June 2021, showed him owning 7,614 shares as of that date.  *See* Negron-Carballo, Statement of Changes in Beneficial Ownership (Form 4) (Jun. 15, 2021) (Decl. Ex. D).

The second factor examines the percentage of a defendant's holdings sold during the class period.  *Id.*  The Complaint's contention that Mr. Fieldly desired to "cash out" falls apart when one looks at the small number of shares he sold within the Class Period.  On December 27, 2021, Mr. Fieldly sold a mere 7% of his holdings (20,000 out of the 285,252 shares).[18]  This was his only sale during the Class Period.  This sale of a relatively small percentage of total holdings is inconsistent with an inference of scienter.  *Id.* at 1336-37  (no inference of scienter where executive sold a "relatively small fraction of his shares" within class period – 9% of his position).  Similarly, Mr. Fieldly and Mr. Negron-Caballo held large positions through the Class Period, which undercuts any inference of scienter.  *Mizzaro*, 544 F.3d at 1253 (citing *Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008) ("[T]he fact that the defendants are not alleged to have sold the stock at the inflated prices meant that they stood to lose a lot of money if the value of [the corporate defendant's] stock fell."))[19]

The final factor compares class period stock sales with a defendant's trading activity outside the class period.  *Druskin*, 299 F. Supp. 2d at 1336-37.  Here, the Complaint is silent on Mr. Fieldly's trading outside the Class Period.  This is a fatal defect, because it leaves the Court with "no way to determine from the complaint" whether Class Period sales were "suspicious enough to add to an inference of scienter."  *Edward J. Goodman Life Income Tr.*, 594 F.3d at 793.  Avoiding Mr. Fieldly's trading history was strategic, as that history further undercuts the Complaint's theory.  Mr. Fieldly's largest fiscal-year 2021 stock sale occurred two months prior

---

[18] Fieldly, Statement of Changes in Beneficial Ownership (Form 4) (Jan. 4, 2022) (Decl. Ex. E).
[19] Mr. Fieldly similarly took a substantial loss on the value of his shares throughout the Class Period.  The 265,252 shares Mr. Fieldly retained throughout the Class Period declined in value by more than 14%.   *See* Fieldly, Statement of Changes in Beneficial Ownership (Form 4) (Jan. 4, 2022) (Decl. Ex. E).

to the start of the Class Period, in June 2021, when he sold 34.5% of his Celsius holdings.[20]   A

significant sale in the run up to the Class Period and a relatively small sale during it do not

constitute the type of trading that would raise a strong inference of scienter.   *See Constr. Laborers*

*Pension Tr. of Greater St. Louis v. Neurocrine Biosciences, Inc.*, No. 07CV1111-IEG-RBB, 2008

U.S. Dist. LEXIS 38899, at *24 (S.D. Cal. May 12, 2008) (no inference of scienter where

defendant sold 6.2% of his position during class period – less than he sold in the prior year).   This

Court should give the Complaint's "conclusory allegations of insider trading no weight in

considering the inference of scienter raised by the complaint." *Edward J. Goodman Life Income*

*Tr.*, 594 F.3d at 793.

### 4.   *The Individual Defendants' Bonuses Do Not Establish a Strong Inference of Scienter.*

The Complaint contends that, "in order to optimize their annual cash bonus for FY 2021,

the Individual Defendants were motivated to inflate" net income.  (Compl. ¶ 140).  An allegation

that a defendant received a "standard incentive-based bonus has limited probative value for

scienter." *Edward J. Goodman Life Income Tr.*, 595 F. Supp. 2d 1253, 1275 (M.D. Fla. 2009).

Instead, to raise an inference of scienter, a complaint must reveal the "extraordinary" nature of the

bonuses. *Thorpe*, 111 F. Supp. 3d at 1364.  Here, the Complaint fails to explain how the Individual

Defendants' Class Period bonuses were in any way extraordinary.  (*See generally* Compl. ¶¶ 140-

41).  Indeed, the Complaint does not allege the Individual Defendants received a higher bonus than

they otherwise would have absent the erroneous amount of net income Celsius reported for two

quarters in fiscal-year 2021.   Notably, Celsius determined fiscal-year 2021 bonuses for the

---

[20] Fieldly, Statement of Changes in Beneficial Ownership (Form 4) (Jun. 15, 2021) (Decl. Ex. F).

Individual Defendants based on quantitative and qualitative factors, including factors like revenue and Adjusted EBITDA, which the Company did not restate.[21]

Accordingly, the Complaint's conclusory allegations about the Individual Defendants' bonuses fail to raise an inference of scienter. *Mulvaney v. Geo Grp., Inc.*, 237 F. Supp. 3d 1308, 1323 (S.D. Fla. 2017) (rejecting motive and opportunity allegations without "additional facts to show how Individual Defendants benefitted from the allegedly misleading statements").

