## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

Case No. 9:22-cv-80418-CV-DMM

| | |
|---|---|
| CITY OF ATLANTA POLICE OFFICERS' PENSION PLAN and CITY OF ATLANTA FIREFIGHTERS' PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>    -v-<br><br>CELSIUS HOLDINGS, INC., JOHN FIELDLY, AND EDWIN NEGRON-CARBALLO,<br><br>        Defendants. | <u>CLASS ACTION</u> |

**DEFENDANTS CELSIUS HOLDINGS, INC. AND EDWIN NEGRON-CARBALLO'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO <u>DISMISS AMENDED COMPLAINT (ECF No. 47)</u>**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................... 1

II.     SUMMARY OF OBJECTIONS..................................................................................... 3

III.    APPLICABLE LEGAL STANDARD ............................................................................ 5

IV.     ARGUMENT.......................................................................................................... 7

       A.      Properly Considered, the Complaint Failed to Allege Any Improper Motive to Commit Fraud, Raising an Inference of Non-Fraudulent Intent......................... 7

              1.      The Report Failed to Consider the Inference of Non-Fraudulent Intent Raised by Mr. Negron's Trading History. ........................................ 7

              2.      The Report Improperly Concluded that Mr. Negron's Incentive Bonus Created a Weak Inference of Scienter. ............................................ 9

       B.      The Report Improperly Drew a Strong Inference of Scienter Solely from the Misinterpretation of a GAAP Provision, ASC 718................................................ 10

              1.      The Report Improperly Relied on Conclusory Allegations About Celsius's Past Application of ASC 718 to Draw a Strong Inference of Scienter. ....................................................................................... 10

              2.      Mr. Fieldly's Explanation for the Company's Misinterpretation of GAAP Cannot Support a Strong Inference of Scienter. .......................... 15

              3.      The Report Fails to Identify any Red Flags That Would Convert a Misinterpretation of GAAP into a Securities Violation........................... 17

       C.      The Court Improperly Found that Celsius Acted with Scienter. ......................... 19

V.      CONCLUSION...................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Broad v. Rockwell Int'l Corp.*,
642 F.2d 929 (5th Cir. 1981) ...................................................................................................6

*Carvelli v. Ocwen Fin. Corp.*,
934 F.3d 1307 (11th Cir. 2019) ..............................................................................................5

*City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*,
No. 21-62380-CIV-SINGHAL, 2023 U.S. Dist. LEXIS 2005 (S.D. Fla.
Dec. 30, 2022)..........................................................................................................................8

*Climo v. Office Depot, Inc.*,
No. 11-80364-CIV-RYSKAMP/VITUNAC, 2012 U.S. Dist. LEXIS 200377
(S.D. Fla. May 23, 2012) .........................................................................................................3

*Cutsforth v. Renschler*,
235 F. Supp. 2d 1216 (M.D. Fla. 2002)................................................................................3, 7

*Druskin v. Answerthink, Inc.*,
299 F. Supp. 2d 1307 (S.D. Fla. 2004) .................................................................................9, 18

*Durham v. Whitney Info. Network, Inc.*,
No. 06-CV-00687, 2009 U.S. Dist. LEXIS 113757 (M.D. Fla. Nov. 10, 2009) ...............14, 15

*Edward J. Goodman Life Income Tr. v Jabil Circuit, Inc.*,
594 F.3d 783 (11th Cir. 2010) ........................................................................................2, 17, 18

*Fossett v. Fay Servicing LLC*,
No. 4:16-cv-0374-HLM-WEJ, 2017 U.S. Dist. LEXIS 188100 (N.D. Ga.
May 4, 2017)............................................................................................................................5

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) .........................................................................................3, 6

*In re AFC Enters. Sec. Litig.*,
348 F. Supp. 2d 1363 (N.D. Ga. 2004)...............................................................................18, 19

*In re Health Ins. Innovations. Sec. Litig.*,
2019 U.S. Dist. LEXIS 141591 ...........................................................................................17

*In re HomeBanc Corp. Sec. Litig.*,
706 F. Supp. 2d 1336 (N.D. Ga. 2010)................................................................................6, 9

*In re KLX, Inc. Sec. Litig.*,
 232 F. Supp. 3d 1269 (S.D. Fla. 2017) ...................................................................15

*In re Pegasus Wireless Corp. Sec. Litig.*,
 No. 07-81113-CIV, 2009 U.S. Dist. LEXIS 86382 (S.D. Fla. Sep. 21, 2009) ........................12

*In re Sportsline.com Sec. Litig.*,
 366 F. Supp. 2d 1159 (S.D. Fla. 2004) .......................................................... passim

*Macort v. Prem, Inc.*,
 208 F. App'x 781 (11th Cir. 2006) ......................................................................5

*McDonald v. Alan Bush Brokerage Co.*,
 863 F.2d 809 (11th Cir. 1989) .........................................................................6

*Mizzaro v. Home Depot, Inc.*,
 544 F.3d 1230 (11th Cir. 2008) ................................................................. passim

*Mogensen v. Body Cent. Corp.*,
 15 F. Supp. 3d 1191 (M.D. Fla. 2014) ...................................................................8

*Mulvaney v. Geo Grp., Inc.*,
 237 F. Supp. 3d 1308 (S.D. Fla. 2017) .................................................................13

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*,
 No. 07-81038-CIV-HURLEY, 2010 U.S. Dist. LEXIS 165829 (S.D. Fla.
 Jan. 14, 2010).......................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007).................................................................................5, 6

