**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CITY OF ATLANTA POLICE
OFFICERS' PENSION PLAN and
CITY OF ATLANTA FIREFIGHTERS'
PENSION PLAN, Individually and On
Behalf of All Others Similarly Situated,

                     Plaintiff,

v.

CELSIUS HOLDINGS, INC., JOHN
FIELDLY, and EDWIN NEGRON-
CARBALLO,

                     Defendants.

Case No. 9:22-cv-80418 (DMM) (WDM)

The Honorable Donald M. Middlebrooks

The Honorable William D. Matthewman

<u>CLASS ACTION</u>

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS CELSIUS HOLDINGS, INC.
AND EDWIN NEGRON-CARBALLO'S OBJECTIONS TO THE MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS'
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STANDARD OF REVIEW ................................................................................................... 3

ARGUMENT ......................................................................................................................... 5

I.  THE R&R CORRECTLY CONCLUDES THAT AN INFERENCE OF
    SCIENTER OUTWEIGHS NON-FRAUDULENT INFERENCES ................................. 5

II. DEFENDANTS' OBJECTIONS ARE MERITLESS ........................................................ 7

    A.  The R&R Did Not Solely Rely on a Misapplication of ASC 718 .......................... 7

        1.  Defendants' Failure to Distinguish Among Dissimilarly Situated
            Employees ........................................................................................................ 8

        2.  The Company's Proper Past Application of ASC 718 .............................. 11

        3.  Negron-Carballo's Knowledge of How ASC 718 Was Applied in
            Q2 and Q3 2021 ........................................................................................... 13

    B.  The R&R Properly Evaluated Allegations Pertaining to Motive ......................... 15

        1.  Incentive Bonus ........................................................................................... 15

        2.  Trading History ........................................................................................... 16

        3.  Inflated Net Income ..................................................................................... 18

III. NEGRON-CARBALLO'S SCIENTER MAY BE IMPUTED TO CELSIUS .................................... 20

IV. CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
  291 F.3d 336 (3rd Cir. 2002) ................................................................................4

*ACA Fin. Guar. Corp. v. Advest, Inc.*,
  512 F.3d 46 (1st Cir. 2008) ..................................................................................5

*In re AFC Enterprises, Inc. Sec. Litig.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) ................................................................19

*Alhassid v. Bank of America, N.A.*,
  60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..................................................................11

*Anderson v. Spirit AeroSystems Hldgs., Inc.*,
  105 F. Supp. 3d 1246 (D. Kan. 2015) ...................................................................6

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)................................................................19

*Carpenters Health and Welfare Fund of Philadelphia v. Coca-Cola Co.*,
  No. 1:00-CV-02838-WBH, 2002 WL 34089163 (N.D. Ga. Aug. 20, 2002) .........15

*Cutsforth v. Renschler*,
  235 F. Supp. 2d 1216 (M.D. Fla. 2002)................................................................18

*Druskin v. Answerthink, Inc.*,
  299 F. Supp. 2d 1307 (S.D. Fla. 2004) .................................................................19

*In re Eagle Building Techs., Inc. Sec. Litig.*,
  319 F. Supp. 2d 1318 (S.D. Fla. 2004) ..................................................................7

*In re Equifax Inc. Sec. Litig.*,
  357 F. Supp. 3d 1189 (N.D. Ga. 2019).................................................................18

*In re: January 2021 Short Squeeze Trading Litig.*,
  2023 WL 418821 (S.D. Fla. Jan. 9, 2023).............................................................11

*Macort v. Prem, Inc.*,
  208 F. App'x 781 (11th Cir. 2006) .........................................................................3

*Matrixx Initiatives, Inc. v. Siracusano*,
  131 S. Ct. 1309 (2011)..........................................................................................17

*In re MicroStrategy Inc. Sec. Litig.*,
  115 F. Supp. 2d 620 (E.D. Va. 2000) ...............................................................19

*Mizzaro v. Home Depot, Inc.*,
  544 F. 3d 1230 (11th Cir. 2008) .................................................................4, 14

*Mogensen v. Body Central Corp.*,
  2013 WL 8290493 (M.D. Fla. Sept. 19, 2013) ...............................................16

*Mulvaney v. Geo Grp., Inc.*,
  237 F. Supp. 3d 1308 (S.D. Fla. 2017) ...........................................................14

*Okla. Firefighters Pension and Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) ............................................................................4

*In re Paincare Hldgs. Sec. Litig.*,
  541 F. Supp. 2d 1283 (M.D. Fla. 2008) .....................................................18, 19

*In re Pegasus Wireless Corp. Sec. Litig.*,
  2009 WL 3055205 (S.D. Fla. Sep. 21, 2009) ...................................................12

*Public Empl. Ret. Sys. of Mississippi v. Mohawk Indus., Inc.*,
  564 F. Supp. 3d 1272 (N.D. Ga. 2021) ............................................................19

*Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*,
  847 F. Supp. 2d 1333 (S.D. Fla. 2012) .............................................................4

*Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt. Corp.*,
  111 F. Supp. 3d 1336 (S.D. Fla. 2015) .............................................................4

*Schultz v. Applica Inc.*,
  488 F. Supp. 2d 1219 (S.D. Fla. 2007) .............................................................8

