**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| CITY OF ATLANTA POLICE OFFICERS' PENSION PLAN and CITY OF ATLANTA FIREFIGHTERS' PENSION PLAN, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br>v.<br><br>CELSIUS HOLDINGS, INC., JOHN FIELDLY, and EDWIN NEGRON-CARBALLO,<br><br>              Defendants. | Case No. 9:22-cv-80418 (DMM) (WDM)<br><br>The Honorable Donald M. Middlebrooks<br><br>The Honorable William D. Matthewman<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................... iii

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY ............... 3

        A.      PLAINTIFFS ........................................................................................ 3

        B.      DEFENDANTS ..................................................................................... 3

        C.      ALLEGATIONS AGAINST DEFENDANTS ................................................ 3

III.    ARGUMENT .................................................................................................. 5

        A.      THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION ..................... 5

        B.      RULE 23(A) IS SATISFIED ................................................................... 6

                1.      The Proposed Class Is So Numerous That Joinder of All
                        Respective Class Members Is Impracticable ............................... 6

                2.      Questions of Law and Fact Are Common to Members of the Class .......... 7

                3.      The Proposed Class Representatives' Claims Are Typical........................ 8

                4.      The Representative Parties and Their Counsel Are Adequate.................... 9

                        a.      There Are No Conflicts Between the Class Representatives
                                and the Class ................................................................... 10

                        b.      Lead Plaintiffs Are Adequate to Serve as Class
                                Representatives ................................................................ 10

                        c.      Proposed Class Counsel Are Adequate........................................ 11

        C.      THE PROPOSED CLASS SATISFIES RULE 23(B)(3)................................. 11

                1.      Common Questions of Law and Fact Predominate Over Individual
                        Questions.............................................................................. 12

                        a.      Celsius Common Stock Experienced a High Weekly
                                Trading Volume .............................................................. 14

                        b.      Numerous Financial Analysts Covered and Reported on
                                Celsius During the Class Period .................................. 14

    c.    Multiple Market Makers Used for Celsius.................................... 15

    d.    Celsius's Public Float Sufficiently Satisfies the Form S-3 Eligibility Requirements ............................................................... 15

    e.    The Price of Celsius's Common Stock Reacted to New, Company-Specific Information During the Class Period ............. 16

    f.    Celsius's Market Capitalization and Float.................................... 17

    g.    The Bid-Ask Spread of Celsius's Common Stock........................ 18

  2.    A Class-Wide Damages Methodology Is Available ................................. 18

  3.    A Class Action Is Superior to Other Available Methods of Adjudication........................................................................................... 19

IV.    CONCLUSION............................................................................................................ 20

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Acuity Brands, Inc. Sec. Litig..,*
    No. 1:18-CV-2140-MHC, 2020 WL 5088092 (N.D. Ga. Aug. 25, 2020)..........................18, 19

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)....................................................6, 12

*In re Amerifirst Sec. Litig.,*
    139 F.R.D. 423 (S.D. Fla. 1991)........................................................................................8

*Anderson v. Bank of the S.,*
    118 F.R.D. 136 (M.D. Fla. 1987)......................................................................................6

*Aranaz v. Catalyst Pharm. Partners, Inc.,*
    302 F.R.D. 657 (S.D. Fla. 2014)................................................................................ *passim*

*Avery v. Uniroyal Tech. Corp..,*
    No. 8:02CV2238T27MAP, 2005 WL 1205607 (M.D. Fla. May 20, 2005) .............................7

*Basic v. Levinson,*
    485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)........................................................12

*C-Mart, Inc. v. Metro. Life Ins. Co.,*
    299 F.R.D. 679 (S.D. Fla. 2014)................................................................................ *passim*

*Cammer v. Bloom,*
    711 F. Supp. 1264 (D.N.J. 1989) .......................................................................................13, 14

*Cheney v. Cyberguard Corp.,*
    213 F.R.D 484 (S.D. Fla. 2003).........................................................................................8

*Cox v. Am. Cast Iron Pipe Co.,*
    784 F. 2d 1546 (11th Cir. 1986) ........................................................................................6

*Einhorn v. AxoGen Inc.,*
    Case No.: 8:19-cv-69-EAK-AAS, 2019 WL 5636382 (M.D. Fl. Apr. 30, 2019) ...................11

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    563 U.S. 804, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011).......................................................12

*Halliburton Co. v. Erica P. John Fund, Inc.,*
    573 U.S. 258, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014)..............................................12, 13

*In re HealthSouth Corp. Secs. Litig.,*
    261 F.R.D. 616 (N.D. Ala. 2009)............................................................................13, 14, 15

*In re Internap Network Servs. Corp. Sec. Litig.*,
 No. 1:08-cv-03462, 2012 WL 12878579 (N.D. Ga. Aug. 22, 2012)...............................8, 9, 12

*Keim v. ADF MidAtlantic, LLC*,
 328 F.R.D. 668 (S.D. Fla. 2018)........................................................................................10

*Kirpatrick v. J.C. Bradford & Co.*,
 827 F. 2d 718 (11th Cir. 1987) ...........................................................................................9

*Kornberg v. Carnival Cruise Lines, Inc.*,
 741 F. 2d 1332 (11th Cir. 1984) ...........................................................................................8

*Krogman v. Sterritt*,
 202 F.R.D. 467 (N.D. Tex. 2001)..................................................................................14, 17

*Local 703, I.B. of T. Grocery & Food Emp's Welfare Fund v. Regions Fin. Corp.*,
 762 F. 3d 1248 (11th Cir. 2014) ....................................................................................12, 16

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
 289 F.R.D. 674 (S.D. Fla. 2013)...........................................................................................6

