# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO: 22-80418-CV-MIDDLEBROOKS

|  |  |
|---|---|
| CITY OF ATLANTA POLICE OFFICERS' PENSION PLAN and CITY OF ATLANTA FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>       -v-<br><br>CELSIUS HOLDINGS, INC., JOHN FIELDLY, and EDWIN NEGRON-CARBALLO,<br><br>     Defendants. | CLASS ACTION |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND OF THE
      LITIGATION ............................................................................................................ 2

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
      APPROVAL .............................................................................................................. 5

      A.    DESCRIPTION OF THE SETTLEMENT AND PLAN OF ALLOCATION ...................... 5

      B.    STANDARD FOR PRELIMINARY APPROVAL OF A SETTLEMENT
            UNDER RULE 23 ............................................................................................ 6

            1.    The Settlement Is the Result of Good Faith, Arm's-Length
                  Negotiations by Well-Informed and Experienced Counsel ................... 8

            2.    The Settlement Provides a Substantial Benefit for the Class ................. 9

            3.    The Relief Provided by the Settlement Is Adequate When
                  Weighed Against the Risks of Litigation .............................................. 10

                  a.    The Benefits of Settlement Outweigh the Risks of
                        Litigation .................................................................................. 10

                  b.    The Proposed Method of Distribution is Effective ..................... 12

                  c.    Supplemental Agreement Further Supports Adequacy
                        of Relief .................................................................................... 12

            4.    All Settlement Class Members Are Treated Equally ............................ 13

IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS TO
      PERMIT DISSEMINATION OF THE NOTICE .................................................... 13

            1.    The Class Members Are So Numerous That Joinder Would Be
                  Impracticable ...................................................................................... 14

            2.    There Are Questions of Law or Fact Common to the Class ................. 15

            3.    Lead Plaintiffs' Claims Are Typical of the Class's Claims ................. 15

            4.    Lead Plaintiffs Have Fairly and Adequately Protected the
                  Interests of the Class ........................................................................... 16

            5.    Questions Common to the Class Predominate Over Individual
                  Questions and a Class Action Is Superior to Other Available
                  Means of Adjudication ........................................................................ 17

V.    NOTICE OF THE SETTLEMENT SHOULD BE APPROVED ......................... 18

VI.   THE PROPOSED SCHEDULE SHOULD BE APPROVED ............................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                       **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................................13, 17

*Appleyard v. Wallace*,
   754 F. 2d 955 (11th Cir. 1985) ...........................................................................................15

*Aranaz v. Catalyst Pharm. Partners Inc.*,
   302 F.R.D. 657 (S.D. Fla. 2014) .........................................................................................14

*Bennett v. Behring Corp.*,
   96 F.R.D. 343 (S.D. Fla. 1982), *aff'd*, 737 F. 2d 982 (11th Cir. 1984) ...............................6, 7

*Borcea v. Carnival Corp.*,
   238 F.R.D. 664 (S.D. Fla. 2006) .........................................................................................13

*Canupp v. Liberty Behavioral Health Corp.*,
   417 F. App'x 843 (11th Cir. 2011) .......................................................................................7

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
   2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ...................................................................10

*City of L.A. v. Bankrate, Inc.*,
   2016 U.S. Dist. LEXIS 115071 (S.D. Fla. Aug. 25, 2016)..................................................11

*Cox v. Am. Cast Iron Pipe Co.*,
   784 F. 2d 1546 (11th Cir. 1986) ...................................................................................14, 15

*Dukes v. Air Can.*,
   2019 WL 8358700 (M.D. Fla. Sept. 6, 2019) ....................................................................11

*Eisenband v. Schumacher Auto., Inc.*,
   2019 WL 1301746 (S.D. Fla. Feb. 20, 2019) ....................................................................10

*Ervin v. Scotts Co. LLC*,
   2020 WL 13413684 (S.D. Fla. Aug. 25, 2016)....................................................................7

*Fla. Educ. Ass'n v. Dep't of Educ.*,
   2019 WL 8272779 (N.D. Fla. Nov. 4, 2019) .......................................................................7

*Fresco v. Auto Data Direct, Inc.*,
   2007 WL 2330895 (S.D. Fla. May 11, 2007) ....................................................................11

*Grant v. Ocwen Loan Servicing, LLC*,
   2019 WL 367648 (M.D. Fla. Jan. 30, 2019).......................................................................10

*Gunthert v. Bankers Std. Ins. Co.*,
   2019 WL 1103408 (M.D. Ga. Mar. 8, 2019) ............................................................8

*In re Healthsouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) .....................................................................20

*In re HealthSouth Corp. Sec. Litig.*,
   572 F. 3d 854 (11th Cir. 2009) ...........................................................................6

*Holman v. Student Loan Xpress, Inc.*,
   2009 WL 4015573 (M.D. Fla. Nov. 19, 2009) ..................................................16