### 5. *Senior Leadership Roles Do Not Establish a Strong Inference of Scienter.*

The Complaint contends that, because the Individual Defendants' held roles as senior executives, they either knew of or recklessly disregarded the accounting errors at issue. (Compl. ¶¶ 77, 146-48). This is nothing more than an allegation the Individual Defendants had the opportunity to commit fraud, which fails to establish scienter in this Circuit. *See In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1173 (citing *Bryant*, 187 F.3d at 1281). Similarly, the Complaint contends that because the Individual Defendants, both certified public accountants, negotiated the share-based compensation at issue, they should have recognized the accounting errors. (Compl. ¶ 148). But this contention also fails. The fact that a defendant had an accounting background or "had access to inside information, and therefore must have known of the falsity of certain statements is insufficient to plead scienter."[22] *In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002); *see also Edward J. Goodman Life Income Tr.*, 594 F.3d at 791 ("The accounting experience of some" executives was given no weight in Court's analysis because

---

[21] Celsius Holdings, Inc., Proxy Statement (Sched. 14A), at 24 (Apr. 21, 2022) (Decl. Ex. G).
[22] If the Complaint suggests Mr. Negron-Carballo's retirement supports an inference of scienter, that contention fails, too. (Compl. ¶ 95). No inference of scienter arises when, as here, a complaint fails to allege any connection between a retirement or resignation and the alleged accounting issues and the executive at issue remains employed with the company. *In re Jiangbo Pharm., Inc., Sec. Litig.*, 884 F. Supp. 2d 1243, 1263 (S.D. Fla. 2012).

the plaintiff did "not plead any facts that indicate that any individual [executive] knew about the accounting irregularities during the class period.").

**6.   *The Confidential Witnesses Do Not Support a Strong Inference of Scienter.***

In the Eleventh Circuit, the weight afforded to confidential witnesses "hinges on the particularity of the allegation made, the foundation or basis of the confidential witnesses' knowledge, including the position held, the proximity to the offending conduct, and the relevant time frame." *Sheet Metal Workers Local 28 Pension Fund v. Office Depot*, No. 07-81038-CIV-HURLEY, 2010 U.S. Dist. LEXIS 165829, at *14 (S.D. Fla. Jan. 14, 2010) (citing *Mizzaro*, 544 F.3d at 1240). Here, the Complaint adds bulk instead of substance to its allegations by introducing several confidential witnesses – none of whom worked in the accounting area and at least one of whom, CW1, does not offer a single statement about his or her four years at Celsius. (Compl. ¶¶ 30-35). The Complaint does not allege that any of these witnesses have accounting experience or other backgrounds that would make their observations relevant here.

The Complaint fails to offer any particular details about the basis for the confidential witnesses' allegations, none of which relate to the alleged fraud, and, thus, carry no weight. *See Sheet Metal Workers Loc. 28 Pension Fund*, 2010 U.S. Dist. LEXIS 165829, at *14.

**B.   Conclusions About Internal Controls Constitute Non-Actionable Opinions.**

The Complaint contends that statements concerning the Individual Defendants' conclusions about the effectiveness of Celsius' internal controls, contained in Celsius' filings for the second and third quarters of fiscal-year 2021, were false because Celsius later identified and disclosed material weaknesses in its controls. (Compl. ¶¶ 132-37). These statements concerning what the Individual Defendants concluded, however, constitute non-actionable statements of opinion. *See Carvelli*, 934 F.3d at 1323 (deeming defendant's statements about the effectiveness

18

of its internal testing and compliance nonactionable opinions); *Fryman v. Atlas Fin. Holdings, Inc.*, No. 18-cv-01640, 2022 U.S. Dist. LEXIS 70597, at *47 (N.D. Ill. Apr. 18, 2022) (holding that statements about the effectiveness of internal controls constitute statements of opinion); *Villella v. Chem. & Mining Co. of Chile Inc.*, 2017 U.S. Dist. LEXIS 45501, at *30 (S.D.N.Y. Mar. 28, 2017) (statements concerning the conclusion of CEO and CFO that defendant's "internal controls were adequate" constituted statements of opinion).

The Eleventh Circuit has held that, under the Supreme Court's *Omnicare* analysis, an opinion can qualify as a material misstatement only in two circumstances: (1) the opinion falsely describes a defendant's state of mind or (2) it contains embedded false statements of fact. *Carvelli*, 934 F.3d at 1322 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184-85 (2015)).

Here, the Complaint alleges no specific facts to suggest the Individual Defendants subjectively viewed Celsius' internal controls as anything but effective. The Complaint also does not allege the Individual Defendants' conclusions about internal controls contain embedded false statements of fact, including, for example, the statements concerning the Individual Defendants' review of those controls. As with scienter, the Complaint rests the falsity of the statements on Celsius' subsequently identified and disclosed material weaknesses. But under *Omnicare*, that type of allegation will not support a securities fraud claim. *Omnicare, Inc*, 575 U.S. at 194. Merely alleging that an opinion turned out to be wrong is insufficient — rather, "the complaint must as well call into question the issuer's basis for offering the opinion." *Id*.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted and that the Complaint be dismissed with prejudice.

19

Date: August 5, 2022        Respectfully submitted,

                        */s/ Theodore J. Sawicki*
                        Theodore J. Sawicki (Fla. Bar No: 656526)
                        tod.sawicki@alston.com
                        John A. Jordak, Jr., *pro hac vice*
                        john.jordak@alston.com
                        Joseph G. Tully, *pro hac vice*
                        joe.tully@alston.com
                        Jason R. Outlaw, *pro hac vice*
                        jason.outlaw@alston.com
                        Oyinkansola Y. Muraina, *pro hac vice*
                        oyinkan.muraina@alston.com
                        **ALSTON & BIRD**
                        1201 West Peachtree Street, Suite 4900
                        Atlanta, Georgia 30309-3424
                        Telephone: (404) 881-7000
                        Facsimile: (404) 881-7777

                        *Attorneys for Defendants Celsius Holdings, Inc.,*
                        *John Fieldly, and Edwin Negron-Carballo*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 5, 2022, I caused the foregoing to be filed electronically with the Court's Case Management/Electronic Filing System ("CM/ECF"). Notice of this filing was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filing through CM/ECF.

<u>/s/ Theodore J. Sawicki</u>
Theodore J. Sawicki