*Thorpe v. Walter Inv. Mgmt., Corp.*,
 111 F. Supp. 3d 1336 (S.D. Fla. 2015) ............................................................4, 6, 9

*United States v. Keel*,
 164 F. App'x 958 (11th Cir. 2006) .....................................................................5

*Ziemba v. Cascade Int'l, Inc.*,
 256 F.3d 1194 (11th Cir. 2001) ....................................................................10, 17

**RULES**

Fed. R. Civ. P. 9(b) ............................................................................2, 6, 11, 15

Fed. R. Civ. P. 12(b)(6)..............................................................................2, 5

Rule 10b-5............................................................................................2

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A)................................................................................................6

28 U.S.C. § 636(b)(1) ......................................................................................................5

28 U.S.C. § 636(b)(1)(c)...................................................................................................1

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b).......................................... passim

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b)....................................2

Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a)...................................2

Pursuant to 28 U.S.C. § 636(b)(1)(c), Defendants Celsius Holdings Inc. and Edwin Negron-Carballo, through their undersigned counsel, hereby file Objections to the Magistrate Judge's Report and Recommendation served on February 13, 2023 (the "Report") (ECF No. 55), and respectfully request that the Court dismiss the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF No. 44), filed by Lead Plaintiffs City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan, in its entirety and with prejudice.

## I.      INTRODUCTION

Plaintiffs filed this putative class action against Defendants Celsius Holdings, Inc. ("Celsius" or the "Company"), John Fieldly, and Edwin Negron-Carballo (with Mr. Fieldly, collectively, the "Individual Defendants").[1]   The Individual Defendants are current and former Celsius executives.   Mr. Fieldly has served as Celsius's CEO since 2018.   (Compl. ¶ 27).   Mr. Negron served as Celsius's CFO during the putative class period, August 12, 2021, to March 1, 2022 (the "Class Period").   (*Id.* ¶ 1).   He retired as CFO in April 2022, but continued in an executive role at Celsius to ensure a smooth transition.   (*Id.* ¶ 17).

The Complaint alleges that, in two quarters of 2021, Defendants applied a certain GAAP provision incorrectly, ASC 718, in order to delay the recognition of non-cash compensation expenses associated with nine former employees and directors who left Celsius in those two quarters and, thereby, understate non-cash expense and overstate net income.   (*Id.* ¶¶ 8-9). According to the Complaint, the failure to account for these non-cash expenses properly under GAAP caused Celsius's stock price to trade at artificially inflated prices.   (*Id.* ¶ 183).   It also allegedly rendered statements made about Celsius's internal controls materially misleading.   (*Id.*

---

[1] Hereinafter, Defendant Edwin Negron-Carballo shall be referred to as Mr. Negron.

¶ 19).  Celsius disclosed the understatement of non-cash expenses on March 1, 2022, and the need for the restatement, in an SEC filing and during an earnings calls that day.  (*Id.* ¶¶ 84-88).  Based on this alleged conduct, the Complaint asserts claims against all Defendants pursuant Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  (*Id.* ¶¶ 183-84).  The Complaint also asserts that the Individual Defendants, as controlling persons, violated Section 20(a) of the Exchange Act.  (*Id.* ¶ 189).

Defendants moved to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, et seq. (the "Motion") (ECF No. 47).  As the basis for dismissal, the Motion relies on, among other things, the precedents in this Circuit holding that absent "additional evidence of scienter, a defendant's failure to follow GAAP or publication of inaccurate accounting figures, is insufficient to state a claim for securities fraud."  *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1165 (S.D. Fla. 2004); *see Edward J. Goodman Life Income Tr. v Jabil Circuit, Inc.*, 594 F.3d 783, 792 (11th Cir. 2010).

The Court referred the Motion to Magistrate Judge Bruce E. Reinhart for Report and Recommendation on November 18, 2022 (ECF No. 51).  The Magistrate held argument on December 13, 2022 (ECF No. 56) and issued the Report on February 13, 2023 (ECF No. 55).

The Report recommended that the Court grant the Motion in part and deny it in part.  It recommended the Court grant the Motion in full as to Mr. Fieldly. (Report at 36).  It also concluded that the alleged misstatements concerning the Company's internal controls failed to provide a "basis for liability under Section 10(b), Rule 10b-5, or Section 20(a)" against the Company or the Individual Defendants.  (*Id.* at 35).  It recommended, however, that the Court deny the Motion as to Mr. Negron, concluding "the inference of scienter arising from the inconsistent application of

ASC 718 outweigh[ed] the countervailing factors." (*Id.* at 36).  In reaching this conclusion, the Report relied entirely on the Complaint's conclusory assertions and not specific allegations, as the PSLRA requires.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1265 (11th Cir. 2006). Finally, the Report recommended  denying the Motion as to the Company, because it imputed Mr. Negron's scienter to the Company.  (*Id.* at 31-32, 36).

The Company and Mr. Negron limit their objections to the Report's conclusion (i) that the Complaint raised a strong inference that Mr. Negron (apparently acting in secret) acted with an intent to defraud or extreme recklessness (i.e., with scienter) when interpreting GAAP and applying it to non-cash, stock-based compensation expense in two quarters of fiscal-year 2021; and (ii) that his alleged scienter is imputable to Celsius.