*Shah v. Zimmer Biomet Hldgs, Inc.*,
  348 F. Supp. 3d 821 (N.D. Ind. 2018) ...............................................................5

*In re Spear & Jackson Sec. Litig.*,
  399 F. Supp. 2d 1350 (S.D. Fla. 2005) ...........................................................20

*In re Sportsline.com Sec. Litig.*,
  366 F. Supp. 2d 1159 (S.D. Fla. 2004). ...........................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................4, 15, 17

**Statutes**

28 U.S.C. § 636(b)(1) ...........................................................................................3

Lead Plaintiffs City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan (together, "Lead Plaintiffs") hereby submit this response to Defendants Celsius Holdings, Inc. ("Celsius" or the "Company") and Edwin Negron-Carballo's ("Negron-Carballo") (collectively, "Defendants") Objections ("Def. Obj.") (ECF No. 60) to the Magistrate Judge's Report and Recommendation filed on February 13, 2023 (the "R&R") (ECF No. 55).

## PRELIMINARY STATEMENT

On February 13, 2023, the Magistrate Judge issued the R&R which recommends that this Court sustain Lead Plaintiffs' claims that the Company fraudulently overstated its financial statements as to the Company and Negron-Carballo, the Company's Chief Financial Officer.[1] Defendants' attempt to have this Court overturn the Magistrate Judge's Report should be denied. The issues before the Magistrate Judge were fully litigated by both Defendants and Lead Plaintiffs, and his recommendations are warranted under the federal securities laws. This Court should therefore adopt the R&R.

Lead Plaintiffs' claims arise from Defendants' manipulation of accounting rules which allowed them to report inflated net income and net income per share figures in the second and third quarters of 2021. Investors and analysts were laser focused on these metrics, as the Company had been growing its revenues, but failing to show an increase in profitability. ¶¶ 3-4, 40-47.[2] Defendants were under significant pressure, therefore, to report positive net income figures, and they turned to accounting gimmickry to achieve this.

---

[1] The R&R recommends dismissal of Plaintiffs' claims that Defendants' assurances concerning the adequacy of the Company's internal controls were false. R&R at 35. He further recommends that claims against John Fieldly, the Company's CEO, be dismissed in their entirety. R&R at 31. Lead Plaintiffs do not object to these conclusions. ECF No. 57.

[2] All citations to "¶ __" refer to the Amended Complaint, ECF No. 44.

In certain instances, a company may decide to accelerate vesting schedules for stock-based compensation upon an employee's departure from a company.  When that occurs, ASC 718, which governs here, requires the employer to recognize the accelerated stock-based compensation as an expense, valued as of the date of the employee's departure.  ¶¶ 69-71.  In the second and third quarters of 2021, Celsius decided to accelerate the vesting schedules of RSUs for nine departing employees.  ¶¶ 8, 76.  The Company was therefore required to recognize the value of these RSUs as an expense, determined by the price of Celsius stock on the date of departure.  ¶ 77.  It did not do that, however.  Defendants' failure to correctly account for the nine departing employees' RSUs allowed them to report net income of $3.96 million instead of $780,000 in the second quarter of 2021, and of $2.75 million instead of *a loss of* $9.4 million in the third quarter of 2021.  ¶¶ 79-98.  Other financial metrics were also overstated in these quarters.  *Id.*

Defendants do not dispute that the net income figures were false and material.  The parties and the Magistrate Judge agree that Defendants' motion to dismiss Lead Plaintiffs' securities fraud claims rises and falls on whether the complaint adequately alleges Defendants' scienter.  The Magistrate Judge concluded that it does, based on the following facts: (1) the Company treated all nine departing employees the same, even though only *some* of them continued to provide services to the Company (R&R at 19-20); (2) the Company never before applied ASC 718 improperly since its adoption in 2007, and does not explain why it would have treated these nine departing employees differently than previously-departed employees (R&R at 20); (3) Negron-Carballo was the CFO and Principal Accounting Officer and the head of a small accounting department, and therefore knew how ASC 718 was being applied to the nine employees who departed in 2021 (R&R at 21); and (4) Negron-Carballo was motivated to enhance his incentive bonus (R&R at 28).  The R&R also rejected several allegations of scienter and noted that these allegations "undercut

2

that inference" of scienter.  R&R at 31.  Still, the R&R found that "[o]n balance . . . the inference of scienter arising from the inconsistent application of ASC 718 outweighs the countervailing factors."  R&R at 31.

Defendants' explanation for why they failed to apply ASC 718 in the second and third quarters of 2021 is taken directly from the statements they made when they disclosed the truth. Specifically, Defendants stated there was an "error in interpretation."  ¶ 88.  John Fieldly, the Company's CEO, elaborated on this "error," stating that *some* of the employees whose RSUs were improperly accounted for continued to provide services to the Company, purportedly creating confusion as to whether or when the accelerated RSUs should be treated as expenses.  *Id*.

The Magistrate Judge correctly concluded that Defendants' explanation for the error is not plausible.  If the confusion that led to the "error in interpretation" resulted from the fact that *some* of the employees continued to provide services to the Company, why then did the Company fail to expense the RSUs for all nine employees who had departed?  At best, Defendants' competing inference would only apply to a sub-set of the nine departing employees, and this renders the entirety of this explanation less compelling than an inference that ASC 718 was deliberately, or at least recklessly, applied incorrectly.  The Magistrate Judge thus correctly concluded that on balance, the inference of scienter outweighed the competing, non-fraudulent inference.