*In re Miller Indus. Sec. Litig.*,
 186 F.R.D. 680 (N.D. Ga. 1999)...........................................................................................12

*Monroe Cnty. Emp's Ret. Sys. v. S. Co.*,
 332 F.R.D. 370 (N.D. Ga. 2019)................................................................................ *passim*

*In re Netbank, Inc. Sec. Litig.*,
 259 F.R.D. 656 (N.D. Ga. 2009)................................................................................ *passim*

*Okla. Firefighters Pension & Ret. Sys. v. Rayonier Advanced Materials, Inc.*,
 No. 3:15-cv-546-J-32-PDB, 2015 WL 4730383 (M.D. Fla. Aug. 10, 2015) .........................11

*In re Pfizer Secs. Litig.*,
 282 F.R.D. 38 (S.D.N.Y. 2012) ...........................................................................................11

*In re PolyMedica Corp. Sec. Litig.*,
 432 F.3d 1 (1st Cir. 2005)...................................................................................................14

*Prado-Steiman ex rel. Prado v. Bush*,
 221 F. 3d 1266 (11th Cir. 2000) ...........................................................................................8

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
 571 F. Supp. 2d 1315 (N.D. Ga. 2007)...............................................................................8, 18

*Thorpe v. Walter Inv. Mgmt., Corp.*,
 No. 1:14-CV-20880-UU, 2016 WL 4006661 (S.D. Fla. Mar. 16, 2016) ...........................7, 10

*Valley Drug Co. v. Geneva Pharm., Inc.*,
 350 F. 3d 1181 (11th Cir. 2003) ...................................................................................5, 9, 10

*In re Vesta Ins. Grp., Inc., Sec. Litig.*,
   No. CIV.A 98-AR-1407-S, 1999 WL 34831475 (N.D. Ala. Oct 25, 1999)..............................7

**Statutes**

17 C.F.R. § 239.13 ...............................................................................................................15

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 77z-1, *et seq.* ................................3

Securities Exchange Act of 1934...........................................................................................1, 2

**Other Authorities**

Federal Rule of Civil Procedure 23 ....................................................................................... *passim*

Local Rule 23.1 of the United States District Court for the Southern District of Florida ...........1, 2

Plaintiffs City of Atlanta Police Officers' Pension Plan ("Atlanta Police") and City of Atlanta Firefighters' Pension Plan ("Atlanta Firefighters"; together, "Lead Plaintiffs"), on behalf of themselves and the putative Class by their undersigned attorneys, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Class Certification, appointment of Lead Plaintiffs as class representatives and appointment of Grant & Eisenhofer P.A. ("G&E") as class counsel.

## I.   PRELIMINARY STATEMENT

This case presents claims on behalf of a class of investors who suffered damages following defendants' admissions that employees' stock-based compensation was improperly accounted for at Celsius Holdings, Inc. ("Celsius"), which necessitated the restatement of Celsius's financials. Certification of this action on behalf of the class will provide a critical step to ensuring the ability of investors to be compensated for their damages.  Securities cases are extremely well-suited to class action treatment and are routinely certified.  This case is typical of other securities fraud actions and readily satisfies the requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure ("Rule 23"), and Rule 23.1 of the Local Rules of the United States District Court for the Southern District of Florida ("Local Rule 23.1").

Defendants in this action are Celsius, a NASDAQ listed company, as well as Edwin Negron-Carballo ("Negron-Carballo;" together with Celsius, "Defendants").  Lead Plaintiffs' assert claims under the Securities Exchange Act of 1934 ("Exchange Act"), and allege that investors were misled by Defendants' public statements which contained material misrepresentations or omissions.  Pursuant to Rule 23, Lead Plaintiffs seek certification of a class consisting of all persons and entities who purchased or otherwise acquired Celsius common stock between August 12, 2021 and March 1, 2022, both dates inclusive (the "Class Period"), and were

1

damaged thereby (the "Class").[1] Lead Plaintiffs request that, pursuant to Rule 23, the Court certify this case as a class action and: (a) appoint Lead Plaintiffs as Class representatives; and (b) appoint lead counsel G&E as Class counsel.

As demonstrated below, this case meets all the requirements of Rule 23 and Local Rule 23.1. The class members are so numerous that joinder would be impracticable. The proposed Class representatives' claims brought pursuant to the federal securities laws present common questions of law and fact, are typical of other class members' claims and Lead Plaintiffs are more than adequate to serve as Class representatives. The common questions here predominate over any individual questions, and the class action mechanism is the superior way to adjudicate these claims. The accompanying Declaration submitted in support of this Motion, which includes sworn declarations from each of the Class representatives (Exs. A-B)[2] and the report of Lead Plaintiffs' expert economist, Frank C. Torchio (Ex. C, "Torchio Report"), provides an ample record in support of the Motion. Accordingly, this case seeking to vindicate the rights of injured Celsius investors is suitable for class treatment.[3]

---

[1] Excluded from the Class are Defendants; Celsius's affiliates and subsidiaries; the officers and directors of Celsius and its subsidiaries and affiliates at all relevant times; members of the immediate family of any excluded person; heirs, successors, and assigns of any excluded person or entity; and any entity in which any excluded person has or had a controlling interest. *See* Plaintiffs' Amended Class Action Complaint ("Complaint"), ECF No. 44 at ¶159. References to "¶" are to the numbered paragraphs of the Complaint.

[2] Citations to "Ex." or "Exs." refer to the exhibits of the accompanying Declaration of Daniel L. Berger in Support of Plaintiffs' Motion for Class Certification.