*Kennedy v. Tallant*,
   710 F. 2d 711 (11th Cir. 1983) ...........................................................................18

*Lee v. Ocwen Loan Servicing, LLC*,
   2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ..................................................18

*Morgan v. Pub. Storage*,
   301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...............................................................9

*Nelson v. Mead Johnson & Johnson Co.*,
   484 F. App'x 429 (11th Cir. 2012) .....................................................................6

*In re Netbank, Inc. Sec. Litig.*,
   259 F.R.D. 656 (N.D. Ga. 2009) ......................................................................15

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ..........................................................................................18

*Pierre-Val v. Buccanners, L.P.*,
   2015 WL 3776918 (M.D. Fla. June 17, 2015) ....................................................7

*Poertner v. Gillette Co.*,
   2014 WL 4162771 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th
   Cir. 2015) .............................................................................................................6

*In re Rayonier Sec. Litig.*,
   2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) ....................................................20

**Statutes**

15 U.S.C. § 78u-4(a)(7) .............................................................................................18, 19

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

Lead Plaintiffs City of Atlanta Police Officers' Pension Plan ("Atlanta Police Officers") and City of Atlanta Firefighters' Pension Plan ("Atlanta Firefighters") (together, "Lead Plaintiffs") respectfully submit this unopposed motion for preliminary approval of settlement of its claims against Defendants Celsius Holdings, Inc. ("Celsius" or the "Company"), John Fieldly and Edwin Negron-Carballo (collectively, "Defendants;" together with Lead Plaintiffs, the "Parties").

## I.     INTRODUCTION

As set forth in the Stipulation of Settlement dated August 2, 2023, (the "Settlement Agreement"), Lead Plaintiffs, on behalf of themselves and the putative Class, have agreed to settle all claims asserted in the Action[1] against Defendants, in exchange for $7,900,000 in cash (the "Settlement Amount"). This proposed settlement ("Proposed Settlement") represents a significant recovery for the Class.

While Lead Plaintiffs and their counsel believe that the claims against Defendants are meritorious and supported by the evidence gathered to date, they also recognize that, in the absence of a settlement, they faced the significant risk that a smaller recovery – or, indeed, no recovery at all – might be achieved after a trial of the Action and the likely appeals that would ensue. Throughout the litigation, Lead Plaintiffs were fully apprised of what Lead Plaintiffs' counsel believed were the strengths and weaknesses of the Action.

The Proposed Settlement was achieved through extensive and informed arm's length negotiations overseen by an experienced mediator, and the significant recovery provided to the putative Class is well within the range of reasonableness.  The requirements of Rule 23 have been met and preliminary approval of the Proposed Settlement and class certification is appropriate.

---

[1] All capitalized terms not otherwise defined shall have the meanings ascribed to them in §II.1 of the Stipulation of Settlement.

## II.      FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

This dispute arises out of Defendants' misapplication of FASB's ASC 718 and resulting overstatement of Celsius's financial statements.   Lead Plaintiffs contend that these financial statements were false and misleading in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and that Celsius misapplied ASC 718 to boost Celsius's net income.   These allegations were based on Celsius's own public disclosures, as well as interviews with former Celsius employees and consultation with Lead Plaintiffs' accounting expert.   The complaint asserts that the falsity of Celsius's financial statements was revealed on March 1, 2022, when Celsius announced that the Company could not timely file its 2021 annual report due to, among other things, "material errors in previous filings." ¶ 83.[2]   Specifically, Celsius "determined that the calculation and expense of noncash share-based compensation … were materially understated…" *Id.*   Lead Plaintiffs' complaint also alleges that after the March 1, 2022 announcement, the price of Celsius shares declined, causing substantial losses to investors.   ¶ 89.

The initial complaint in this Action was filed on March 16, 2022, against Defendants in the Southern District of Florida.   ECF No. 1.   The complaint asserted claims under Sections 10(b) and Section 20(a) of the Exchange Act.   *Id.*   On May 16, 2022, Lead Plaintiffs filed a Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel.   ECF No. 33.   Two other Celsius shareholders filed lead plaintiff motions.   *See* ECF Nos. 24, 34.   On June 6, 2022, the Court granted Lead Plaintiffs' Motion and appointed Atlanta Police Officers and Atlanta Firefighters as Lead Plaintiffs and Grant & Eisenhofer P.A. as Lead Counsel.   ECF No. 41.   Lead Plaintiffs then conducted a thorough investigation with the help of a paid, private investigator who interviewed several former Celsius employees, and their accounting expert.

---

[2] All references to "¶" refer to the Amended Complaint (ECF No. 44).

On July 8, 2022, Lead Plaintiffs filed the amended complaint (the "Complaint"), alleging that Defendants disseminated materially false and misleading statements regarding Celsius's financial reporting during the Class Period.  ECF No. 44.  The Complaint alleged violations of § 10(b) of the Exchange Act and SEC Rule 10b-5 against Defendants, and violations § 20 of the Exchange Act against John Fieldly and Edwin Negron-Carballo.  *Id*.