## II.    SUMMARY OF OBJECTIONS

This Court should reject the Report's conclusion that Mr. Negron acted with scienter for at least two reasons.  First, it should have recognized an inference of non-fraudulent intent based on the Complaint's failure to allege he had any motive to commit fraud.  *See Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1250 (M.D. Fla. 2002)*; Climo v. Office Depot, Inc.*, No. 11-80364-CIV-RYSKAMP/VITUNAC, 2012 U.S. Dist. LEXIS 200377, at *23 (S.D. Fla. May 23, 2012) (holding a lack of allegations of motive "weighs against an inference of scienter").  This inference of non-fraudulent intent is bolstered by Mr. Negron's trading history, trading the Report acknowledged but never considered in its scienter analysis.  He sold 95% of his Celsius position two months before the Class Period and sold no Celsius shares during it.  (Report at 14, 30).  The lack of class period trades weighs heavily against any inference of scienter because it makes no sense that Mr. Negron would risk his reputation and career to commit a fraud – especially one concerning a non-cash expense accrual – that would provide no financial benefits to him and would cause his Celsius holdings to decline in value (with no impact on Celsius's cashflow).  *See Mizzaro v. Home Depot,*

3

*Inc.*, 544 F.3d 1230, 1253 (11th Cir. 2008).  The Report concluded a weak inference of scienter arose from Mr. Negron's incentive bonus.  (Report at 28-29).  But this bonus was pegged to the restated financials, issued after the Class Period, as an SEC filing made clear.  (ECF No. 47-8 at 23-24).  And, regardless, the Complaint failed to demonstrate the bonus was extraordinary in any way, which the law requires before it will deem such a bonus indicative of motive.  *See Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1364 (S.D. Fla. 2015).

As for the second reason to reject the conclusions about Mr. Negron's scienter, the Report drew a strong inference of scienter solely from the misinterpretation of a GAAP provision, ASC 718.  (Report at 19-20).  The law is clear, however, that absent "additional evidence of scienter, a defendant's failure to follow GAAP or publication of inaccurate accounting figures, is insufficient to state a claim for securities fraud."  *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1165.  The Report drew its strong inference of scienter from purported inconsistencies in how Celsius has applied ASC 718.  As to the first inconsistency, it concluded that the way the Company applied ASC 718 in 2021 differed from the way it had applied the provision in prior years.  (Report at 20).  But the Report relied entirely on the Complaint's conclusory allegations about Celsius's past application of ASC 718.  (*Id.* at 12) (citing Compl. ¶¶ 77, 149, 152).  Those conclusory allegations included no specific allegations about the circumstances under which Celsius applied ASC 718 or about Mr. Negron's involvement and certainly no specific allegations to conclude he acted in a vacuum or alone without consulting others about the accounting treatment.  Such allegations lack the particularity required to plead a strong inference of scienter.  *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1162.

As to the second inconsistency, the Report concluded the Company should not have applied ASC 718 uniformly to all nine grantees.  (Report at 20).  It reached this conclusion based on the

4

Company's explanation for its failure to interpret GAAP correctly – that an ambiguity arose when applying ASC 718 because grantees would continue providing contractual services to the Company. (*Id.* at 16). For reasons detailed below, the Report infers from the explanation that only some of the nine would continue to provide services, so there should have been no need to restate the non-cash compensation expense for all nine. (*Id.*) But this ignores other, more reasonable inferences raised by the Company's explanation. And, regardless, at worst, the Company's explanation is ambiguous on this point, which means it cannot provide the basis for a strong inference of scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 326 (2007).

Finally, this Court should reject the Report's conclusion that Celsius acted with scienter. (Report at 32). There was no scienter to impute to Celsius, because the Report erroneously concluded that Mr. Negron acted with scienter, and because the Complaint does not plead that any other corporate official was responsible for the alleged offending conduct.

## III.   APPLICABLE LEGAL STANDARD

A district court reviews *de novo* any written objections to a magistrate's report and recommendation. *Macort v. Prem, Inc.*, 208 F. App'x 781, 783-84 (11th Cir. 2006). "Legal conclusions, of course, are subject to *de novo* review even if no party specifically objects." *Fossett v. Fay Servicing LLC*, No. 4:16-cv-0374-HLM-WEJ, 2017 U.S. Dist. LEXIS 188100, at *2 (N.D. Ga. May 4, 2017) (citing *United States v. Keel*, 164 F. App'x 958, 961 (11th Cir. 2006)). When ruling on a magistrate's report and recommendation, the Court may "accept, reject, or modify, in whole or in part" the magistrate judge's findings. 28 U.S.C. § 636(b)(1).

Under Fed. R. Civ. P. 12(b)(6), a complaint must be dismissed if it "fail[s] to state a claim upon which relief can be granted." To prevail on a securities fraud claim, a complaint must plead scienter, among other elements. *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1317 (11th Cir. 2019). Although the Court must assume the truth of facts alleged in the Complaint, "[c]onclusory

allegations will not suffice to state a claim." *Thorpe*, 111 F. Supp. 3d at 1351. And a plaintiff asserting securities fraud must do more than avoid conclusory allegations of fraud, and must plead fraud with particularity, because the heightened pleading standards of Fed. R. Civ. P. 9(b) and the PSLRA apply to such a claim. *Garfield*, 466 F.3d at 1263-65.

To meet the PSLRA's heightened standard for pleading scienter, a complaint must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). As to the required state of mind, a complaint must allege with particularity "that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." *Mizzaro*, 544 F.3d at 1238. "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir. 1989) (quoting *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir. 1981)).