### STANDARD OF REVIEW

The district court conducts a *de novo* review of the portions of the report and recommendation to which objection is made.  *Macort v. Prem, Inc.*, 208 F. App'x 781, 783-84 (11th Cir. 2006); *see also* 28 U.S.C. § 636(b)(1).  The district court may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  *Macort*, 208 F. App'x at 784; 28 U.S.C. § 636(b)(1).

3

A complaint alleging facts that the defendant acted with "an intent to deceive, manipulate, or defraud or severe recklessness" satisfies the scienter standard. *Mizzaro v. Home Depot, Inc.*, 554 F. 3d 1230, 1238 (11th Cir. 2008). The allegations must be supported by particular facts that "giv[e] rise to a strong inference that the defendant acted with the required state of mind." § 78u-4(b)(2). The inquiry does not look into "factual merits," but is rather about "plausibility of pleadings." *Okla. Firefighters Pension and Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 213 (5th Cir. 2023) (refusing to place "excessively difficult burden" on plaintiff at the pleading stage because it would require "investigation into those 'industry-specific and inherently fact-bound proposition[s]' that are inappropriate at the pleading stage"). The PSLRA was not enacted to "raise the pleading burdens . . . to such a level that facially valid claims . . . must routinely be dismissed." *Id.* (citing *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 354 (3rd Cir. 2002). Although the PSLRA "changed federal securities law, it did not eliminate it." *ABC Arbitrage Plaintiffs Grp.*, 291 F.3d at 354. *See also Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt. Corp.*, 111 F. Supp. 3d 1336, 1373 (S.D. Fla. 2015) (the court need only conclude that a reasonable person would infer at least a fifty-fifty chance that defendant knew about the alleged fraud or was severely reckless in not knowing); *Quail Cruises Ship Mgmt., Ltd. v. Agencia de Viagens CVC Tur Limitada*, 847 F. Supp. 2d 1333, 1344 (S.D. Fla. 2012) (the complaint survives "if the strength of the inference of scienter is equal to or greater than the strength of any opposing inference").

*Tellabs* instructs that when analyzing motions to dismiss Section 10(b) securities claims, courts must, as with "any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Complaints are reviewed holistically to determine if "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter;" the inquiry is

4

not whether any "individual allegation scrutinized in isolation" meets the standard. *Id.* at 323 (emphasis in original). Finally, courts must consider whether the inference of scienter outweighs "plausible opposing inferences." A complaint will survive if the inference of scienter is "***at least as compelling***" as opposing inferences, *id.* at 324 (emphasis added); *i.e.*, "a tie goes to the plaintiff." *Shah v. Zimmer Biomet Hldgs, Inc.*, 348 F. Supp. 3d 821, 845 (N.D. Ind. 2018) (finding inference in plaintiff's favor even though "Defendants' proffered inference . . . is certainly not implausible" because "a tie goes to the plaintiff at this stage in the litigation") (citing *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 59 (1st Cir. 2008)).

**ARGUMENT**

**I.      THE R&R CORRECTLY CONCLUDES THAT AN INFERENCE OF SCIENTER OUTWEIGHS NON-FRAUDULENT INFERENCES**

The R&R details the reasons underlying its recommendation that this Court deny Defendants' motion to dismiss as to Defendants Celsius and Negron-Carballo. ECF No. 55. The Magistrate Judge reviewed nearly 70 pages of briefing from the parties and held oral argument which lasted for approximately two hours. ECF Nos. 47-49, 56. The 37-page R&R meticulously discusses the facts, allegations, and legal arguments asserted by the parties. ECF No. 55.

The R&R concludes that Plaintiffs established a strong inference of scienter with regard to the improper application of ASC 718 by Negron-Carballo and the Company regarding the stock option modifications of nine former employees. R&R at 18-20. This conclusion is based on facts alleged by Plaintiffs that collectively outweighed any countervailing inferences, even taking into account allegations which cut against an inference of scienter. *Id*. at 31.

***First***, in explaining why the Company misapplied ASC 718 for nine departing employees in 2021, the Company claimed there was an "error in interpretation." *Id*. at 16. Fieldly further stated that "there was a technical aspect there because ***some*** of [the former employees] are still

5

providing services through contractual services." *Id.* at 19 (emphasis added). But Defendants failed to recognize the stock modifications of *any* of the nine former employees, even though only *some* of them continued to provide services to the Company while some did not. *Id.* at 19-20. Defendants could never explain why the "error in interpretation," which applied to only "some" of the departing employees, resulted in the improper application of ASC 718 for all nine employees. *Id.* at 20. Since there was no competing inference to be drawn from these allegations, they created a strong inference of scienter. R&R at 20.

***Second***, Celsius had applied ASC 718 without error since 2006. *Id.* at 18. This further undercuts Defendants' explanation that the misapplication in 2021 was due to an "error in interpretation." *Id.* at 16. Defendants do not contest they had properly applied ASC 718 in the past. *Id.* at 18. Thus, in applying ASC 718 in 2021, the Company treated the nine former employees differently than past employees who resigned or were terminated and had their stock options modified. *Id.* at 19. The R&R concluded that this also created a strong inference of scienter.