[3] This Court has jurisdiction over the subject matter of this action based on federal questions under 28 U.S.C. §1331, §22 of the Securities Act, 15 U.S.C. §77v, and §27 of the Exchange Act, 15 U.S.C. §78aa.

## II.     FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

### A.     PLAINTIFFS

On June 6, 2022, this Court appointed Atlanta Police and Atlanta Firefighters as Lead Plaintiffs for this action brought pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1, *et seq.*, for this litigation and further appointed G&E as Lead Counsel and Klausner Kaufman Jensen & Levinson as Liaison Counsel.  ECF 41.

Lead Plaintiffs here are well suited to lead this class action.  *See* Exs. A-B.  Plaintiff Atlanta Firefighters is a pension fund that safeguards investments to fund the pensions and retirements of the City of Atlanta's firefighters.  ¶25.  Plaintiff Atlanta Police is a pension fund operating on behalf of Atlanta's police force. *Id.*  Each of these Plaintiffs purchased Celsius common stock during the Class Period and suffered damages as a result of the conduct complained of in the Complaint and below.  *Id.*

### B.     DEFENDANTS

Defendants in this action are: (1) Celsius; and (2) Celsius's former Chief Financial Officer Edwin Negron-Carballo.  ¶¶26, 28.

### C.     ALLEGATIONS AGAINST DEFENDANTS

Celsius is a global consumer packaged goods company that provides energy drinks, workout supplements, and protein bars.  ¶26.  On March 1, 2022, Celsius announced that it would have to restate its financial statements for the second and third quarters of fiscal year 2021, which would result in an 80% drop in its net income for the second quarter ("Q2"), and a $9.4 million net loss for its third quarter ("Q3").  ¶¶2, 83.  In response to these disclosures, the price of Celsius common stock declined substantially.  ¶¶13, 89, 93.

The Complaint alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act for misstatements made during the period of August 12, 2021 through March 1, 2022,

3

inclusive. ¶¶175-89. On November 18, 2022, the Court referred Defendants' motion to dismiss the Complaint to Magistrate Judge Reinhart. ECF 51. On December 13, 2022, the Court heard oral argument on the parties' briefings on the motion to dismiss. ECF 54. On February 13, 2023, the Court granted in part, and denied in part, Defendants' motion to dismiss the Complaint in its Report and Recommendation ("R&R"). ECF 55. On March 22, 2023, District Judge Middlebrooks adopted Magistrate Judge Reinhart's R&R. ECF 62. In an Order dated April 12, 2023, the Court set May 18, 2023 as the date by which Lead Plaintiffs must file their motion for class certification. ECF 75.

Celsius, in an effort to minimize its compensation costs, had a practice of compensating its employees with common stock-based awards. ¶¶5, 58-66. ASC 718 governs how companies must account for these compensation expenses in the event an employee departs from the company and the company elects to accelerate the vesting schedules of the stock awards. ¶68. Specifically, ASC 718 requires that the stock must be valued according to the trading price on the date of the employee's departure from the company. ¶69. Here, Celsius terminated 9 employees in 2021 and decided to accelerate the vesting schedules for these employees' stock-based awards. ¶¶76-79. However, Celsius neglected to treat those awards as an expense in any manner.

The price of Celsius's stock was soaring at around the time of the employees' departures in 2021. Thus, if they had accounted for them correctly at current fair market values, this would have resulted in large compensation expenses in Q2 and Q3 2021. ¶¶8, 76. Proper application of this ASC 718 would have eviscerated the Company's net income in Q2, and would have generated a large net loss in Q3. ¶¶9, 79. Thus, Defendants disregarded ASC 718's mandate and improperly delayed the acceleration of these nine employees' share-based compensation. ¶¶9, 76-79. The effect of Defendants' decision resulted in the Company falsely reporting an inflated net income for both Q2 and Q3 2021. ¶¶10, 97-101.

4

On March 1, 2022, Celsius disclosed that it could not timely file its 2021 annual report due to "staffing limitations, unanticipated delays and identified material errors in previous filings." ¶83.  Celsius "determined that the calculation and expense of noncash share-based compensation related to grants of stock options and restricted stock units awarded to certain former employees and retired directors were materially understated" and the Company was required to restate its financial statements for Q2 and Q3 2021.  ¶83.  Celsius had previously reported net income of $3.9 million for Q2 2021 and $2.7 million for Q3 2021.  ¶¶102, 119.  In its restatement, when Celsius properly accounted for its share-based compensation expenses, Celsius's net income for Q2 2021 was actually $779,991 (a decline of 80%) and Celsius's net income for Q3 2021 was wiped out and turned Q3 into a *loss of* $9.4 million (a decline of 441%).  ¶¶103, 120.  In response to these disclosures, Celsius's stock price fell significantly.  ¶¶89, 93.

## III.   ARGUMENT

### A.   THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION

To obtain class certification, a plaintiff must satisfy Federal Rule of Civil Procedure 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b). *See C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 685 (S.D. Fla. 2014) (Middlebrooks, J.); *see also Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F. 3d 1181, 1187 (11th Cir. 2003) (Rule 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate.").

Rule 23(a) requires a class member seeking to represent a class of similarly situated injured parties to demonstrate that: (1) the class is so numerous joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representatives are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Lead Plaintiffs satisfy all four of these requirements.

5

Lead Plaintiffs must also satisfy at least one of the three options required under Rule 23(b). Here, Lead Plaintiffs satisfy Rule 23(b)(3), which requires the Plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also C-Mart*, 299 F.R.D. at 286 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)).