On August 5, 2022, Defendants filed a motion to dismiss the Complaint (ECF No. 47), Lead Plaintiffs filed their opposition on August 26, 2022 (ECF No. 48), and Defendants filed their reply on September 9, 2022 (ECF No. 49).  On November 21, 2022, the Court entered an order referring the Motion to Dismiss to United States Judge Bruce E. Reinhart for Report and Recommendation.  ECF No. 51.  On December 13, 2022, the Parties participated in a Zoom hearing on Defendants' Motion to Dismiss before Judge Reinhart.  ECF No. 54.  On February 13, 2023, Judge Reinhart issued a Report and Recommendation on Defendants' Motion to Dismiss the Complaint (the "Report and Recommendation").  ECF No. 55.  On March 22, 2023, the Court entered an Order adopting the Report and Recommendation, granting Defendants' Motion as to John Fieldly and denying Defendants' Motion as to Celsius and Edwin Negron-Carballo.  ECF No. 62.

On April 3, 2023, the Court entered an Order resetting the trial date and referring the case to United States Judge William Matthewman for a scheduling conference.  ECF No. 64.  On April 10, 2023, Judge Matthewman entered the Pretrial Scheduling Order and Order Referring Case to Mediation (the "Scheduling Order"), which set, among other things, the trial date and deadlines for discovery.  ECF No. 75.

On May 18, 2023, Lead Plaintiffs filed a Motion for Class Certification (ECF No. 95) and Defendants filed their opposition on June 15, 2023 (ECF No. 100). Lead Plaintiffs' reply in further support of class certification was due July 20, 2023. *See* ECF No. 92.

Shortly after, the Parties agreed to engage in confidential mediation to resolve the Action. Lead Plaintiffs' Counsel engaged Frank Torchio of Forensic Economics to assist with evaluating potential damages to the putative Class in this Action. While Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action have merit, they are also mindful of potential weaknesses in Lead Plaintiffs' claims as well as the expense and length of continued proceedings necessary to prosecute the Action through trial.

On July 12, 2023, the Parties and their counsel participated in a full day mediation with Michael A. Hanzman ("Mr. Hanzman") of Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg"). Mr. Hanzman joined Bilzin Sumberg as a mediator after serving as a Circuit Court Judge for the Eleventh Judicial Circuit of Florida for twelve years. After many hours of negotiations, Mr. Hanzman made a mediator's proposal to resolve the Action, which the Parties each accepted on a double-blind basis on July 12, 2023. The Parties thereafter executed a Term Sheet memorializing their agreement, which included, among other things, the Parties' agreement to fully and finally resolve the Action in return for a settlement payment of $7,900,000 for the benefit of the Class, subject to the negotiation of the terms of the Stipulation of Settlement and approval by the Court. On July 14, 2023, counsel for the Parties notified the Court via telephone that the Parties had reached an agreement in principle. On July 17, 2023, the Parties filed a notice advising the Court of the settlement. ECF No. 109.

## III.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   DESCRIPTION OF THE SETTLEMENT AND PLAN OF ALLOCATION

The Proposed Settlement provides that Celsius will pay, on behalf of all Defendants, $7.9 million in cash into an Escrow Account for the benefit of the Settlement Class.  This consideration, as provided for in the Settlement Agreement or approved by the Court, and less any fees associated with notifying the class and administering the settlement consideration (*i.e.*, the "Net Settlement Fund"), will be distributed among the Settling Class Members who submit timely and valid Proof of Claim and Release Forms in accordance with the Plan of Allocation set forth in the Notice. Lead Plaintiffs believe that the Proposed Settlement is an excellent recovery based on the claims asserted in the Action, and is in all respects, fair, adequate, reasonable, and in the best interests of the Settlement Class.

Under the Plan of Allocation, the Claims Administrator, selected by Lead Plaintiffs based on its experience in handling securities cases, will calculate each Authorized Claimant's Recognized Loss based on the information supplied in each person's Proof of Claim and Release Form.  The Plan of Allocation allocates the Net Settlement Fund to Settling Class Members on a *pro rata* bases after determining the Settling Class Members' Recognized Loss Amounts.  The Plan of Allocation accounts for the consideration that an Authorized Claimant used to purchase their Celsius shares and, if the Authorized Claimant sold the shares, when the sale occurred.

The Plan of Allocation was determined with the assistance of Lead Plaintiffs' expert, Frank Torchio, of Forensic Economics, who has more than 30 years of experience in assisting with securities damages calculations and plan of allocation development.  Lead Plaintiffs submit that the Plan of Allocation is fair and reasonable and should be approved together with the Settlement at the Settlement Hearing.