"To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. In performing this comparative analysis, the court "must consider not only inferences urged by the plaintiff . . . but also competing inferences rationally drawn from the facts alleged." *Id.*

Failure to meet this heightened standard for pleading a strong inference of scienter mandates dismissal. *See In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1352 (N.D. Ga.

2010) (stating that the failure to establish any one of the elements of a securities fraud claim, including a strong inference of scienter, is sufficient grounds to dismiss a complaint).

## IV.     ARGUMENT

### A.     Properly Considered, the Complaint Failed to Allege Any Improper Motive to Commit Fraud, Raising an Inference of Non-Fraudulent Intent.

Mr. Negron is a 60-year-old senior executive, with no history of alleged financial impropriety during his career.[2] The Complaint's failure to allege any improper motive to commit fraud on his part – especially, financial motive – raises a strong inference of non-fraudulent intent. "If a motive to commit fraud can be a relevant circumstance supporting a claim of scienter," then "an inability to show motive can be a relevant circumstance indicating the lack of scienter. In other words, there should be a negative inference regarding scienter as a result of the plaintiffs' unsuccessful attempt to demonstrate motive." *Cutsforth*, 235 F. Supp. 2d at 1250. This negative inference becomes clear that neither Mr. Negron's trading history nor incentive compensation suggest he received any financial benefit from the alleged fraud.

### 1.     The Report Failed to Consider the Inference of Non-Fraudulent Intent Raised by Mr. Negron's Trading History.

The Report properly concluded the trading history of Celsius's CEO, Mr. Fieldly, did not raise an inference of scienter, based on two key facts: Mr. Fieldly had "cashed out" a significant number of Celsius shares just prior to the Class Period, and the value of his retained shares "went down substantially after the earnings restatement." (Report at 30). Without explanation, however, the Report failed to draw the same inference for Mr. Negron, despite acknowledging he had sold the exact same number of shares as Mr. Fieldly in the lead up to the Class Period (and, necessarily,

---

[2] The Report correctly rejected the Complaint's only other allegation that Mr. Negron had failed to properly handle expenses, i.e., that he had in the past delayed the payment of invoices to manage cashflow. (Report at 25-26).

the value of his retained shares would have also declined substantially upon the restatement). (*Id.* at 14-15). The Report noted that, less than two months before the Class Period, "Mr. Negron-Carballo and Mr. Fieldly each had sold 150,000 shares of Celsius stock," resulting in "gross proceeds of over $9 million each," and that, following the sales, "Mr. Negron-Carballo had 7,614 shares of Celsius stock and Mr. Fieldly had 285,252 shares." (*Id.*)

If anything, Mr. Negron's decision to sell 95% of his holdings in the lead up to the Class Period creates an even stronger inference of non-fraudulent intent and good faith than the one arising from Mr. Fieldly's trading, given the relatively small Celsius position he retained relative to Mr. Fieldly. *See City of Hollywood Police Officers' Ret. Sys. v. Citrix Sys., Inc.*, No. 21-62380-CIV-SINGHAL, 2023 U.S. Dist. LEXIS 2005, at *19 (S.D. Fla. Dec. 30, 2022) (citing; *Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1222 (M.D. Fla. 2014) (individual defendants' significant sale of stock within months of Class Period's start "strongly cuts against an inference of scienter.")). This inference of Mr. Negron's nonfraudulent intent is so strong because it defies logic to believe he would sell almost the entirety of his Celsius position right before allegedly risking his reputation and career by embarking on a fraud with one apparent goal: to temporarily inflate the Company's stock price by understating non-cash expenses (a metric with no economic or cashflow impact to the Company). (Report at 27). *Citrix Sys., Inc.*, 2023 U.S. Dist. LEXIS 2005, at *19.

The inference of non-fraudulent intent raised by Mr. Negron's significant sale on Class Period's eve is further strengthened by his lack of Class Period trades, a fact the Report acknowledged but failed to consider in its analysis of his alleged scienter. (*Id.* at 30). This was a significant omission. The inference drawn from the lack of Class Period trades "overwhelms" any inference that ASC 718 was intentionally misapplied, because it is "counterintuitive to think that

8

one would fraudulently inflate a stock price without a concomitant intent to sell the stock at an artificially high price." *In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d at 1359; *see also Mizzaro*, 544 F.3d at 1253 ("In this case, the amended complaint says nothing about suspicious stock transactions by any of the individual defendants, an omission that weighs against inferring scienter."); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1336 (S.D. Fla. 2004) ("absence of allegations" of class period trades by key players "refute any inference of scienter.").

Mr. Negron's decision to "cash out" his position in Celsius stock prior to the Class Period and not sell a single share of what he retained during it, weighs heavily against any inference of scienter.