***Third***, the Magistrate Judge considered Lead Plaintiffs' allegations that Negron-Carballo knew that ASC 718 was being improperly applied because he was a hands-on manager overseeing a small, understaffed accounting department that followed very loose accounting processes and procedures. *Id.* at 21. Based on these facts, the Magistrate Judge inferred that Negron-Carballo knew ASC 718 was being applied incorrectly.[3] *Id.* at 21.

---

[3] The timing of Negron-Carballo's resignation suggests it was connected to the earnings restatement and misapplication of ASC 718. *Id.* at 25. The Magistrate Judge determined that equal inferences could be drawn from the timing of the resignation, but ultimately rejected timing as a factor supporting scienter. Nevertheless, the resignation supports scienter because a "tie" or equally plausible inference should be resolved in favor of Plaintiffs. *See Anderson v. Spirit AeroSystems Hldgs., Inc.*, 105 F. Supp. 3d 1246, 1262 (D. Kan. 2015).

*Fourth*, Defendants had incentive to inflate the Company's profitability to increase their bonus compensation. R&R at 28. Fieldly and Negron-Carballo's bonus compensation – which makes up a substantial portion of their overall fiscal year 2021 compensation – was affected by the Company's financial performance. *Id*. Specifically, Negron-Carballo's bonus accounted for 27% of his 2021 compensation package. *Id*. The Magistrate Judge found that this compensation arrangement made at least some contribution to the inference of scienter. *Id*.

Considering these factors collectively, the R&R found the inference of Negron-Carballo's scienter cogent, compelling and imputable to Celsius. *Id*. at 31-32. Even though there were factors which did not support a finding of scienter, and which therefore "undercut" the inference of scienter, these factors did not outweigh the facts outlined above, and in particular, the lack of a "plausible nonculpable explanation for why [Negron-Carballo] would treat the nine departing employees, all of whom were not similarly situated in terms of their continued service to Celsius, the same for accounting purposes." *Id*. at 31. Accordingly, the R&R properly recommends denying Defendants' motion to dismiss as to Defendants Negron-Carballo and Celsius. *Id*.

## II.   DEFENDANTS' OBJECTIONS ARE MERITLESS

### A.   THE R&R DID NOT SOLELY RELY ON A MISAPPLICATION OF ASC 718

Defendants incorrectly assert that the R&R "dr[e]w a strong inference of scienter based on nothing more than a misinterpretation of GAAP." Def. Obj. at 10. Defendants' assertion fails to distinguish between the underlying fraud (improper application of ASC 718) and the facts that create a compelling inference that Negron-Carballo knew the Company was improperly applying ASC 718.

Defendants ask this Court to ignore the factual context of Lead Plaintiffs' allegations. However, "[c]ontext plays a role in determining whether a plaintiff has alleged the requisite level of scienter." *In re Eagle Building Techs., Inc. Sec. Litig.*, 319 F. Supp. 2d 1318, 1331 (S.D. Fla.

7

2004).  Scienter is alleged "[w]hen the [] GAAP violations are combined with the magnitude of the fraud or red flags."  *Id*.  Red flags are usually present in a securities fraud action.  *See Schultz v. Applica Inc.*, 488 F. Supp. 2d 1219, 1225 (S.D. Fla. 2007).

Although here the underlying fraud was accomplished by the improper application of an accounting rule, the inference of scienter was drawn from distinct red flags: (1) the Company's uniform treatment of the nine former employees' stock option modification, even though they were not all identically situated; (2) the Company's history of correctly applying ASC 718 since 2007; (3) Negron-Carballo's knowledge of how ASC 718 was applied to the nine employees at issue. R&R at 18-20.

### 1.  Defendants' Failure to Distinguish Among Dissimilarly Situated Employees

The Amended Complaint states – and Defendants do not contest – that ASC 718 was wrongly applied in compiling the original 2021 financial statements.  R&R at 18.  The Company announced the restatement in a Form 8-K filed with the SEC on March 1, 2022.  ¶ 84. Subsequently, during an earnings call discussing the restatement, Fieldly explained that the improper application of ASC 718 was a "technical aspect … because *some of them* are still providing services through contractual services…That was an error in interpretation there on those stock awards.  So it was definitely an oversight…"  ¶ 88 (emphasis added).  As the R&R notes, Defendants confirmed this in their motion to dismiss explaining that "the error in applying ASC 718 *at least in part arose* from the face that *some* of the former employees and retired directors at issue would continue to provide services to Celsius under contracts past the date of their termination or retirement…"  R&R at 18.  Fieldly thus attributes the purported confusion that led to the "error in interpretation" to the fact that some subset of the nine employees whose RSUs were improperly accounted for were continuing to provide services to the Company.

8

Of critical importance, however, is the fact that although only *some* of the nine departed employees continued to provide services, thereby creating purported confusion about the accounting for their accelerated RSUs, the Company misapplied ASC 718 as to *all* of them.  The purported confusion could not extend to all nine employees as not all of them continued to provide services to the Company.  Defendants had no explanation – not in their motion to dismiss, not at oral argument, and not in their objections currently before this Court – for why they would have misapplied ASC 718 for *all* nine employees, when only *some* of them continued to provide services to the Company.  This fact alone eviscerates Defendants' claimed innocent explanation for the misapplication of ASC 718, and the Magistrate Judge thus properly drew strong inference of scienter.