### B.   RULE 23(A) IS SATISFIED

#### 1.   The Proposed Class Is So Numerous That Joinder of All Respective Class Members Is Impracticable

There are thousands of members of the proposed Class. Under Rule 23(a)(1), a class may be certified when "the class is so numerous that joinder of all members is impracticable" and courts have recognized that this requirement imposes a "generally low hurdle." *C-Mart*, 299 F.R.D. at 689; *see also Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). Plaintiff need only establish that joinder is impracticable through "some evidence or reasonable estimate of the number of purported class members." *In re Netbank, Inc. Sec. Litig*., 259 F.R.D. 656, 664 (N.D. Ga. 2009) (citing *Anderson v. Bank of the S.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987)). Moreover, "[s]ecurities fraud actions predicated on public misrepresentations typically satisfy Rule 23(a)(1) where the securities were traded on a national public exchange, as the putative class members are likely to be numerous, geographically dispersed and difficult to identify." *Aranaz v. Catalyst Pharm. Partners, Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014) (internal citations omitted). Generally, in terms of the numbers of potential class members, "less than twenty-one is inadequate, more than forty adequate…" *C-Mart*, 299 F.R.D. at 689 (quoting *Cox v. Am. Cast Iron Pipe Co*., 784 F.2d 1546 (11th Cir. 1986)).

6

Celsius had 74,908,845 shares of common stock outstanding as of March 1, 2022; its common stock traded on the NASDAQ and during the Class period, trading volume was approximately 4.9 million shares each week.  Torchio Report, ¶¶22-23, 56; *see, e.g.*, *Thorpe v. Walter Inv. Mgmt., Corp.*, No. 1:14-CV-20880-UU, 2016 WL 4006661, at *6 (S.D. Fla. Mar. 16, 2016) (numerosity found for stock traded on a national public exchange with an average weekly trading volume of 3.13 million shares); *In re Vesta Ins. Grp., Inc., Sec. Litig.*, No. CIV.A 98-AR-1407-S, 1999 WL 34831475, at *1 (N.D. Ala. Oct 25, 1999) (numerosity found with an average weekly trading volume of 345,000 shares).  Finally, the Class is geographically dispersed throughout the world, and the issue of geographic diversity among those members further supports finding that joinder of all such members would be impracticable.  *See Aranaz*, 302 F.R.D. at 665 (numerosity satisfied where the common stock traded on the NASDAQ, and thus "it [was] likely that the putative class members [were] geographically diverse and difficult to identify").

### 2. Questions of Law and Fact Are Common to Members of the Class

Courts require commonality, a question of law or fact common to the proposed class, in order to satisfy Rule 23(a)(2).  *See In re Netbank*, 259 F.R.D. at 664.  Rule 23(a)(2) "does not require that *all* the questions of law and fact raised by the dispute be common" nor does it require "complete identity of legal claims."  *Id.* (emphasis in original) (internal citations omitted). "Generally, where plaintiffs allege that the action is a result of a unified scheme to defraud investors, the element of commonality is met."  *Id.* (quoting *Avery v. Uniroyal Tech. Corp.*, No. 8:02CV2238T27MAP, 2005 WL 1205607, at *3 (M.D. Fla. May 20, 2005)).

In this matter, the claims of each Class member are subject to common proof.  The questions of law and fact common to the Class in this Action include: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted and/or misrepresented material facts; (iii) whether Defendants acted with scienter; (iv) whether the price of Celsius's common stock was

7

artificially inflated; (v) whether Defendants' conduct caused damages to the Class; and (vi) the extent of such damages. ¶¶176-77, 181-85.

Each of the above questions focuses on Defendants' conduct and its Class-wide impact, and "are susceptible to class-wide proof" and, thus, "demonstrate[] commonality." *In re Internap Network Servs. Sec. Litig.*, No. 1:08-cv-03462, 2012 WL 12878579, at *4, *7 (N.D. Ga. Aug. 22, 2012) (finding commonality where defendants' alleged false and misleading statements artificially inflated the stock price to the detriment of investors); *see also Cheney v. Cyberguard Corp.*, 213 F.R.D 484, 490 (S.D. Fla. 2003) (finding commonality where defendants "perpetrated a massive fraudulent scheme against investors through uniform misrepresentations and omissions in filings made with the SEC, in [defendants'] press releases, and in other documents"). Thus, common questions of law and fact satisfy Rule 23(a)'s commonality requirement.

### 3.     The Proposed Class Representatives' Claims Are Typical

Under Rule 23(a)(3), Lead Plaintiffs must demonstrate that "the claims of the representative parties are typical of the claims of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality is not demanding." *In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1326 (N.D. Ga. 2007). The typicality requirement for class certification is satisfied where the "class representative [is] part of the class and possess[es] the same interest and [has] suffer[ed] the same injury as the class members." *C-Mart*, 299 F.R.D. at 690 (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F. 3d 1266, 1279 (11th Cir. 2000)). A factual variation will not render a class representative's claims atypical unless the factual position of the representative differs markedly from other class members. *In re Netbank*, 259 F.R.D. at 665 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F. 2d 1332, 1337 (11th Cir. 1984)); *see also In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 429 (S.D. Fla. 1991) (typicality established where Plaintiffs assert "that Defendants committed the same wrongful acts in the same manner against all members of the class..."); *In re*

8

*Internap*, 2012 WL 12878579, at *5 (typicality established where class members purchased stock at prices inflated by misrepresentations, and were consequently damaged).

Here, Lead Plaintiffs' claims are typical of the other Class members' claims because they are all investors who acquired Celsius common stock during the Class Period, and were all misled by the same false and misleading statements disseminated by Defendants.  *See* ¶¶76-79.