Specifically, the Plan of Allocation calculates a Recognized Loss Amount in the following ways for Authorized Claimants who purchased or acquired shares of Celsius common stock on or between August 12, 2021 through March 1, 2022, inclusive:

1. For Investors who sold prior to the close of trading on March 1, 2022, the Recognized Loss per share is zero.

2. For investors who retained through the close of trading on March 1, 2022 and sold on or before through May 27, 2022, the Recognized Loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase (i.e., $6.19 per share); and (ii) the difference between the purchase price and the average closing price between August 12, 2021 and the date of sale.

3. For investors who retained at the close of trading on May 27, 2022, the Recognized Loss per share shall be the lesser of: (i) the alleged inflation per share at the time of purchase (i.e., $6.19); and (ii) the purchase price minus $54.70[3], but the computed Recognized Loss cannot be less than zero.

## B.     STANDARD FOR PRELIMINARY APPROVAL OF A SETTLEMENT UNDER RULE 23

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class claims. *See Poertner v. Gillette Co.*, 2014 WL 4162771, at *2 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F. App'x 624 (11th Cir. 2015). The Court's decision to approve a settlement is "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012). This is especially true of securities class actions. *See In re HealthSouth Corp. Sec. Litig.*, 572 F. 3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors pretrial settlement of class action lawsuits); *see also Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F. 2d 982 (11th Cir. 1984) ("[S]ettlements [of class actions] are highly favored in the law and will be upheld wherever possible.").

---

[3] The mean (average) closing price for Celsius common stock during the 90-day look-back period was $54.70 per share.

Approval under Rule 23(e) involves a two-step process.  First, "the court conducts a preliminary review to determine whether the proposed settlement is within the range of possible approval, or, in other words, whether there is probable cause to notify the class of the proposed settlement." *Fla. Educ. Ass'n v. Dep't of Educ.*, 2019 WL 8272779, at *2 (N.D. Fla. Nov. 4, 2019). Second, "the court conducts a fairness hearing at which all interested parties are afforded an opportunity to be heard" in order "to determine if the proposed settlement is fair, reasonable and adequate to those who are affected." *Id*. at *2.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Ervin v. Scotts Co. LLC*, 2020 WL 13413684, at *4 (S.D. Fla. Aug. 25, 2016).[4]

Pursuant to Rule 23(e)(1), notice should be provided to the Class if, based upon the Parties' showing, the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1).  The Court should consider the factors enumerated in Rule 23(e)(2) when assessing the settlement approval. Further, when assessing whether the settlement is "fair, reasonable, and adequate," courts in the Eleventh Circuit generally consider the *Bennett* factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense and duration of litigation; (5) the amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.  737 F. 2d at 986.

Full analysis of Rule 23(e)(2) or the *Bennett* factors is unnecessary at the preliminary approval stage. *See Pierre-Val v. Buccanners, L.P.*, 2015 WL 3776918, at *1 (M.D. Fla. June 17,

---

[4] Courts typically "rely upon the judgment of experienced counsel for the parties," and "absent fraud, collusion, or the like," are "hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011).

2015) ("Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement").  As demonstrated below, the Proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

**1.    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Well-Informed and Experienced Counsel**

Courts presume that a proposed settlement is fair and reasonable when, as here, it is the result of arm's-length negotiations.  *See Gunthert v. Bankers Std. Ins. Co.*, 2019 WL 1103408, at *3 (M.D. Ga. Mar. 8, 2019) ("There is a presumption of good faith in the negotiation process …[and] [w]here the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion.").

Here, the Proposed Settlement is the product of informed arm's-length negotiations following substantial discovery[5], expert consultation[6], and two separate mediation efforts.  The first, court-ordered mediation occurred before Judge Matthewman on June 6, 2023.  *See* ECF No. 99.  The Parties were unable to resolve the Action during the first mediation.  On July 12, 2023, after additional discovery and further evaluation of Lead Plaintiffs' claims, the Parties and their counsel participated in a second, private mediation before Mr. Hanzman of Bilzin Sumberg.  The mediation before Mr. Hanzman lasted the entire day and well into the evening and required extensive discussions and negotiations between the Parties.  There was a wide gap between the Parties' opening negotiating positions, which was only bridged through Mr. Hanzman's experienced mediation skills.  Further, the agreed settlement amount of $7.9 million was the result

---

[5] Lead Counsel reviewed more than 6,000 documents produced by Defendants, as well as the 2,782 documents produced by the Defendants' auditors.

[6] Lead Counsel engaged (i) Adoria Lim of the Brattle Group, who prepared an expert report addressing the accounting aspects of the Action; and (ii) Frank Torchio of Forensic Economics, who prepared expert reports addressing damages, loss causation, and class certification issues.

of Mr. Hanzman's mediator's recommendation, which he viewed as a reasonable amount after reviewing the Parties' mediation statements, listening to their opening remarks at the mediation, and engaging the Parties for several hours on each side to determine the strengths and weaknesses of their respective positions. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1247 (S.D. Fla. 2016) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Further, Lead Plaintiffs' representative participated in the mediation and considered and approved of Lead Plaintiffs' proposals and counterproposals. Late into the evening, the Parties reached an agreement only after the mediator's recommendation.