### 2. The Report Improperly Concluded that Mr. Negron's Incentive Bonus Created a Weak Inference of Scienter.

The Report concluded that Mr. Negron's incentive bonus created a "weak inference of scienter."[3]  (Report at 28-29).  But he received this bonus in April 2022, after the Class Period, based on the restated annual results for fiscal-year 2021 issued the month before, not the quarterly results that required restating.  The incentive bonus's mechanics and timing were disclosed in an SEC filing, the Company's Proxy Statement.  (ECF No. 47-8 at 23-24).  The Proxy Statement explains that the Compensation Committee set the fiscal-year 2021 incentive bonus by comparing the fiscal-year 2021 annual results against a benchmark.  *Id.*  Those annual results contained the restated amounts for net income in the second and third quarters of fiscal-year 2021 and were issued in March 2022, after the Class Period ended.  (Compl. ¶ 90).  Specifically, the

---

[3] The Complaint contends that to optimize their incentive bonus, "the Individual Defendants were motivated to inflate" net income. (Compl. ¶ 140).  To raise this inference, a complaint must reveal the "extraordinary" nature of the bonuses.  *See Thorpe*, 111 F. Supp. 3d at 1364.  Here, the Complaint fails to explain how the Individual Defendants' bonuses were extraordinary.  (*See* generally Compl. ¶¶ 140-41).  Indeed, the Complaint never alleges the Individual Defendants received a higher bonus relative to prior years.

misinterpretation of ASC 718 and the understatement of non-cash compensation expenses had no bearing on the fiscal-year-2021 incentive bonus received by Mr. Negron. Therefore, it was improper for the Report to conclude that the bonus raised even a weak inference of scienter.

**B.      The Report Improperly Drew a Strong Inference of Scienter Solely from the Misinterpretation of a GAAP Provision, ASC 718.**

The Report's failure to draw an inference of non-fraudulent intent from Mr. Negron's lack of motive exacerbates another error: Its decision to draw a strong inference of scienter based on nothing more than a misinterpretation of GAAP. (Report at 19-20).

This decision breaks with the standard applied in this Circuit to securities fraud claims premised on an alleged GAAP error. Under that standard, "a defendant's failure to follow GAAP or publication of inaccurate accounting figures" do not alone state a securities fraud claim. *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1165. Only when combined "with allegations of ignoring red flags," may a failure to interpret GAAP correctly support a securities fraud claim. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1209-10 (11th Cir. 2001).

Here, the Report identified no red flags that would support a securities fraud claim and, instead, concluded a strong inference of scienter arose based on two purported accounting inconsistencies. But it failed to identify any specific allegations that would allow it to draw an inference those inconsistencies existed or, more broadly of a strong inference of scienter.

**1.      *The Report Improperly Relied on Conclusory Allegations About Celsius's Past Application of ASC 718 to Draw a Strong Inference of Scienter.***

The first purported inconsistency related to Celsius's alleged application of ASC 718 prior to 2021. The Report concluded that Celsius's failure to apply ASC 718 correctly in 2021 raised a strong inference of scienter, because it allegedly applied that GAAP provision correctly in prior years. (Report at 21). But, if a strong inference of scienter arose from an issuer's failure to apply a GAAP provision correctly, despite having applied it correctly in the past, it would convert almost

10

every GAAP error into a securities violation.  And it would upend the law in this Circuit holding that a GAAP error "without more, may establish negligence, but can never establish scienter." *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1165.

Besides being at odds with this Court's precedents, the inference the Report draws about Celsius's past application of ASC 718 rests exclusively on conclusory allegations in the Complaint.  For example, the Complaint alleged that the fact "Celsius was unable to comply with very basic GAAP principles for calculating share-based compensation – an accounting process the Company had no problems complying with for more than one decade prior – further supports a strong inference of scienter as to the Company and to the Individual Defendants." (Compl. ¶ 149).

Such conclusory allegations about Celsius's past accounting practices cannot support a strong inference of scienter for at least two reasons.  First, the Report rejected the allegation's central premise – that ASC 718 involved "very basic GAAP principles for calculating share-based compensation." (*Id.*)  Instead, the Report refused to "conclude that ASC 718 [was] clear and unambiguous."[4]  (Report at 23).  Once the Report concluded that ASC 718 was not clear and unambiguous (meaning, in this context, this technical rule was subjective and open to interpretation), it should have discounted any inference drawn from conclusory allegations about its past application.

Second, and more importantly, conclusory allegations about Celsius's past accounting practices do not meet the PSLRA's demand for specific allegations concerning scienter.  "The PSLRA has raised the pleading requirements in private securities lawsuits" above those set in Rule

---

[4] The Report also rejected the opinion of Plaintiffs' anonymous accounting expert that ASC 718 was unequivocal, deeming it unreliable.  (Report at 22-23).  And it similarly rejected public commentary on ASC 718 from the accounting firm Deloitte about efforts made to simplify ASC 718, because the Complaint failed to allege that Deloitte provided accounting services to Celsius or that Defendants were aware of Deloitte's position on ASC 718.  (*Id.* at 23).

9(b) and requires a plaintiff to plead scienter "with particularity." *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1162. Applying that standard here, the "law requires that specific facts be alleged to support Plaintiffs' conclusion that" Celsius applied ASC 718 to the awards of departing employees correctly in the past and, thus, its failure to apply that GAAP provision correctly in 2021 must have resulted from an intent to defraud. *In re Pegasus Wireless Corp. Sec. Litig.*, No. 07-81113-CIV, 2009 U.S. Dist. LEXIS 86382, at *15-16 (S.D. Fla. Sep. 21, 2009) (holding "bare allegations" of a failure to interpret GAAP correctly and "bare conclusion that [auditing firm] must have participated in the fraud because it was the Company's auditor" failed to state a claim). The Complaint falls short of that standard because it fails to provide any specific facts about Celsius's past application of ASC 718, including about how it previously applied it to the non-cash, stock-based compensation of departing employees.