Grasping at straws, Defendants now advance a new argument concerning Fieldly's explanation for the accounting error.  They assert that to reach the conclusion in the R&R, the Magistrate Judge "needed to infer that" Mr. Fieldly's reference to the "some employees" that "would continue to provide services to Celsius" was a reference to "a subset of the nine grantees referenced in the Form 10-K Celsius issued later that month, rather than all nine."  Def. Obj. at 16. They urge that another inference can be drawn:  that the *all* of the nine referenced employees whose stock-based compensation contributed to the restatement continued to provide services, and that this was a subset of some other, undescribed, unenumerated set of employees, i.e., "some larger group of directors and employees" who left Celsius in 2021.  *Id.*

This argument should be rejected for at least three reasons.  ***First***, Defendants now contradict the position that they took in their motion to dismiss.  There, Defendants argued that the Company:

> understated the non-cash expense of share-based compensation associated with some former employees and directors in the second and third quarters . . . [and that]

9

> the error in applying ASC 718 ***at least in part arose*** from the fact that ***some of the former employees and retired directors at issue would continue to provide service***s to Celsius under contracts past the date of their termination or retirement.

ECF No. 47 at 10-11.  Thus, Defendants previously agreed with Lead Plaintiffs and the Magistrate Judge that the former employees and retired directors were a subset of the nine employees when they refer to "some of the former employees and retired directors at issue," i.e., "some" of the nine whose accelerated RSUs were improperly accounted for.  This is confirmed by their admission that employees who continued to provide services explains the error in interpretation only "***in part***".

    ***Second***, the tortured inference Defendants urge this Court to draw is implausible. Considering the entirety of the disclosures, as Defendants urge is proper (Def. Obj. at 16-17), reveals that there can be no inference that *all* of the nine employees whose stock-based compensation resulted in the restatement continued to provide services to the Company.  In the earnings call on March 1, 2022, Negron-Carballo first addressed the accounting error, stating that the misapplication of ASC 718 occurred as to "former foundational employees and retired directors" whose "RSUs were allowed to continue to pass after the employees separated and the directors retired from the company."  ¶ 87.  He never mentioned that any of these employees, let alone all of them, continued to provide services to the Company.  He reiterated this position later in the call, when he stated that "the expense" associated with the nine departing RSUs "should have been calculated and recognized using the firm market value of the stock as of the date of termination or retirement."  *Id.*  Again, Negron-Carballo did not mention anything about a subset of employees who continued to provide services.  And a third time during the same call, Negron-Carballo avoided any mention of employees who continued to provide services when, in responding to an analyst question, Negron-Carballo repeated that the restatement resulted from

"some of the awards that had to be properly valued at fair market value for some of these employees that were separated and some of the Board members that also retired."  ¶ 88.  Once again, he referred to all nine employees together, and did not mention that any were continuing to provide services to the Company.

It was Fieldly's statement, however, that betrayed the implausibility of the "error in interpretation" defense.  Following up on Negron-Carballo's response to an analyst, where he described the accounting for *all* departing employees in 2021, and did not mention that anyone continued to provide services, Fieldly added "And I'll just chime in, in regards to *some* of *the employees*, it was *also* – it's a technical aspect because *some of them are still providing services through contractual services*."  *Id.* (emphasis added).  In context, the only inference to be drawn is that the confusion that purportedly created an "error in interpretation" was due to a *subset* of employees who were continuing to provide services.

***Third***, to the extent there is any dispute about what Fieldly meant when he stated that "some of the employees" continued to provide services to the Company, that is a question of fact which is not properly resolved on a motion to dismiss.  *See In re: January 2021 Short Squeeze Trading Litig.*, 2023 WL 418821, at *10 (S.D. Fla. Jan. 9, 2023) ("Defendant's assertions at best raise a question of fact, inappropriate for resolution on a motion to dismiss."); *see also Alhassid v. Bank of America, N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014).

In short, Defendants' Objections fail again to explain why *all* departing employees' RSUs were improperly accounted for even though only *some* of them continued to provide services to the Company.

### 2.     The Company's Proper Past Application of ASC 718

Defendants criticize the Magistrate Judge's inference that "[w]hen employees had left before 2021 and had their stock options modified, Celsius properly recognized the compensation

11

as a current expense." Def. Obj. at 10-15. Defendants assert that the allegations of past application

of ASC 718 were "conclusory."[4]

Furthermore, the Company's proper previous application of ASC 718 can be inferred from

the following facts, all of which must be taken as true:

- Celsius adopted ASC 718 on January 1, 2006. ¶ 67.

- Celsius first began compensating employees with share-based compensation on January 18, 2007. ¶ 59.

- Expensing for share-based compensation has been a longstanding practice at Celsius since 2006, when the Company first determined that it would use ASC 718 to account for non-cash based compensation. ¶ 152.

- Employees and directors had retired for years, and thus, RSU and ISO awards were modified, yet Celsius never experienced a similar accounting problem. ¶ 152.

- Celsius has liberally compensated its employees in non-cash based awards since 2007. ¶¶ 5, 59-66.