### 4.   The Representative Parties and Their Counsel Are Adequate

Under Rule 23(a)(4)'s adequacy prerequisite, Courts examine whether "the representative parties will fairly and adequately protect the interests of the class."  Plaintiff need only demonstrate that (1) it does not have "interests antagonistic to those of the rest of the class;" and (2) "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation." *Kirpatrick v. J.C. Bradford & Co.*, 827 F. 2d 718, 726 (11th Cir. 1987).

Courts in the Eleventh Circuit use the following two-prong test to determine whether the proposed class representative is adequate: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *C-Mart*, 299 F.R.D. at 690 (quoting *Valley Drug*, 350 F. 3d at 1189); *see also Aranaz*, 302 F.R.D. at 666 (holding that proposed class representatives must have no fundamental conflicts of interest and should be "willing to vigorously litigate the action"); *Monroe Cnty. Emp's Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 379 (N.D. Ga. 2019) (plaintiffs demonstrated adequacy where they "supervised and monitored the progress of the litigation, [] participated in discussions with Lead counsel concerning case developments, [] reviewed Court filings, underst[ood] their duty to the Class and [were] committed to vigorously prosecuting th[e] action to maximize recovery for all Class members").  Lead Plaintiffs satisfy both prongs.

9

       **a.**       **There Are No Conflicts Between the Class Representatives and the Class**

Here, there are no substantial or fundamental conflicts of interest between Lead Plaintiffs and the Class. *See Thorpe*, 2016 WL 4006661, at * 8 ("Minor conflicts alone will not defeat class representatives' claim to class certification; rather, the conflict must be fundamental, which goes to the specific issues in controversy.") (citing *Valley Drug*, 350 F. 3d at 1189). First, like other potential Class members, Lead Plaintiffs purchased Celsius common stock during the Class Period and were subjected to the same fraudulent course of conduct by the Defendants. ¶25. There are no conflicts between these Class representatives and the Class they seek to represent.

       **b.**       **Lead Plaintiffs Are Adequate to Serve as Class Representatives**

A class representative is considered adequate when he is "knowledgeable about the case and has participated to some degree in every aspect of the lawsuit." *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 688 (S.D. Fla. 2018). Here, Lead Plaintiffs made significant investments in Celsius stock during the Class Period, are familiar with the case, have been actively engaged in the litigation, and regularly communicate with counsel regarding the status of the case. *See* Exs. A-B. For example, the proposed Class representatives have supervised and been involved in the case throughout. *See id.* Lead Plaintiffs have also been engaged with and expended substantial effort responding to Defendants' extensive discovery requests. *See id.*

Lead Plaintiffs are also exactly the types of institutional investors Congress sought to encourage to lead securities class actions when it enacted the PSLRA. Atlanta Police and Atlanta Firefighters are public pension plans that manage over $1.3 billion and $768 million in investments, respectively. *See* Exs. A-B. Lead Plaintiffs are sophisticated investors that have the institutional knowledge and understanding that make them ideal Class representatives. Indeed, as

this Court previously found, Atlanta Police and Atlanta Firefighters are "the most adequate plaintiff." Order Appointing Lead Plaintiff and Approving Lead Counsel, ECF No. 41.

Nothing has changed to call into question that preliminary finding. There is no reason to doubt that Lead Plaintiffs will continue to uphold their duties and responsibilities if certified as Class representatives by the Court.

### c.       Proposed Class Counsel Are Adequate

Additionally, adequacy is established where Class counsel is "highly experienced in prosecuting complex securities class actions." *See In re Netbank*, 259 F.R.D. at 666. Lead Plaintiffs' Class counsel, G&E, has extensive experience litigating complex securities fraud class actions on behalf of injured investors. *See e.g., Einhorn v. AxoGen Inc.*, Case No.: 8:19-cv-69-EAK-AAS, 2019 WL 5636382, at *2 (M.D. Fl. Apr. 30, 2019) ("Lead plaintiffs hired counsel [G&E] with extensive experience in securities fraud litigation."); *Okla. Firefighters Pension & Ret. Sys. v. Rayonier Advanced Materials, Inc.*, No. 3:15-cv-546-J-32-PDB, 2015 WL 4730383, at *2 (M.D. Fla. Aug. 10, 2015) ("[T]he Court determines that . . .[G&E]. . . ha[s] substantial experience in securities class actions[.]"); *In re Pfizer Secs. Litig.*, 282 F.R.D. 38, 47 (S.D.N.Y. 2012) ("It is undisputed that Lead Counsel [G&E] is an experienced class action law firm and has served as lead counsel in dozens of securities fraud class actions."); *see also* Ex. D (firm résumé of proposed class counsel). As such, proposed Class counsel is qualified, experienced and able to competently and vigorously prosecute this proposed class action.

### C.       THE PROPOSED CLASS SATISFIES RULE 23(B)(3)

In addition to satisfying the prerequisites of Rule 23(a), this case also meets the requirements of Rule 23(b). Plaintiffs moving for certification must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

11

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Netbank*, 259 F.R.D. at 667 (quoting *Amchem*, 521 U.S. at 623).  The Supreme Court has found that the predominance requirement "is a test readily met in certain cases alleging … securities fraud …" *Amchem*, 521 U.S. at 625.

### 1.    Common Questions of Law and Fact Predominate Over Individual Questions

Common questions such as the falsity and materiality of the alleged misstatements predominate over individual ones.  *See*, *e.g.*, *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 688 (N.D. Ga. 1999) (predominance met where "claims of each member of the class arise out of this same set of operative facts"); *In re Internap*, 2012 WL 12878579, at *7 (finding predominance where "Plaintiff alleges Defendants knowingly or recklessly made a number of false statements regarding internal company operations that artificially inflated the company's stock price"). In addition, common questions of law and fact will determine Defendants' scienter, an issue relevant to Lead Plaintiffs' Exchange Act claims.