The Settlement was also reached only after extensive discovery, so that each side was able to evaluate their respective strengths and weaknesses. In particular, Plaintiffs received and reviewed 8,782 documents from Defendants and third parties. These documents were also provided to Plaintiffs' experts who analyzed them in connection with preparing expert reports on liability and damages, respectively. The agreed upon settlement amount of $7.9 million is well within the range of reasonableness as Mr. Torchio calculated a damages range of $45.5 million to $78.5 million, representing 17.4% to 10.1% of the estimated class-wide damages.

Given the circumstances of this Action, the Court can conclude that the Parties and their counsel were well-informed prior to reaching the Settlement. The fact that the Settlement is the product of arm's-length negotiations, approved by Lead Plaintiffs, and entered into by experienced and informed counsel, demonstrates that the process by which the Settlement was reached is procedurally fair. The Settlement is, therefore, presumptively fair, reasonable and adequate.

### 2. The Settlement Provides a Substantial Benefit for the Class

The Proposed Settlement provides for a Settlement Fund of $7,900,000 in cash. This recovery is a substantial result for the Class, especially in light of the history of this case and the

risks of continued litigation and trial.  At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." *See Eisenband v. Schumacher Auto., Inc.*, 2019 WL 1301746, at *2 (S.D. Fla. Feb. 20, 2019).  When determining the range of reasonableness with respect to settlement of securities cases, "[c]ourts have repeatedly noted that stockholder litigation is notable difficult and notoriously uncertain." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *9 (N.D. Ga. Oct. 20, 2008).  Thus, the benefit of the Proposed Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved after trial and likely appeals, years into the future.

The Proposed Settlement will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants.  Similar plans of allocation repeatedly have been approved by courts in this District.  *See Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2008 WL 11336122, at *5 (N.D. Ga. Oct. 20, 2008) (finding securities class action plan of allocation "treats all Settlement Class Members in a similar manner – ensuring that everyone entitled to a distribution…gets a *pro rata* share of the Net Settlement Fund in the proportion that his, her, or its Recognized Claim bears to the total of all Recognized Claims."). The Proposed Settlement's benefit to the Class and the fact that all Class Members will be treated the same under the proposed Plan of Allocation support preliminary approval of the Proposed Settlement.

### 3. The Relief Provided by the Settlement Is Adequate When Weighed Against the Risks of Litigation

#### a. The Benefits of Settlement Outweigh the Risks of Litigation

Courts assess the adequacy of relief provided by settlement in contrast to the continuing risks of litigation.  *See Grant v. Ocwen Loan Servicing, LLC*, 2019 WL 367648, at *6 (M.D. Fla. Jan. 30, 2019) ("[I]t is not the value or nature of the settlement relief alone that is decisive, but

whether that relief is reasonable when compared with the relief plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing.").

Here, Mr. Torchio calculated a damages range of $45.5 million to $78.5 million.  Thus, the $7.9 million recovery to the class represents 17.4% to 10.1% of the estimated class-wide damages. The Proposed Settlement therefore comprises a meaningful portion of the Settlement Class's possible recovery and comports with historical settlement data in similarly sized cases.  *See City of L.A. v. Bankrate, Inc.*, 2016 U.S. Dist. LEXIS 115071, at *15 (S.D. Fla. Aug. 25, 2016) (preliminarily approving settlement "recognizing that securities class actions are difficult to measure" and finding the amount "appears to be within the range of reasonableness").

Although Lead Plaintiffs and their counsel believe that the claims asserted in the Action against Defendants are meritorious, continued litigation presents clear risks.  Lead Plaintiffs would face significant hurdles associated with continued engagement in challenging discovery, defeating Defendants' opposition to class certification, and would likely have faced additional challenges at the summary judgment phase.  After those significant hurdles were surpassed, Lead Plaintiffs would have faced a complex trial with issues likely to be unfamiliar to the fact-finders, and potential appeals following any unfavorable judgment, processes which would no doubt take years to resolve.  The Court should thus consider that the Settlement provides for payment to the Class now – without incurring any addition costs, rather than a speculative payment years down the road. *See Dukes v. Air Can.*, 2019 WL 8358700, at *2 (M.D. Fla. Sept. 6, 2019) (recommending preliminary approval of settlement of class action "pending for more than a year" finding that "[t]he proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."); *see also Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *6 (S.D.