During oral argument, Plaintiffs' counsel admitted that the Complaint lacks any specific allegations about Celsius's past application of ASC 718. The Magistrate asked counsel whether it was "alleged in the complaint anywhere that in the prior nine years somebody had left the company and they actually had applied the GAAP rule to this specific fact pattern?" (ECF No. 56, 41: 1-9). Plaintiffs' counsel responded, "We don't have a specific example of that alleged in the complaint," but broadly suggested "the fact the company provided compensation in stock" provided sufficient basis to infer that it had applied ASC 718 correctly in the past, when grantees left the Company. (*Id*. at 41:14-16).

The Complaint's lack of any specific allegation about Celsius's past application of ASC 718 means the Report had no basis, under the PSLRA's exacting standards, to conclude that "an inference of scienter [arose] from the fact that ASC 718 was applied differently to former employees in 2021 than it had to similarly-situated employees in the past." (Report at 21). In

12

other words, the Report's conclusion that the nine departing employees at issue were "similar situated" to employees with non-cash awards who departed prior to 2021 has no foundation in specific allegations.  An example of the missing factual allegations includes the failure to allege Celsius previously applied ASC 718 correctly to departing employees who would continue to provide services to the Company (like the grantees at issue here).

Similarly, the Complaint does not allege specific facts about Mr. Negron's past involvement in Celsius's application of ASC 718 and, importantly, to the awards of departing grantees prior to 2021, including the circumstances of those grantees, or involvement in the accounting for the awards at issue, for that matter.  To the contrary, the Report acknowledges that the Complaint "does not allege direct evidence that Mr. Negron knew that the stock option accounting was wrong."  (*Id.*)  Nevertheless, it unreasonably assumes that he acted alone and without apparent oversight, and infers he must have been aware of the failure to apply ASC 718 correctly, based on his role as the "Company's Principal Financial and Accounting Officer" and his "hands-on" approach overseeing a small accounting department that "followed 'very loose accounting processes and procedures.'"[5]  (*Id.* at 21) (citing Compl. ¶¶ 34, 146-147).  But, in *Mulvaney v. Geo Grp., Inc.*, this Court recognized that allegations an executive was "hands on" were "nothing more than a conclusory label."  237 F. Supp. 3d 1308, 1324 (S.D. Fla. 2017).  And, in that same decision, this Court observed that allegations of low staffing did not mean an issuer was unable to maintain adequate standards of care.  *Id.*

Regardless, the allegations about the accounting department's size and its processes and procedures originate with one confidential witness, identified as "CW 3."  (Compl. ¶¶ 34, 147).  In

---

[5] Of course, a reasonable inference exists, unrebutted by specific allegations, that the original accounting treatment of the non-cash compensation at issue was reviewed and approved by Celsius's external accounting experts and by Mr. Negron and his superiors, all acting in good faith.

13

this Circuit, whether to credit a confidential witness turns on an analysis of the "particularity of the allegation made, the foundation or basis of the confidential witnesses' knowledge, including the position held, the proximity to the offending conduct, and the relevant time frame." *Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*, No. 07-81038-CIV-HURLEY, 2010 U.S. Dist. LEXIS 165829, at *14 (S.D. Fla. Jan. 14, 2010) (citing *Mizzaro*, 544 F.3d at 1240). Here, the Complaint offers no specific detail about CW3 suggesting he or she had the professional experience or other basis to qualify Celsius's procedures as "very loose." (Compl. ¶¶ 32-34). For example, the Complaint does not allege CW3 had any exposure to Celsius's historical accounting for non-cash compensation under ASC 718 or, more broadly, worked in the Celsius accounting department or even had a basic knowledge of accounting procedures and controls. Instead, the Complaint alleges only that CW3 was an "executive at Celsius . . . for many years" who "formally separated from Celsius in 2021."[6] (*Id*. ¶ 32). Because CW3 offers only conclusory observations about Celsius's accounting department and the Complaint lacks specific facts establishing the foundation for them, the Report impurely drew any inference from them. *Durham v. Whitney Info. Network, Inc.*, No. 06-CV-00687, 2009 U.S. Dist. LEXIS 113757, at *47 (M.D. Fla. Nov. 10, 2009) (rejecting vague allegations about issuer's financial filings because confidential witness was not a member of accounting department). Compounding errors, the Report admitted it did not analyze whether a proper foundation existed for allegations tied to the confidential witnesses. (Report at 26 n.9).

---

[6] This description of CW3 is noticeably vague concerning the month he or she separated from Celsius in 2021 and leaves open the possibility that CW3 left prior to the August start of the Class Period. The Complaint does not provide the month CW3 left Celsius but provides that detail for the other confidential witnesses. (Compl. ¶¶ 30-35).

Finally, instead of recognizing that the Complaint's conclusory allegations failed to provide the specific factual allegations Rule 9(b) and the PSLRA demand, the Report shifted the burden to Defendants. The Report suggests Defendants had an obligation to rebut the Complaint's conclusory allegations by asserting specific facts about Celsius's past application of ASC 718, including whether it had applied ASC 718 to grantees similarly situated with the nine at issue here (grantees who would continue to provide services to Celsius). The Report observed that "neither the Motion to Dismiss nor the Amended Complaint allege that 2021 was the first year when former employees with stock options continued to provide services to Celsius under non-employment contracts" and that "defense counsel could not confirm whether in previous years Celsius had ever retained terminated employees to perform contract services . . . ." (*Id.* at 19 n.7). This burden shifting was improper because the PSLRA and Rule 9(b) require that ***plaintiff's allegations*** establish an inference of scienter by pleading with particularity. *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1281 (S.D. Fla. 2017) ("The PSLRA requires plaintiffs to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'").