It is reasonable to infer from these facts that the Company had properly applied ASC 718 to

accelerated non-cash based compensation in the past. R&R at 19-20. Indeed, if it had not properly

applied ASC 718, it would have had to restate figures for additional former employees, and not

just the nine employees who departed in 2021. But there has been no such restatement. The

Magistrate Judge agreed during oral argument, stating that a "reasonable inference" could be

---

[4] Defendants' cases are distinguishable. *In re Sportsline*, 366 F. Supp. 2d 1159 (S.D. Fla. 2004), concerned much smaller misstatements of net income, ranging from 3.5% to 15.8%, which contrasts with Celsius's errors in net income of 80% in the second quarter of FY 2021 and 441% in the third quarter of FY 2021. *Compare In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1170 (S.D. Fla. 2004) *with* ¶ ¶10, 91, 98, 103. Defendants' reliance on *In re Pegasus Wireless Corp. Sec. Litig.*, 2009 WL 3055205 (S.D. Fla. Sep. 21, 2009) is also misplaced because there, the plaintiffs failed to allege any facts supporting their inferences of fraud, including the absence of any red flags in connection with GAAP violations. *Id*. at 6–7.

drawn that "over this period of time a company of this size is going to have people leaving" and ASC 718 would have applied to them.  Tr. at 41:21-24.[5]  He further agreed that to the extent there is an equal inference that the Company had never applied ASC 718 in the past, the tie goes to the plaintiff.  Tr. at 42:1-6.  Finally, the Magistrate Judge noted that when "looking at the individual facts" and the "individual evidence," they must be viewed in the "light most favorable to the plaintiff."  *Id.* at 42:7-13.

Defendants also argue that because the R&R "rejected" the allegation that ASC 718 involved "very basic GAAP shares," the Company's past application of the provision was meaningless.  Def. Obj. at 11.  But that improperly conflates the complexity of the rule with the Company's ability to apply the rule.  Regardless of how difficult ASC 718 is to apply, the Company never disclosed any problems applying it in the past.  In short, Defendants' arguments that the Court should disregard allegations concerning the Company's proper past application of ASC 718 should be rejected.

### 3.    Negron-Carballo's Knowledge of How ASC 718 Was Applied in Q2 and Q3 2021

Defendants argue that no inference can be drawn that Negron-Carballo knew how ASC 718 was applied in the past and in connection with the nine departing employees in the second and third quarters of 2021.  Def. Obj. at 13.  These arguments should be rejected.

***First***, Defendants misconstrue the import of the R&R's analysis of Negron-Carballo's involvement.  The R&R observed that the facts "imply that Mr. Negron-Carballo would have been aware of how the Company was accounting for the stock options and that he approved of that procedure."  R&R at 21.  It further concludes, "[b]ecause the record implies that Mr. Negron-

---

[5] All citations to "Tr. at __" refer to the transcript from the motion to dismiss hearing held on December 13, 2022, ECF No. 56.

Carballo knew how ASC 718 was being applied, it can therefore be inferred that he knew it was being applied incorrectly, and that he did so with scienter." *Id.* The R&R did not conclude, as Defendants argue, that Negron-Carballo "acted alone and without apparent oversight." Def. Obj. at 13. And even if that inference had been drawn, it is a reasonable one. Negron-Carballo, as the Chief Financial Officer and Principal Accounting Officer of Celsius would presumably have the final say and plenary oversight over decisions of how to account for expenses. Negron-Carballo also signed the quarterly reports and SOX certifications. ¶¶ 28-29.

*Second*, Defendants incorrectly assert that allegations from Lead Plaintiffs' confidential witnesses lacked specificity. Def. Obj. at 13-14. Allegations made with particularity are afforded significant weight. Confidentiality "should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame." *Mizzaro*, 544 F. 3d at 1240. As the R&R states, "Plaintiffs rely on confidential witnesses to allege that Mr. Negron-Carballo and the accounting department had a history of delaying payment of bills 'to keep costs low and elevate cash flows.'" R&R at 25. However, although the R&R did not resolve whether the confidential witness evidence was properly considered, the R&R found this factor neutral in showing scienter. *Id.* at 26.

Further, Defendants' reliance on *Mulvaney v. Geo Grp., Inc.*, 237 F. Supp. 3d 1308 (S.D. Fla. 2017) to undercut the R&R's conclusion that Negron-Carballo was a "hands-on manager" is misplaced. In *Mulvaney*, the court held that plaintiffs' allegation that an executive was hands on, "without specific allegations of the Individual Defendants' role in the fraud," does not lead to an inference of scienter. *Id.* at 1324. Here, Lead Plaintiffs *have* specifically alleged facts demonstrating Negron-Carballo's role in the fraud as CFO of a small accounting department and

14

participation in the accounting of employee stock-based compensation.  R&R at 21; *see Carpenters Health and Welfare Fund of Philadelphia v. Coca-Cola Co.*, No. 1:00-CV-02838-WBH, 2002 WL 34089163 at *16 (N.D. Ga. Aug. 20, 2002) (finding strong inference of scienter in connection with GAAP violations where plaintiffs alleged "that Defendants were officers of [the Company], that they were hands on managers active in the day to day operations and fully familiar with all aspects of the businesses and financial conditions and operations).  Thus, Defendants' argument that our allegations are "conclusory" is incorrect and improper at this stage in the litigation.