The Supreme Court has held that securities fraud plaintiffs can satisfy the reliance element using the "fraud-on-the-market theory" which invokes a rebuttable presumption of reliance, rather than proving direct reliance on a misrepresentation. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 811, 131 S. Ct. 2179, 180 L. Ed. 2d 24 (2011); *see also Local 703, I.B. of T. Grocery & Food Emp.'s Welfare Fund v. Regions Fin. Corp*., 762 F. 3d 1248, 1254 (11th Cir. 2014) (*Regions*).  Under this theory, "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentation..." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 268, 134 S. Ct. 2398, 189 L. Ed. 2d

12

339 (2014) (*Halliburton II*) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 246-247, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)).

To establish the class is entitled to rely on the rebuttable presumption, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) [the putative class members] traded the stock between when the misrepresentations were made and when the truth was revealed." *Monroe County Emp's*, 332 F.R.D. at 381 (quoting *Halliburton II*, 573 U.S. at 277-78).  Lead Plaintiffs have alleged that Defendants' material misrepresentations and omissions artificially inflated the price of Celsius's common stock and that these public misrepresentations were disseminated through Celsius's SEC filings and earnings releases and were reflected in the prices investors paid for Celsius common stock, thereby satisfying the first two prerequisites.  Lead Plaintiffs have also satisfied the fourth prerequisite by defining the Class to include those who purchased Celsius common stock on or between the date of Defendants' first misrepresentations (August 12, 2021) and the date of the corrective disclosure (March 1, 2022).

Regarding the third prerequisite, courts in the Eleventh Circuit consider the following five *Cammer* factors when evaluating whether a security was traded in an efficient market:

> (1) large trading volume; (2) the existence of significant analyst coverage; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an SEC Form S-3 Registration Statement; and (5) demonstration of a cause-and-effect relationship between the announcement of unexpected news and stock price movement.

*See Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989); *see also Monroe County Emp's*, 332 F.R.D. at 383; *Aranaz*, 302 F.R.D. at 669; *In re HealthSouth Corp. Secs. Litig.*, 261 F.R.D. 616, 634-36 (N.D. Ala. 2009).

Additionally, Courts analyze the three *Krogman* factors, which include: "(1) the capitalization of the company; (2) the bid-ask spread of the stock; and (3) the percentage of stock

13

not held by insiders (the 'float')." *Monroe County Emp's*, 332 F.R.D. at 383 (quoting *Krogman v. Sterritt*, 202 F.R.D. 467, 477-78 (N.D. Tex. 2001)); *see also In re HealthSouth*, 261 F.R.D. at 636.[4]

As demonstrated below, consideration of the *Cammer* and *Krogman* factors overwhelmingly shows that the market for Celsius stock was efficient during the Class Period. In support of this Motion, Lead Plaintiffs submit the expert report of Frank Torchio, an experienced financial economist and adjunct professor of finance at the Simon Business School at the University of Rochester. Professor Torchio analyzed the factors from *Cammer* and *Krogman* utilized by courts in the Eleventh Circuit and concluded that the market for Celsius common stock, which is traded on the NASDAQ, was efficient. *See* Torchio Report, Section VI.

### a. Celsius Common Stock Experienced a High Weekly Trading Volume

The average weekly trading volume for Celsius was 4.9 million shares during the Class Period, which was 6.50% of shares outstanding. Torchio Report, ¶56. This puts Celsius within the 75th to 90th percentiles of stocks that trade on NYSE and NASDAQ, according to a benchmark developed by Lead Plaintiffs' expert. *Id.*, ¶57. Further, it easily exceeds the benchmark of weekly volume set at 2% of shares outstanding that justifies a "strong presumption" of market efficiency. *Cammer*, 711 F. Supp. at 1286; Torchio Report, ¶58.

### b. Numerous Financial Analysts Covered and Reported on Celsius During the Class Period

During the Class Period, analysts from firms such as Argus Research, Credit Suisse, Jeffries and UBS Equities, among others, issued approximately 130 reports on Celsius. Torchio Report, ¶60. During that same time period, many analysts covered Celsius, with an average of 7

---

[4] Some courts have also considered the additional three factors from the First Circuit's decision in *In re PolyMedica Corp. Sec. Litig.*, 432 F.3d 1, 18 n21 (1st Cir. 2005), (a) the presence of serial correlation stock price returns; (b) constraints on short selling; and (c) violations of put-call parity. These factors also favor a finding that Celsius's common stock traded in an efficient market.

research analysts providing Buy/Sell/Hold recommendations during the Class Period and an average of 6 analysts were part of the Refinitiv I/B/E/S consensus EPS estimate for the current fiscal year. *Id.* Such analyst coverage indicates a greater likelihood that investors rely on information provided about the Company and therefore supports a finding that the market for Celsius shares during the Class Period was efficient. *See Aranaz*, 302 F.R.D at 669 (the existence of at least four analysts was sufficient).

### c.      Multiple Market Makers Used for Celsius

During the Class Period, Celsius common stock traded on the NASDAQ, an exchange that uses multiple market makers which provide liquidity and facilitate the market in securities. Torchio Report, ¶64. The larger the number of market makers, the greater is the confidence of high liquidity. *Id*. During the Class Period, there were approximately 100 brokers, including designated market makers, that acted as intermediaries to provide liquidity to investors. *Id*., ¶65. The presence of a NASDAQ market maker indicates an efficient market for Celsius's common stock. *See Id.* The listing of a security on a major exchange such as the NASDAQ weighs in favor of a finding of market efficiency. *See In re Netbank*, 259 F.R.D. at 669, n6.