11

Fla. May 11, 2007) (same).   In light of the foregoing factors, Lead Plaintiffs and their counsel believe the Proposed Settlement is in the best interests of the Class and respectfully submit that the Settlement falls well within the range of possible approval.

b.     <u>The Proposed Method of Distribution is Effective</u>

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  Lead Plaintiffs request that the Court appoint KCC Class Action Services ("KCC") as Claims Administrator.  If KCC is appointed it will, under Lead Counsel's guidance, process claims, allow claimants an opportunity to cure any deficiencies or request the Court review a denial of the claim(s), and pay Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Long Notice. The method proposed here is both effective and necessary.

c.     <u>Supplemental Agreement Further Supports Adequacy of Relief</u>

Fed. R. Civ. P. 23(e)(2)(C)(iv) requires disclosures of any agreement between the Parties in connection with the Proposed Settlement.  In addition to the Settlement Agreement, the Parties have entered into a supplemental agreement dated August 3, 2023 (the "Supplemental Agreement") regarding requests for exclusion.  The Supplemental Agreement provides Defendants with the option to terminate the Settlement in the event requests for exclusion from the Settlement Class exceed a certain agreed-upon threshold.  *See id.*  As is standard in securities class actions, the Supplemental Agreement is being kept confidential in order to avoid incentivizing the formation of a group of opt outs for the sole purpose of leveraging a larger individual settlement, to the detriment of the Settlement Class.  Pursuant to the Supplemental Agreement, it may be submitted to the Court in camera or under seal.

### 4.    All Settlement Class Members Are Treated Equally

The Plan of Allocation, drafted with the assistance of Lead Plaintiffs' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants and treats all Settlement Class Members equitably, as required by Fed. R. Civ. P. 23(e)(2)(D).   Each Authorized Claimant, including Lead Plaintiffs, will receive a *pro rata* distribution pursuant to the Plan of Allocation, and Lead Plaintiffs will be subject to the same formula for distribution of the Settlement Fund as other class members.   *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (approving *pro rata* distribution to class members).

For these and all of the foregoing reasons, the Court should grant preliminary approval of the Proposed Settlement and direct that notice of the Settlement be given to members of the Class.

## IV.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS TO PERMIT DISSEMINATION OF THE NOTICE

In addition to determining whether the proposed Settlement is fair and reasonable, the Court must consider whether to certify the Settlement Class conditionally for settlement purposes. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).   "The type of certification approval that courts provide with a preliminary settlement approval is accorded under a more relaxed standard" than in the typical certification process.   4 *Newburg on Class Actions S.* 13:18 (5th ed. 2012).

Certification of a settlement class is appropriate where the proposed class and proposed class representative meet the four requirements of Rule 23(a): (1) "numerosity" – the members of the class are so numerous that joinder would be impracticable; (2) "commonality" – there are common questions of law and fact that apply to all class members; (3) "typicality" – the claims of the proposed class representative are typical of the class, and there are no unique defenses against

the class representative; and (4) "adequacy" – the class representative will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

In addition, certification of a class for settlement purposes requires a showing that the requirements of Rule 23(b)(3) are met: that questions of law or fact common to the members of the class predominate over any individual issues of rule or law, and that a class action is superior to other available methods to adjudicate the controversy.  Fed. R. Civ. P. 23(b)(3).

Here, the parties have stipulated to the certification of the Settlement Class for settlement purposes only.  Settlement Agreement ¶ 3.1.  Lead Plaintiffs thus request that the Court certify the Settlement Class defined in the Stipulation, comprising "all Persons who, directly or through an intermediary, purchased or otherwise acquired Celsius common stock at any time during the Class Period."   Settlement Agreement ¶ 1.37.   Here, the proposed Settlement Class meets the requirements of and satisfied Fed. R. Civ. P. 23(a) and 23(b)(3).

### 1.       The Class Members Are So Numerous That Joinder Would Be Impracticable

Rule 23(a)(1) requires a class to be so large that joinder of all its members would be "impracticable."  Fed. R. Civ. P. 23(a)(1).  The prerequisite of numerosity is typically satisfied "where the securities were traded on a national public exchange, as the putative class members are likely to be numerous, geographically dispersed and difficult to identify."  *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 664 (S.D. Fla. 2014).  Here, Celsius common stock traded actively on the NASDAQ Capital Market throughout the Class Period under the ticker symbol "CELH."  As of March 1, 2022, Celsius had 74,908,845 shares of common stock outstanding.  *See* ECF No. 95-4, ¶ 23.  These shares were purchased by thousands of investors, making joinder impracticable.  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F. 2d 1546, 1553 (11th Cir. 1986) ("generally less than twenty-one is inadequate, more than forty adequate…").

### 2.     There Are Questions of Law or Fact Common to the Class

Commonality requires that there be "questions of law or fact common to the class."  Fed.

R. Civ. P. 23(a)(2).  A "common" issue is one that may be proved through the presentation of

generalized proof applicable to the class as a whole.  *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D.

656, 664 (N.D. Ga. 2009).  "Generally, where plaintiffs allege that the action is a result of a unified

scheme to defraud investors, the element of commonality is met."  *Id.*  Further, Rule 23 does not

require a complete identity of circumstances among class members.  Differences among class

members are not fatal to a class action so long as some common questions of fact or law exist.

*Cox*, 784 F. 2d at 1557.