### 2. *Mr. Fieldly's Explanation for the Company's Misinterpretation of GAAP Cannot Support a Strong Inference of Scienter.*

Before addressing the second purported accounting inconsistency the Report identified, reviewing some of Celsius's disclosures about the restatement would prove useful. Celsius announced the restatement in a Form 8-K filed with the SEC on March 1, 2022. (Compl. ¶ 84). Celsius stated that, when preparing its annual report for fiscal-year 2021, "the Company determined that the calculation of expense of non-cash share based compensation . . . issued to former employees and retired directors was materially understated" in two quarters, when properly calculated under the relevant GAAP provision, ASC 718. (*Id*. ¶ 84). During an earnings call that same day, Mr. Fieldly explained the reason for the understatement and the misinterpretation of

15

ASC 718 – some former employees would continue to provide services to Celsius complicated the interpretation of GAAP: "[I]t's a technical aspect there because some of them are still providing services through contractual services.  So there was just a technicality.  That was an error in interpretation there on those stock awards.  So it was definitely an oversight and a correction that was noted."  (*Id*. ¶ 88).  Weeks later, Celsius issued its Form 10-K, disclosing the "Company modified awards for nine grantees resulting in approximately $19.3 million in incremental compensation cost during the year ended December 31, 2021."  (*Id*. ¶ 94).

Against this backdrop, the Report identifies the following purported inconsistency: "[I]t appears that Celsius had to restate the accelerated stock options for all nine employees who left the Company in 2021, even though only 'some' of them stayed on to perform contractual services." (Report at 16).  The Report then concludes that no "nonculpable explanation" exists for why Celsius "would treat the nine departed employees, all of whom were not similarly situated in terms of their continued service to Celsius, the same for accounting purposes."  (*Id.* at 31).

To reach this conclusion, the Report needed to infer that, when Mr. Fieldly explained during the earnings call that "some" employees would continue to provide services to Celsius and that this complicated the application of ASC 718, he was referring to a subset of the nine grantees referenced in the Form 10-K Celsius issued later that month, rather than all nine.[7]  A more reasonable inference, however, is that some larger group of directors and employees left Celsius in fiscal-year 2021, and Mr. Fieldly referred to a subset of that number during the call – nine grantees – who would continue providing services to Celsius, which complicated the treatment of

---

[7] The Complaint does not allege that Mr. Fieldly was referring to a subset of the nine former directors and employees during the March 1, 2022 earnings call, and includes his explanation without comment, in the section of the Complaint addressing the alleged corrective disclosures. (Compl. ¶¶ 88-89).

16

those awards under ASC 718.  At worst, this explanation is ambiguous (at least when considered with the Form 10-K issued a few weeks later), meaning it cannot support a strong inference of scienter.  *In re Health Ins. Innovations. Sec. Litig.*, 2019 U.S. Dist. LEXIS 141591, at *93 (when "assessing whether the factual allegations demonstrate a strong inference of scienter, ambiguities and omissions count against inferring scienter.")

### 3.     The Report Fails to Identify any Red Flags That Would Convert a Misinterpretation of GAAP into a Securities Violation.

The Eleventh Circuit has held "that a violation of GAAP by a corporation can raise an inference of scienter when the defendants also ignored 'red flags' warning them of the accounting irregularities."  *Jabil Circuit, Inc.*, 594 F.3d at 792.  Typical red flags include allegations of a whistleblower or analysts' warnings.  *Ziemba*, 256 F.3d at 1209.  Here, the Report concludes that the misinterpretation of GAAP created a strong inference of scienter as to Mr. Negron, even though it failed to identify any red flags recognized under this Circuit's precedents.

The Report noted two alleged red flags in the Complaint (i) Mr. Fieldly's alleged "insider trading," and (ii) the restatement's "magnitude" and its relation to "major balance sheet items." (Report at 17).  As to the alleged insider trading, the Report rejected this as a red flag, because it properly concluded Mr. Fieldly's one Class Period trade did not raise an inference of scienter.  (*Id.* at 30).  And, as addressed above, Mr. Negron did not trade during the Class Period.

As to the second red flag alleged, the Report concluded only that "the misstatement of net income could imply improper intent because the Amended Complaint alleges the market had a 'laser focus' on that particular metric as indicative of the Company's future financial performance." (*Id.* at 27).  It never explains, however, why a focus on net income could imply scienter.  At most, it suggests a motive for Mr. Negron to increase net income, but a motive to "enhance a Company's business prospects cannot support a strong inference of scienter." *In re*

*Sportsline.com Sec. Litig.*, 366 F. Supp. 2d at 1171.  Given the non-cash nature of these expenses, which have no economic or cashflow impact to the company, it is irrational to infer a CFO would purposely understate these expenses.  Regardless, it is a safe assumption that analysts would focus on cash and other core operational metrics that contribute to net income.

The plaintiff made similar scienter allegations concerning the market's focus in *Druskin*, 299 F. Supp. 2d at 1334.  Among other things, the plaintiff alleged that the defendants were motivated to "maintain the image of a 'high-growth' company to create the illusion that it was meeting analysts' expectations . . . ."  *Id.*  The Court held that those types of general motives, "such as maintaining a company's stock price or meeting analyst estimates, do not support a strong inference of scienter."  *Id.* at 1338.  Here, the market's alleged focus on Celsius's net income similarly cannot support a strong inference of scienter (again, these were non-cash expenses).