*Third*, Defendants' argument that the R&R "shifted the burden" on Defendants "to rebut the Complaint's allegations by asserting specific facts about Celsius's past application of ASC 718…" is erroneous.  Def. Obj. at 15.  In fact, *Tellabs* instructs that courts must weigh inferences that favor defendants against those that favor plaintiffs in the scienter analysis.  If no competing inference is offered, then the Court cannot draw an inference in Defendants' favor.  Here, Defendants did not argue that Celsius either (i) had never applied ASC 718 in the past or (ii) had never applied ASC 718 improperly in the past.  The R&R was simply pointing out that without any proffer of a competing inference, he was able to credit Lead Plaintiffs' allegations concerning past application of ASC 718.  *See* R&R at 19 n.7.

### B.   THE R&R PROPERLY EVALUATED ALLEGATIONS PERTAINING TO MOTIVE

#### 1.   Incentive Bonus

The R&R properly drew an inference, albeit a "weak" one, that Negron-Carballo had motive to commit securities fraud because the Individual Defendants' bonus compensation was affected by the Company's financial performance.  R&R at 28.  The R&R also made clear that this inference played a miniscule role, if any, in his recommendation, stating that "[t]he inference of Mr. Negron-Carballo's scienter is cogent and compelling, in large part because at this stage there

15

is no other equally plausible nonculpable explanation for why he would treat the nine departing employees, all of whom were not similarly situated in terms of their continued service to Celsius, the same for accounting purposes." *Id.* at 31.

Defendants argue that the R&R's inference concerning bonuses was "improper" because Negron-Carballo received his bonus after the Class Period based on the restated financials. Def. Obj. at 9. However, Negron-Carballo did not know that the financials would be restated when he decided to apply ASC 718 improperly. Defendants' argument focuses on the actual bonus he received, rather than his motive at the time the fraud occurred.

In fact, the Defendants gave the same explanation at oral argument explaining that Plaintiffs' allegations regarding the "financial motives" were "objectively [] wrong" because the "Compensation Committee benchmarked the cash bonuses" using the restated financials. Tr. at 18:18-19:2; *see also* Tr. at 22:1–5 (same). Defendants conceded that, if the Company had reported increased profitability (i.e., higher net income) they could have gotten higher bonuses thereby negating their motive argument. *See* Tr. at 56:1-25. Thus, the R&R correctly found that his bonus compensation contributed to the inference of scienter. R&R at 28.

### 2.    Trading History

Although Lead Plaintiffs did not make any allegations concerning Defendants' stock sales, the R&R evaluated evidence that Defendants submitted concerning Negron-Carballo's non-Class Period transactions in Company stock, and noted that this undercut a motive to inflate bonuses. R&R at 30. The R&R further properly noted that "[t]he Amended Complaint does not allege that Mr. Negron-Carballo conducted any stock sales during the relevant time period." Therefore, to the extent that the Magistrate Judge did not consider Mr. Negron-Carballo's stock sales, this was proper. *Cf. Mogensen v. Body Central Corp.*, 2013 WL 8290493, at *5 (M.D. Fla. Sept. 19, 2013)

16

(taking judicial notice of Forms 4 evidencing stock sales only because "plaintiff has put trading history at issue").

Further, the R&R properly considered any factors weighing against a finding of scienter. It concluded that the scienter inference is based "in large part because at this stage there is no other equally plausible nonculpable explanation for why he would treat the nine departing employees, all of whom were not similarly situated in terms of their continued service to Celsius, the same for accounting purposes. *To the extent other factors do not support a finding of scienter, they undercut that inference.*" R&R at 31.

Furthermore, Defendants overstate the importance of motive in evaluating scienter. The Supreme Court has made clear that "[t]he absence of a motive allegation, though relevant, is not dispositive." *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1324 (2011); *Tellabs*, 551 U.S. at 310, 325. In arguing that Negron-Carballo's lack of Class Period stock sales "weighs heavily against any inference of scienter," Def. Obj. at 3, Defendants urge this Court to find this fact dispositive, which is improper.

Finally, Defendants employ faulty logic in their argument concerning Negron-Carballo's stock sales. As they point out, Negron-Carballo sold more than 95% of his shares for gross proceeds of over $9 million on June 14, 2021. R&R at 14. They imply that if he had been intending to deceive investors, he would have waited to sell his stock until the Class Period. But the timing does not align with this argument. The nine employees at issue departed the Company in the second and third quarters of 2021, and the bulk of the impact was experienced in the third quarter of 2021 (i.e., July-September 2021), when the Company was able to turn at $9 million loss in to a $2 million profit. Thus, when Negron-Carballo sold his stock, he would not have known that there

17

would be an opportunity to use ASC 718 to the Company's advantage, and no negative inference can be drawn from Negron-Carballo's June 14, 2021 stock sale.

Defendants' reliance on *Cutsforth v. Renschler*, 235 F. Supp. 2d 1216, 1250 (M.D. Fla. 2002) is also misplaced.[6]  *Cutsforth* held that there should be a negative inference where the entirety of plaintiffs' scienter allegations were "flimsy."  *Id*.  Here, in contrast, as the R&R concludes, Lead Plaintiffs have alleged facts creating a strong and compelling inference of scienter.  *See* R&R at 28 (holding that the bonus compensation arrangement contributes to the inference of scienter); *id.* at 31; *see also In re Paincare Hldgs. Sec. Litig.*, 541 F. Supp. 2d 1283, 1291 (M.D. Fla. 2008) (plaintiff adequately pleads scienter where the inference of scienter is equal to the inference of non-fraudulent intent).