### d.      Celsius's Public Float Sufficiently Satisfies the Form S-3 Eligibility Requirements

"A company is eligible to file an SEC Form S-3 if it has filed financial reports with the SEC for 12 consecutive months and has a float of at least $75 million." *Monroe County Emp's,* 332 F.R.D. at 384; *see also* 17 C.F.R. § 239.13. "The ability to file the abbreviated Form S-3 creates a presumption that the securities trade [in] an efficient market." *Monroe County Emp's*, 332 F.R.D. at 384 (quoting *In re HealthSouth*, 261 F.R.D. at 635).

Celsius was able to, and did, file an S-3, just prior to the Class Period. Torchio Report, ¶67. Celsius's public float held by non-affiliates "during the Class Period ranged between

15

approximately $1.7 billion and $4.6 billion, far exceeding the $75 million threshold requirement," making Celsius eligible to file on Form S-3, which it did on June 9, 2021. *Id*. This factor thus supports a finding of market efficiency.

e.      **The Price of Celsius's Common Stock Reacted to New, Company-Specific Information During the Class Period**

The fifth factor evaluates "whether a plaintiff can demonstrate a cause-and-effect relationship between the release of unexpected company news and movements in a company' stock price." *Monroe County Emp's,* 332 F.R.D. at 384 (citing *Regions*, 762 F. 3d at 1254 n.2)). However, in *Regions*, the Eleventh Circuit held that the fifth *Cammer* factor is not a prerequisite to a finding of market efficiency because "[r]equiring a plaintiff to submit proof of market reactions – and to do so with an event study – ignores Supreme Court precedent as well as practical considerations." *Monroe County Emp's*, 332 F.R.D. at 385 (internal citation omitted).

Although not required, after performing significant statistical analysis, Lead Plaintiffs' expert determined that there was a cause-and-effect relationship between the release of unexpected Company-specific information and the price reaction of Celsius's common stock during the Class Period. Torchio Report, ¶¶69-87. The study revealed immediate stock price reactions to public disclosures of unexpected material information, supporting the conclusion that Celsius's stock traded on an efficient market. *Id*.

Lead Plaintiffs' expert reached this conclusion by analyzing "news days" – *i.e.*, days where Celsius issued a press release. *Id.*, ¶74. Using this criteria, Professor Torchio identified 16 "news days" during the Class Period, *id.*, ¶75, and found that 18.8% of the "news days" "were accompanied by statistically significant stock-price movements" while only 2.9% of the "non-news days" had statistically significant stock-price movement. *Id.*, ¶76. These findings "indicat[e] that Celsius stock was approximately 6.4 times (18.8% / 2.9%) more likely to react in a statistically

16

significant manner on days when the Company issued press releases containing potentially value-relevant information than on days without." *Id.* "[B]ecause the proportion of statistically significant excess returns for news days is statistically greater than for non-news days, this analysis supports a finding of market efficiency for Celsius common stock." *Id.*, ¶78. Professor Torchio also conducted several other studies that further confirmed this conclusion. *See generally id.*, Section VI.A.

### f.  Celsius's Market Capitalization and Float

A significant market capitalization, "calculated by multiplying the number of shares by the prevailing price" is an indicator of "market efficiency because there is a greater incentive for stock purchasers to invest in more highly capitalized corporations." *In re Netbank*, 259 F.R.D. at 672 (quoting *Krogman*, 202 F.R.D. at 478). Courts look to a company's "float," which is the number of shares available for trading by the public. *Id.*; *see also Krogman*, 202 F.R.D. at 478. "Because insiders may have private information that is not yet reflected in stock prices, the prices of stocks that have greater holdings by insiders are less likely to accurately reflect all available information about the security." *In re Netbank*, 259 F.R.D. at 672-73 (quoting *Krogman*, 202 F.R.D. at 478).

"During the Class Period, Celsius' market capitalization ranged from approximately $3.0 billion to approximately $8.1 billion, with an average of $5.6 billion[,]" Torchio Report, ¶89, Ex. 3, and was "better than at least 75% of stocks that trade in well-developed markets." *Id.*, ¶90. At the same time, Celsius's public float "ranged from 42.1 million to 42.5 million shares, representing on average 56.7% of the Company's shares outstanding." *Id.*, ¶98, Ex. 3. "On a dollar basis, Celsius' float ranged from $1.7 billion to $4.6 billion, with an average of $3.2 billion during the Class Period." *Id.*, ¶99, Ex. 3. Additionally, "institutions held approximately 50.6% of the Company's shares outstanding during the Class Period." Torchio Report, ¶92, Ex. 3. "Institutional

17

ownership of a stock is typically associated with strong competition for generating returns from the stock." *Id.*

Thus, both these factors support a finding of market efficiency. *Id.*, ¶¶93, 100.

### g.  The Bid-Ask Spread of Celsius's Common Stock

A narrow bid-ask spread is indicative of higher trading volume and courts consider it as a factor for determining market efficiency. *See In re Netbank*, 259 F.R.D. at 672.  Here, "[t]he average bid-ask spread for Celsius common stock during the Class Period was 0.13%." Torchio Report, ¶95.  This factor therefore supports a finding of market efficiency.  *Id.*, ¶97; *see also In re Netbank*, 259 F.R.D. at 672 (average daily bid-ask spread of 0.29% weighs in favor of market efficiency); *see also In re Scientific-Atlanta*, 571 F. Supp. 2d at 1339 (finding that a bid-ask spread that "never exceeded 1.9%" weighed heavily in favor of market efficiency).