Here, commonality is met due to common questions of law and fact pertaining to whether

false statements of material fact were made in Celsius's public statements, whether Defendants

acted with due care in misrepresenting or omitting to state material information, and the extent of

damages sustained by members of the Class and the appropriate measure of damages.

### 3.     Lead Plaintiffs' Claims Are Typical of the Class's Claims

Putative class representatives' claims must also be typical of those of the class members.

Fed. R. Civ. P. 23(a)(3).  The typicality requirement is met when the class representatives' claims

have the same essential characteristics and are based on the same legal theory as claims of the other

members of the class.  *Appleyard v. Wallace*, 754 F. 2d 955, 958 (11th Cir. 1985).  Factual

differences between the claims of the class representatives and those of other class members will

not defeat typicality. *Id*.

Lead Plaintiffs' claims are typical of those of the Settlement Class.  Lead Plaintiffs

purchased Celsius common stock during the Class Period, ECF No. 33-2 (Certification on Behalf

of Lead Plaintiffs and Schedule A demonstrating purchases and sales of Celsius shares from the

period of August 12, 2021 through March 1, 2022), and were damaged when the alleged corrective disclosure was revealed to the public.  Lead Plaintiffs satisfy the typicality requirement.

> **4.     Lead Plaintiffs Have Fairly and Adequately Protected the Interests of the Class**

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class.  In the Eleventh Circuit, this has traditionally entailed a two-pronged inquiry: (1) "plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation;" and (2) "plaintiffs lack interests antagonistic to those of the rest of the class." *Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F. 2d 718, 726 (11th Cir. 1987)).  Both prongs of the adequacy requirement are satisfied here.

Lead Plaintiffs do not have any interests antagonistic to those of the proposed Settlement Class.  Lead Plaintiffs have submitted certifications consistent with the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), indicating that they reviewed the Complaint, that they are willing to represent the Class, and that they will accept no payment for serving as representative plaintiffs beyond their *pro rata* shares of any recovery.  ECF No. 33-2.  Lead Plaintiffs are seeking, on their own behalf and on behalf of all Settlement Class Members, to recover from Defendants damages caused by Defendants' alleged unlawful conduct.  No evidence exists of any conflict of interests with the Settlement Class. Thus, Lead Plaintiffs are adequate class representatives.

The Court-appointed firm serving as Lead Counsel, Grant & Eisenhofer P.A. ("G&E") is experienced in prosecuting class actions having successfully prosecuted securities class actions in this Court and throughout the country.  Lead Counsel's firm resumes were previously submitted to the Court.  ECF No. 33-2.  The Settlement was reached only after Lead Counsel investigated and

16

drafted the Complaint and arduously opposed Defendants' motion to dismiss.  ECF No. 48. Lead Counsel spent considerable time on this Action for the benefit of Celsius investors including: conducting a thorough investigation with the help of a paid, private investigator; successfully opposing Defendants' motion to dismiss; retaining a market efficiency expert and moving for class certification; retaining a damages expert to help assess the total potential class-wide damages in the action; and participating in mediation sessions with Defendants' counsel. Lead Counsel's significant securities class action experience make it knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation. Thus, Lead Counsel should be appointed Class Counsel for the Settlement Class.

### 5. Questions Common to the Class Predominate Over Individual Questions and a Class Action Is Superior to Other Available Means of Adjudication

To certify a class under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  Plaintiffs satisfy the predominance and superiority criteria.

Here, no question exists that issues surrounding Defendants' alleged conduct, such as whether their statements and omissions were materially false or misleading, and whether their conduct caused damages to Lead Plaintiffs and the Settlement Class, are common to each member of the Settlement Class.  If each class member were to bring an individual action, each would be required to demonstrate the same misrepresentations and/or omissions to prove liability.  Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud class actions. *See Amchem*, 521 U.S. at 625.

17

Fed. R. Civ. P. 23(b)(3) also requires a finding that the class action mechanism is a superior method of adjudicating Lead Plaintiffs' and the Settlement Class members' claims.  Many of the Settlement Class Members are individuals for whom prosecution of a costly damages action on their own behalf does not provide a realistic or efficient alternative.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"); *Kennedy v. Tallant*, 710 F. 2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and [burdensome].").  A class action avoids the possibility of repetitious litigation and efficiently resolves the claims of the entire Settlement Class, conserving judicial resources.  Lead Plaintiffs have satisfied all the requirements of Fed. R. Civ. P. 23(a) and (b)(3). The Court should preliminarily certify the Settlement Class for settlement purposes.

## V.   NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23 of the Federal Rules of Civil Procedure requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  To satisfy the due process requirements, notice "need only be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *4 (S.D. Fla. Sept. 14, 2015).  Notice must also satisfy the requirements of the PSLRA.  *See* 15 U.S.C. § 78u-4(a)(7). Here, the Parties propose that notice be provided to the Class by mail via the U.S. Postal Service, as well as by publication of the Summary Notice over a national business newswire.