The Report reached no conclusions about whether the magnitude of the restatement raised a strong inference of scienter.  It did note, however, the Eleventh Circuit's caution "against using net income to measure the magnitude of an accounting error."  (Report at 26).  In the Eleventh Circuit precedent cited, the Court explained that because "net income can vary so widely period to period, using it as a baseline for comparison provides the court no real standard on which to judge the significance of the accounting error."  *Jabil Circuit, Inc.*, 594 F.3d at 792.  Total revenue provides a more relevant standard.  *See id.*  Here, the restated net income represented around 5% of total revenue.  (ECF No. 47-2 at F-26).

Properly considered, a restated net income equal to 5% of total revenue raises no red flags. *In re AFC Enters. Sec. Litig.*, 348 F. Supp. 2d 1363, 1372 (N.D. Ga. 2004) (in context of entire business "substantial" net income restatement raised no inference of scienter).  This is especially true when one considers the nature of this expense – a pure accounting entry, not an actual cash

18

expense.  The Report did address this point, deeming it "notable that the 'losses' reflected by the restatement were not cashflow losses; the Company recognized additional expenses for the second and third quarters of 2021 based on the value of the stock options, but the Company did not have to pay for the stock options."  (Report at 26-27).  This is significant because, when a failure to apply GAAP correctly concerns "errors in accrual of income and expenses, not attempts to fabricate revenue or to conceal expenses," as it does here, the errors do not "entitle the Plaintiffs or encourage the Court to infer fraud . . . ."  *In re AFC Enters. Sec. Litig.*, 348 F. Supp. 2d at 1372-73.  And, more to the point, GAAP errors involving non-cash compensation do not contribute to an inference of scienter, as this Court concluded in *In re Sportsline.com Sec. Litig.*, when it rejected the scienter allegations because, among other things, "the GAAP violations primarily concerned the accounting for an employee stock option plan, not a part of [the issuer's] core business activity."  366 F. Supp. 2d at 1170.

Therefore, because the Complaint identified no red flags that support an inference of scienter in the context of a GAAP violation, as a matter of law, the Report erred in concluding a strong inference of scienter on the part of Mr. Negron and Celsius, by imputation.[8]

### C.      The Court Improperly Found that Celsius Acted with Scienter.

---

[8] The Report rejected the other allegations the Complaint proffered in an attempt to plead scienter, concluding (i) that the Individual Defendants "accounting backgrounds [did] not, alone, suggest that they intentionally or recklessly caused the Company's financial statements to be inaccurate" (Report at 20); (ii) the alleged practice of delaying payments "could equally be construed as consistent with non-fraudulent intent" (*id.*); (iii) the contention that the original interpretation of ASC 718 violated internal policies was "unpersuasive" (*id.* at 27); and (iv) the timing of Mr. Negron's retirement did "not weigh in favor of a finding of scienter" (*id.* at 25).  With respect to that retirement, the Report drew competing inferences from it, including that it occurred "because of an embarrassing and expensive good-faith error." (*Id.* at 25).  That inference is totally unsupported, however, because the Report also concluded the Complaint failed to "allege facts connecting the resignation to the earnings restatement." (*Id.* at 24).  A more reasonable inference is that Mr. Negron had cashed out his Celsius shares a few months prior, in anticipation of retirement, and viewed the completion and filing of the Form 10-K as a good time to retire.

19

The Report concludes that the Company "acted promptly when it found out about the problem" – meaning, the understating of non-cash expense compensation in two quarters – and that such "course of conduct implies that the Company acted in good faith and without an intent to conceal or defraud when the error was brought to its attention." (Report at 27-28).  Nevertheless, it concludes that "Mr. Negron's scienter [was] imputable to Celsius." (*Id.* at 32).  As shown above, the Complaint failed to meet its burden under the PSLRA to plead a strong inference of scienter as to Mr. Negron.  Therefore, an inference of scienter cannot be imputed to Celsius.[9] *See Mizzaro*, 544 F.3d at 1254 (dismissing claims against issuer when complaint failed to allege individual defendants acted with scienter).

## V.     CONCLUSION

For these reasons, and the reasons addressed in the Motion, the Court should dismiss the Complaint as to all Defendants, with prejudice, and reject the Report to the extent it concluded (i) a strong inference arose that Mr. Negron acted with scienter when the Company applied ASC 718 to the non-cash awards of the nine grantees at issue; and (ii) Mr. Negron's alleged scienter was imputable to Celsius.

---

[9] It is also not clear the Company would have benefited from this understating of a non-cash expense, because it would have no impact on cashflows, as acknowledged by the Report.  (Report at 26-27).

Date: March 6, 2023                                   Respectfully submitted,

*/s/ Theodore J. Sawicki*
Theodore J. Sawicki (Fla. Bar No: 656526)
tod.sawicki@alston.com
Joseph G. Tully, *pro hac vice*
joe.tully@alston.com
Jason R. Outlaw, *pro hac vice*
jason.outlaw@alston.com
Oyinkansola Y. Muraina, *pro hac vice*
oyinkan.muraina@alston.com
**ALSTON & BIRD**
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Attorneys for Defendants Celsius Holdings, Inc.,*
*John Fieldly, and Edwin Negron-Carballo*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2023, I caused the foregoing to be filed electronically with the Court's Case Management/Electronic Filing System ("CM/ECF"). Notice of this filing was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filing through CM/ECF.

*/s/ Theodore J. Sawicki*
Theodore J. Sawicki