### 3.    Inflated Net Income

The R&R implied that the market's "laser focus" on net income, the metric that the Company overstated, "could imply improper intent."  R&R at 26-27.  Net income and net income per share – were critical to investors and analysts who were concerned about the Company's profitability following a period of costly revenue growth.  *Id*. at 26 (citing ¶¶ 40-47).  In fact, even with the inflated income numbers, Celsius's stock dropped by approximately 20% after reporting a $2 million decrease in net income in 2021 from the same quarter in 2020.  *Id*. at 14.  To the extent the R&R weighed this inference in concluding that scienter was pled, this was proper.

"Where the number, size, timing, nature, frequency, and context of the GAAP violations or restatement are taken into account, the balance of the inferences to be drawn from such

---

[6] *Cutsforth* has also been criticized in *In re Equifax Inc. Sec. Litig.*, 357 F. Supp. 3d 1189, 1217 n. 173 (N.D. Ga. 2019) for improperly holding that a failure to disclose corporate mismanagement was not actionable. *Ebix* concluded that "the reasoning in *Custforth* and similar cases" was "unconvincing." *Id.*

allegations may shift significantly in favor of scienter." *In re AFC Enterprises, Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1372 (N.D. Ga. 2004); *see also In re MicroStrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 637 (E.D. Va. 2000) (holding that the magnitude of the GAAP errors and restatements amounted to a "night-and-day difference with regard to [the Company's] representations of profitability – as to compel an inference that fraud or recklessness was afoot."). Further, Courts view overstated income, specifically, as probative of scienter. *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 721-22 (W.D. Tex. 2010) ("Many courts have held significant overstatements of revenue or income 'tend to support the conclusion that defendants acted with scienter.'") (collecting cases) (citation omitted).

Defendants cite *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1334 (S.D. Fla. 2004) for the proposition that general motives do not support a strong inference of scienter. Def. Obj. at 18. Although insufficient to establish scienter, courts in this circuit have found allegations regarding Defendants' conduct "to further inflate profits and margins", when viewed in the light most favorable to Plaintiff, supports an inference of scienter. *See Public Empl. Ret. Sys. of Mississippi v. Mohawk Indus., Inc.*, 564 F. Supp. 3d 1272, 1303 (N.D. Ga. 2021).

*In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283 (M.D. Fla. 2008) found scienter had been adequately pled to all defendants where plaintiff alleged that (i) defendants manipulated the financials to fuel Company growth, and (ii) defendants gave a "false rationalization for the restatements, claiming they were due to 'evolving interpretation[s] of accounting rules' when, in fact, the rules were well-established." *Id*. at 1292.

Here, the culmination of facts – including Defendants' conduct in manipulating Celsius's net income, Defendants' rationalization for the restatement, and the markets laser focus on Celsius's net income – support a strong inference of scienter. Further, as Plaintiffs' counsel

explained during oral argument, "at a minimum, you can draw the inference that the CEO and the CFO knew that the market was concerned about net income" based on conversations they had with concerned analysts.  Tr. at 35:15-36:3.

## III.   NEGRON-CARBALLO'S SCIENTER MAY BE IMPUTED TO CELSIUS

The intentional misapplication of ASC 718 under Negron-Carballo was intended to benefit the Company.  R&R at 32.  "Courts have uniformly held that acts of a corporate officer that are intended to benefit a corporation to the detriment of outsiders are properly imputed to the corporation."  *In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1361 (S.D. Fla. 2005) (internal citation omitted).  "Similarly, knowledge of individuals who exercise substantial control over a corporation's affairs is properly imputable to the corporation."  *Id*.

Defendants fail to make any arguments regarding imputing Negron-Carballo's scienter to Celsius, but instead reiterate their objection to the R&R's finding that Plaintiffs pled a strong inference of scienter.  Thus, scienter is properly imputed to the Company.

## IV.   CONCLUSION

For the reasons stated above, the Court should adopt the Report and Recommendation filed on February 13, 2023 by Magistrate Judge Reinhart.

Dated: March 13, 2023

> /s/ *Daniel L. Berger*
> Daniel L. Berger (admitted pro hac vice)
> Caitlin M. Moyna (admitted pro hac vice)
> GRANT & EISENHOFER P.A.
> 485 Lexington Avenue
> New York, NY 10017
> Tel.: (646) 722-8500
> Fax: (646) 722-8501
> Email: dberger@gelaw.com
> Email: cmoyna@gelaw.com

*Lead Counsel for City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan*

/s/ *Robert D. Klausner*
Robert D. Klausner
KLAUSNER KAUFMAN JENSEN & LEVINSON
7080 NW 4th Street
Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com

*Liaison Counsel for City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan*

/s/ *Jeffrey Reeves*
Jeffrey Reeves
(pro hac vice admission pending)
THE REEVES LAW FIRM, LLC
1100 Peachtree Street
Suite 250
Atlanta, GA 30309
Tel.: (404) 795-6139
Fax: (888) 209-5048
Email: jeff@reeveslawfirmpc.com

*Additional Counsel for City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan*

21