*     *     *

Because Lead Plaintiffs have established that Celsius traded on an efficient market under the factors set forth in *Cammer* and *Kroger*, they have also shown that any potential individualized issues for members alleging Exchange Act claims do not predominate over common ones. Therefore, pursuant to Rule 23(b)(3), the proposed Class is sufficiently cohesive to warrant adjudication and demonstrates predominance.

### 2.  A Class-Wide Damages Methodology Is Available

A Class may be certified where there is a damages methodology that is "capable of calculating damages on a class-wide basis." *Monroe County Emp's*, 332 F.R.D. at 398; *see also In re Acuity Brands, Inc. Sec. Litig.*, No. 1:18-CV-2140-MHC, 2020 WL 5088092, at *10 (N.D. Ga. Aug. 25, 2020) (event study is an acceptable methodology to calculate class-wide damages).

For their Exchange Act claims, Lead Plaintiffs' expert has explained that the event study he conducted provides a class-wide damages methodology because it measures the "artificial

18

inflation" in the stock that is attributed to Defendants' fraud.  Torchio Report ¶¶154-160.  To determine the amount of artificial inflation, Professor Torchio's event study measured the amount by which Celsius's stock declined on various "corrective disclosure" dates, *i.e.*, dates on which Celsius released information that revealed the fraud it had been concealing.  This method determines how much of Celsius's stock price movement is attributed to fraud, as opposed to unrelated factors.  As such, it is by definition related to Lead Plaintiffs' theory of Defendants' fraud and satisfies *Comcast.*  Using this event study, Lead Plaintiffs' expert will be able to determine the amount by which Celsius's stock was artificially inflated for each day during the Class Period.  Any investor's losses can be calculated using this method by simply subtracting this amount from the amount it paid for Celsius stock on any given day during the Class Period.  *Id*. Indeed, the *Monroe County Emp's* court determined that this methodology was sound for purposes of *Comcast*.  *Monroe County Emp's*, 332 F.R.D. at 399 (describing approved methodology as an "event study" which measured stock price declines on dates of corrective disclosures, and ultimately approving that methodology); *see also In re Acuity*, 2020 WL 5088092, at \*10 (same).

### 3. A Class Action Is Superior to Other Available Methods of Adjudication

Allowing this case to proceed as a class action is plainly a superior method for resolving Plaintiffs' claims and will provide the most efficient and fair adjudication.  In considering superiority under Rule 23(b)(3), courts analyze four factors: (a) the class members' interest in individually controlling their separate actions; (b) the extent and nature of existing litigation by class members concerning the same claims; (c) the desirability of concentrating the litigation in a particular forum; and (d) the likely difficulties of managing a class action.  *See C-Mart*, 299 F.R.D. at 691.

19

Here, the Class members' interests in individually adjudicating separate actions are minimal; Lead Plaintiffs are not aware of any separate actions brought on an individual or group basis by Celsius's shareholders; the Southern District of Florida, the location of the Company's principal executive offices, is the appropriate forum for litigating this matter; and there are no issues in management of the litigation. *See Monroe County Emp's*, 332 F.R.D. at 401 (finding Rule 23(b)(3) satisfied where "absent class members have little interest in individually controlling separate actions"; "[t]he Court is not aware of any securities fraud litigation concerning this controversy that has already begun by or against absent class members"; "[c]oncentrating litigation of the claims in this forum is desirable as [the company] is headquartered in this District and many of the acts alleged in the Complaint occurred in this District"; and the "any difficulties in managing a class action do not outweigh the benefits of certifying a class"). Here, Lead Plaintiffs have committed to, and have every incentive to, seek the maximum recovery possible for the Class. *See* Exs. A-B. Class members' interests would thus be best furthered if their claims could be litigated as a class action.

Consistent with the requirements of Rule 23(b)(3), the certification of this action as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, it appears to be the sole method for fairly and efficiently litigating the claims of all members of the proposed Class.

## IV. CONCLUSION

For the foregoing reasons, and based on the additional information in and attached to the accompanying Declaration, Lead Plaintiffs respectfully request that the Court: (a) enter an order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23; (b) appoint Lead Plaintiffs Atlanta Police and Atlanta Firefighters as Class representatives; and (c) appoint G&E as Class counsel.

DATED:  May 18, 2023

Respectfully submitted,

*/s/ Daniel L. Berger*

Daniel L. Berger (admitted pro hac vice)
Caitlin M. Moyna (admitted pro hac vice)
Vincent J. Pontrello (admitted pro hac vice)
Mica A. Cocco (admitted pro hac vice)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
Email: cmoyna@gelaw.com
Email: vpontrello@gelaw.com
Email: mcocco@gelaw.com

*Lead Counsel for City of Atlanta Police
Officers' Pension Plan and City of Atlanta
Firefighters' Pension Plan*

/s/    *Robert D. Klausner*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN &
LEVINSON**
7080 NW 4th Street
Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com

*Liaison Counsel for City of Atlanta Police
Officers' Pension Plan and City of Atlanta
Firefighters' Pension Plan*

Jeffrey Reeves
(pro hac vice admission pending)
**THE REEVES LAW FIRM, LLC**
1100 Peachtree Street
Suite 250
Atlanta, GA 30309
Tel.: (404) 795-6139
Fax: (888) 209-5048
Email: jeff@reeveslawfirmpc.com

21

*Additional Counsel for City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 18, 2023, I electronically filed the foregoing by using the court's CM/ECF system. Per agreement among the parties, all parties will be served by the CM/ECF system.

By:   */s/ Daniel L. Berger*
Daniel L. Berger