The proposed Notice (attached as Exhibit A-1 to the Settlement Agreement) advises Class Members of, *inter alia*: (i) the essential terms of the Settlement; and (ii) the proposed Plan of

Allocation. The Notice also provides specific information regarding the date, time, and place of the Final Approval Hearing, and sets forth the procedures and deadlines for: (i) submitting a Claim Form and (ii) objecting to any aspect of the Settlement. As discussed below, no second opportunity for opting out of the Class is necessary under the particular circumstances of this Action.

The content of the proposed Notice also meets the requirements of the PSLRA, which includes: (i) a statement of the amount to be distributed, determined in the aggregate and on an average per share basis; (ii) a statement of the potential outcome of the case (*i.e.*, whether there was agreement or disagreement on the amount of damages); and (iii) a brief statement that explains the reasons why the Parties are proposing the Settlement. *See* 15 U.S.C. §78u-4(a)(7).

As outlined in the Preliminary Approval Order, the proposed Claims Administrator, KCC, under the direction of Lead Counsel, will notify Class Members of the proposed Settlement. KCC was selected because of its significant experience in serving as a claims administrator in securities class actions. KCC prepared a detailed notification procedure based on its past experience. Thus, the notification process will rely primarily on a broad marketing campaign targeted at publications designed to reach as many Celsius shareholders as possible. As such, KCC will publish the Summary Notice in both Investors Business Weekly and PR Newswire.

The Notice and Proof of Claim and Release Form substantially in the forms of Exhibits A-1 and A-2 to the Settlement Agreement, will be accessible to all interested persons who view the links on the above-referenced sites. In addition, the Claims Administrator will mail the Notice and Claim Form to all persons and entities who can be identified through reasonable effort. In addition, the Claims Administrator will cause copies of the Notice and Proof of Claim and Release Form, along with other documents and information relevant to the Settlement, to be posted on the Settlement website, www.CelsiusHoldingsSecuritiesSettlement.com.

In sum, the Notice and Summary Notice comply fully with the requirements of the PSLRA, Rule 23 and due process. *See In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 (11th Cir. 2009) (individual notice to all reasonably locatable class members, publications in newspapers); *In re Rayonier Sec. Litig.*, 2017 WL 4542852, at *1 (M.D. Fla. Oct. 5, 2017) (individual notice to all reasonably locatable class members, publication in Investor's Business Daily and *PR Newswire*). Accordingly, Lead Counsel respectfully submits that the proposed notice program is adequate and should be approved by the Court.

## VI.   THE PROPOSED SCHEDULE SHOULD BE APPROVED

In connection with preliminary approval of the Proposed Settlement, the Court must also set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims, opting out of the settlement, and objecting to the Settlement. The parties respectfully submit the following schedule for the Court's consideration, as set forth in the Preliminary Approval Order.

| Event | Date |
|---|---|
| Commence Mailing of Notice | 14 days after entry of Notice Order ("Notice Date") |
| Publish Summary Notice | 10 days after Notice Date |
| Service by Lead Counsel on Defendants' Counsel of Affidavit Confirming Notice | 7 days prior to Settlement Hearing |
| Deadline to Submit Proofs of Claim and Release | 120 days after Notice Date |
| Deadline to Request Exclusion from the Settlement Class | 21 days prior to Settlement Hearing |
| Deadline to File Objections to the Proposed Settlement | 21 days prior to Settlement Hearing |
| Lead Plaintiff to File Motion for Approval of the Settlement and Lead Counsel to File Application for Attorneys' Fees and Expenses | 30 days prior to Settlement Hearing |

Dated: August 3, 2023

Respectfully submitted,

*/s/ Daniel L. Berger*
Daniel L. Berger (*pro hac vice*)
Caitlin M. Moyna (*pro hac vice*)
Vincent J. Pontrello (*pro hac vice*)
Mica A. Cocco (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Emails: dberger@gelaw.com
       cmoyna@gelaw.com
       vpontrello@gelaw.com
       mcocco@gelaw.com

*Counsel for Lead Plaintiff and Lead Counsel*
*for the Proposed Class*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN &**
**LEVINSON**
7080 NW 4th Street
Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com

*Liaison Counsel for City of Atlanta Police*
*Officers' Pension Plan and City of Atlanta*
*Firefighters' Pension Plan*

Jeffrey Reeves
**THE REEVES LAW FIRM, LLC**
1100 Peachtree Street
Suite 250
Atlanta, GA 30309
Tel.: (404) 795-6139
Fax: (888) 209-5048
Email: jeff@reeveslawfirmpc.com

*Additional Counsel for City of Atlanta Police*
*Officers' Pension Plan and City of Atlanta*
*Firefighters' Pension Plan*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on August 3, 2023, I authorized the electronic filing of the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses of all counsel of record.

*/s/ Daniel L. Berger*
Daniel L. Berger

**Grant & Eisenhofer P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
