**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 22-80418-CV-MIDDLEBROOKS

| | |
|---|---|
| CITY OF ATLANTA POLICE OFFICERS' PENSION PLAN and CITY OF ATLANTA FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>              -v-<br><br>CELSIUS HOLDINGS, INC., JOHN FIELDLY, and EDWIN NEGRON-CARBALLO,<br><br>        Defendants. | <u>CLASS ACTION</u> |

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL**
**OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION,**
**CERTIFICATION OF CLASS AND APPOINTMENT OF**
**<u>CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................... iii

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION ................ 3

III.    THE NOTICE SATISFIES DUE PROCESS STANDARDS AND HAS BEEN
        FULLY IMPLEMENTED ........................................................................ 4

IV.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE
        AND WARRANTS FINAL APPROVAL ..................................................... 5

        A.      STANDARD FOR FINAL APPROVAL OF SETTLEMENT OF A CLASS ACTION ............... 5

                1.      Lead Plaintiffs and Lead Counsel Have Adequately
                        Represented the Settlement Class ................................................ 7

                2.      The Settlement Was Reached Following Arms-Length
                        Negotiations Led by an Experienced Mediator ......................... 8

                3.      The Relief That the Settlement Provides for the Settlement
                        Class Is Adequate in Light of the Costs and Risks of Further
                        Litigation .................................................................................... 9

                        a.      The Risks of Establishing Liability and Damages Support
                                Approval of the Settlement ........................................... 10

                                i.      Risks to Proving Liability ............................... 10

                                ii.     Risks to Proving Damages and Loss Causation ............. 11

                        b.      The Settlement Represents a Favorable Percentage of
                                Likely Recoverable Damages ....................................... 12

                        c.      The Costs and Delays of Continued Litigation Support
                                Approval of the Settlement ........................................... 13

                        d.      All Other Rule 23(e)(2)(c) Factors Support Approval
                                of the Settlement .......................................................... 13

                4.      The Settlement Treats Class Members Equitably Relative
                        to Each Other .............................................................................. 16

                5.      Other Factors Considered by the Eleventh Circuit Support
                        Approval of the Settlement ......................................................... 16

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ................................... 17

VI.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................................... 18

VII.    CONCLUSION ............................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abercrombie v. TD Bank*, *N.A.*,
   2022 WL 18779805 (S.D. Fla. Dec. 9, 2022) ............................................................5

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) .................................................................6, 9, 16

*Cabot E. Broward 2 LLC v. Cabot*,
   2018 WL 5905415 (S.D. Fla. Nov. 9, 2018) ...........................................................12

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) ...........................................................................15

*Canupp v. Sheldon*,
   2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) .........................................................8

*Carpenters Health &Welfare Fund v. Coca-Cola Co.*,
   2008 WL 11336122 (N.D. Ga. Oct. 20, 2008) ......................................................11

*In re Checking Account Overdraft Litig.*,
   2012 U.S. Dist. LEXIS 56115 (S.D. Fla. Apr. 20, 2012) .......................................8

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...............................................................7

*Dukes v. Air Canada*,
   2020 WL 496144 (M.D. Fla. Jan. 30, 2020) .......................................................15

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...........................................................................................11

*Faught v. Am. Home Shield Corp.*,
   668 F.3d 1233 (11th Cir. 2012) ...........................................................................6

*Francisco v. Numismatic Guar. Corp.*,
   2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ........................................................16

*Hanley v. Tampa Bay Sports & Entm't*,
   2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) .....................................................15

*In re HealthSouth Corp. Sec. Litig.*,
   572 F.3d 854 (11th Cir. 2009) .............................................................................5

iii

*In re Immucor Sec. Litig.*,
    2007 U.S. Dist. LEXIS 111135 (N.D. Ga. Sep. 26, 2007) ....................................................14

*Ingram v. The Coca-Cola Co*.,
    200 F.R.D. 685 (N.D. Ga. 2001) .................................................................................................8

*Kirkpatrick v. J.C. Bradford Co*.,
    827 F.2d 718 (11th Cir. 1987) .....................................................................................................7

*Lake v. First Nationwide Bank*,
    900 F. Supp. 726 (E.D. Pa. 1995) ..............................................................................................8

*Morris v. PHH Mortgage Corp.*,
    2023 WL 5422523 (S.D. Fla. June 16, 2023) .......................................................................4, 5

*Mullane v. Cent. Hanover Bank & Tr. Co*.,
    339 U.S. 306 (1950). Notice .......................................................................................................4

*In re Netbank, Inc. Sec. Litig.*,
    2011 U.S. Dist. LEXIS 162835 (N.D. Ga. Nov. 9, 2011) ........................................................17

*In re NVIDIA Corp. Derivative Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...........................................................................7

*Peoples v. TurtleFTPierce, LLC et al.*,
    No. 22-cv-14345-DMM (S.D. Fla. 2023) ..................................................................................6

*In re Rayonier Inc. Sec. Litig*.,
    2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) ...........................................................................16

*In re Terazosin Hydrochloride Antitrust Litig.*,
    2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) ........................................................17

*Thorpe v. Walter In*v. *Mgmt.*,
    2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ........................................................................12

*Tung v. Dycom Indus., Inc.*,
    No. 18-cv-81448 (S.D. Fla. 2020) ...........................................................................................12

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ...........................................................................17

*Yang v. Focus Media Holdin*g*, Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ..........................................................................17

**Other Authorities**

David F. Herr, *Manual for Complex Litigation* §21.312 (4th ed. 2019) .........................................4

Lead Plaintiffs City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan (together, "Lead Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for final approval of (i) the $7.9 million Settlement resolving all claims against Defendants Celsius Holdings, Inc. ("Celsius" or the "Company"), John Fieldly and Edwin Negron-Carballo (collectively, "Defendants;" together with Lead Plaintiffs, the "Parties"); (ii) certification of the proposed Class and appointment of Lead Plaintiffs as Class Representatives and appointment of Lead Counsel as Class Counsel; and (iii) the proposed Plan of Allocation.[1]

## I.    PRELIMINARY STATEMENT

After a challenging litigation, Lead Plaintiffs have agreed to settle this action with Defendants for a cash payment of $7.9 million to compensate investors in Celsius common stock and finally resolve all claims in this Action.  The proposed Settlement is an excellent result for the Settlement Class and satisfies the standards for final approval under Rule 23(e)(2).  As detailed in the accompanying Declaration of Daniel L. Berger in Support of Motion for Final Approval of Settlement ("Berger Declaration" or "Berger Decl.") and summarized herein, the Settlement was reached after a mediation process overseen by retired United States Circuit Court Judge Michael A. Hanzman, a highly experienced and well-respected mediator, and represents a favorable percentage of the likely potential damages that could be established at trial.

On August 30, 2023, the Court issued an Order preliminarily approving the Settlement and the form and manner of Notice (the "Preliminary Approval Order") (ECF No. 117).  After the Court issued its Preliminary Approval Order, the Claims Administrator disseminated the Notice

---

[1] All capitalized terms not otherwise defined shall have the meanings set forth in the Stipulation of Settlement dated August 2, 2023. ECF No. 115-1.

under a robust, multi-pronged notice plan, including direct mail notice by U.S. mail, publication notice, and the creation of a settlement website.

The Settlement comes after a demanding litigation, which involved investigating claims and hiring an expert to assist with interpretation of accounting rules, drafting an amended class action complaint, engaging in challenging discovery, successfully opposing Defendants' motion to dismiss, moving for class certification, preparing and defending representatives of Lead Plaintiffs in depositions, and negotiating the settlement with the help of an experienced mediator. As a result of these efforts, Lead Plaintiffs have a thorough understanding of the relative strengths and weaknesses of their case and the propriety of the proposed Settlement.

Lead Plaintiffs believe in the strength of the Class's claims; Defendants, however, have consistently denied liability. During the Parties' settlement negotiations, Lead Counsel made clear that Lead Plaintiffs would proceed with the litigation, rather than settle for an amount that was not fair to the Class. The arm's-length negotiations resulted in a fair settlement and favorable result for the Class.

Lead Counsel is highly experienced in prosecuting securities class actions, and believes that the Settlement is in the Class's best interest. Indeed, it is an excellent result based on an analysis of all the relevant factors, including: (1) the substantial risk, expense, and uncertainty in continuing the litigation, including significant hurdles associated with continued engagement in challenging discovery, defeating Defendants' opposition to class certification, and the likely motions for summary judgment, trial, post-trial motions, and appeals; (2) the relative strengths and weaknesses of the claims and defenses asserted; (3) past experience in litigating complex actions similar to this one; (4) a complex trial with issues likely to be unfamiliar to the fact-finders; and (5) the serious disputes among the parties concerning the merits and damages. The Settlement is

also supported by Lead Plaintiffs, institutional investors of precisely the type Congress sought to have in the position of lead plaintiff to make strategic decisions, including settlement, in securities class actions.

The reaction of the proposed Class so far also supports the Settlement and Plan of Allocation. Pursuant to the Preliminary Approval Order, the Notice was disseminated through means specifically designed to reach Celsius investors. Those means included a dedicated settlement website, nationwide press releases, and the issuance of the Notice via mail to persons identified through Defendants' data and the Claims Administrator's reasonable efforts. To date, there has not been a single objection to the Settlement, and only one putative Class Member has submitted a request for exclusion.

Lead Plaintiffs also request that the Court approve the Plan of Allocation, which was set forth in the Notice sent to Class Members. The Plan of Allocation governs how claims will be calculated and how the Settlement proceeds will be distributed among Claimants. It was prepared in consultation with Lead Plaintiffs' Expert, Frank Torchio, who has over thirty years of experience calculating damages in securities class actions. The Plan of Allocation provides for calculation of investors' "Recognized Loss Amounts" for those who purchased or otherwise acquired Celsius common stock during the Class Period.

## II.    FACTUAL AND PROCEDURAL BACKGROUND OF THE LITIGATION

The terms of the Settlement are contained in the Stipulation of Settlement and are attached as Exhibit 1 to the Declaration of Daniel L. Berger in support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval. *See* ECF No. 115-1. Lead Plaintiffs respectfully refer the Court to the accompanying Berger Declaration, for a discussion of: (i) the factual background and procedural history of the Action; (ii) the efforts of Lead Counsel in prosecuting the claims in this

Action; (iii) the negotiations resulting in this Settlement; and (iv) the reasons why the Settlement and the Plan of Allocation are fair and reasonable and should be approved.

### III.     THE NOTICE SATISFIES DUE PROCESS STANDARDS AND HAS BEEN FULLY IMPLEMENTED

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.'" David F. Herr, *Manual for Complex Litigation* §21.312, at 293 (4th ed. 2019).  Members of a proposed class action must be provided with notice of the existence and substance of the litigation and settlement through "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1).  Notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Notice provided pursuant to Rule 23(e) must also "put class members on notice of the general parameters of the settlement and [] inform them of where information as to the specifics may be obtained." *Morris v. PHH Mortgage Corp.*, 2023 WL 5422523, at *6 (S.D. Fla. June 16, 2023) (internal citations omitted).

In accordance with the Court's Preliminary Approval Order, starting on September 13, 2023, the Claims Administrator, KCC Class Action Services, LLC ("KCC"), caused the Notice and Proof of Claim to be publicized to potential class members through means reasonably likely to apprise them of the litigation and settlement.  *See* Declaration of Lance Cavallo ("Cavallo Decl.") at ¶¶3-9.  Detailed information regarding the Settlement, including copies of the Notice and Proof of Claim were also posted on a website dedicated to the Settlement.  *See* Cavallo Decl. at ¶¶11-12.

4

The Notice, which has been continuously available on the settlement website since September 13, 2023, contains a description of the claims asserted, the Settlement, the Plan of Allocation, and Class Members' rights to participate in and object to the Settlement or the requested fees and expenses, or to exclude themselves from the Class. *See* Cavallo Decl. at ¶¶11-12. In addition, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PRNewswire* on September 18, 2023. *Id.* at ¶9. The notice program provided all the information required by the PSLRA and is adequate to meet requirements of due process and Rules 23(c)(2) and (e) for providing notice to the Class. Indeed, notice programs like this one have been approved in many class action settlements. *See, e.g.*, *Morris*, 2023 WL 5422523, at *6 (finding the notice requirements of Rule 23 and due process satisfied where the notice, settlement agreement, and preliminary approval order were posted on a dedicated settlement website, which also included a summary of important deadlines); *Abercrombie v. TD Bank, N.A.*, 2022 WL 18779705, at *4 (S.D. Fla. Dec. 9, 2022) (finding notice adequate where the notice was sent to class members through email, U.S. Mail and a more detailed notice was posted on the settlement website).

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL

### A. STANDARD FOR FINAL APPROVAL OF SETTLEMENT OF A CLASS ACTION

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims. A class action settlement should be approved if the court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). The Eleventh Circuit has recognized that public policy favors settlement of disputed claims among private litigants, particularly in class actions. *See, e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 572 F.3d 854, 862 (11th Cir. 2009) ("Public policy strongly favors the pretrial settlement of class action lawsuits.").

Rule 23(e)(2), as amended on December 1, 2018, provides that the Court should determine

whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

The Eleventh Circuit has held that district courts should also consider following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2012).

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil

Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any

factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers

on the core concerns of procedure and substance that should guide the decision whether to approve

the proposal." Advisory Committee Notes to 2018 Amendments. Accordingly, Lead Plaintiffs

will discuss the fairness, reasonableness, and adequacy of the Settlement principally in relation to

the four factors set forth in Rule 23(e)(2), but will also discuss the application of relevant, non-

duplicative *Bennett* factors. *See Peoples v. TurtleFTPierce, LLC et al.*, No. 22-cv-14345-DMM,

ECF No. 64 at 5 (S.D. Fla. 2023) ("Given that the *Bennett* and Rule 23(e)(2) factors overlap

significantly, [the Court] consider[s] them together.").

All of the applicable factors strongly support final approval of the Settlement.

1.     **Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class**

When evaluating a class action settlement, the Court should consider whether "the class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A).  The Eleventh Circuit considers whether: (1) class representatives have interests antagonistic to the interests of other class members; and (2) class counsel has the necessary qualifications and experience to lead the litigation. *See Kirkpatrick v. J.C. Bradford Co.*, 827 F.2d 718, 726 (11th Cir. 1987).

Here, Lead Plaintiffs and Lead Counsel have adequately represented the Class in their vigorous prosecution of the Action and in the arms-length negotiation of the Settlement.  Lead Plaintiffs are sophisticated institutional investors with substantial experience leading numerous securities class actions.  Throughout the Action, Lead Plaintiffs benefited from the advice of knowledgeable counsel well-versed in shareholder and securities fraud litigation.  Lead Plaintiffs also have claims that are typical of and coextensive with those of other Class Members and have no interests antagonistic to the interests of other members of the Class.

In addition, Lead Counsel is highly qualified and experienced in securities litigation (*see* Berger Decl. at ¶¶48-50) and was able to successfully conduct the litigation in the face of strong opposition, and obtain a favorable settlement.  Based on their knowledge of the facts and legal issues, Lead Counsel believes that this is a fair and reasonable settlement.  The opinion of Lead Counsel should be given significant weight. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The Court gives great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation") (internal quotations omitted); *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's

belief that settlement is in the best interest of those affected by the settlement."); *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.").

Accordingly, Lead Plaintiffs and Lead Counsel have adequately represented the Class.

### 2.     The Settlement Was Reached Following Arms-Length Negotiations Led by an Experienced Mediator

In weighing the approval of a class action settlement, the Court must consider whether the settlement "was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).  This inquiry is comparable to the Eleventh Circuit's traditional threshold examination of whether a proposed settlement is the product of fraud or collusion between the parties.  *See Canupp v. Sheldon*, 2009 WL 4042928, at *9 (M.D. Fla. Nov. 23, 2009) ("In determining whether there was fraud or collusion, the court examines whether the settlement was achieved in good faith through arms-length negotiations, whether it was the product of collusion between the parties and/or their attorneys, and whether there was any evidence of unethical behavior or want of skill or lack of zeal on the part of class counsel.").

Here, the Settlement was reached after arms-length negotiations between experienced counsel, which included a full-day, in-person mediation session before retired United States Circuit Court Judge Michael A. Hanzman, Esq. ("Judge Hanzman"), an experienced and highly respected mediator who frequently mediates complex litigations.  *See* Berger Decl. at ¶¶24-28; *see also In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *52 (S.D. Fla. Apr. 20, 2012) ("[T]he Settlement was reached in the absence of collusion, [was] the product of informed, good-faith, arms-length negotiations between the Parties and their capable and experienced counsel, and was reached with the assistance of . . . a well-qualified and experienced mediator."); *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) (presence of

"highly experienced mediator" pointed to the "absence of collusion").  In particular, the mediation began at 10:00 am and lasted until 6:00 pm.  Judge Hanzman had worked throughout the day to narrow the gap between Lead Plaintiffs' and Defendants' negotiating positions.  Finally, Judge Hanzman recommended a settlement of $7.9 million on a double-blind basis which all parties accepted.

### 3.  The Relief That the Settlement Provides for the Settlement Class Is Adequate in Light of the Costs and Risks of Further Litigation

In determining whether a settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account...the costs, risks, and delay of trial and appeal," as well as other relevant factors. FED. R. CIV. P. 23(e)(2)(C).  Typically, this factor is considered the most important factor for the Court to consider when evaluating the proposed settlement.[2]

As discussed in detail in the Berger Declaration and below, continued litigation of the Action presented a number of risks, including that Lead Plaintiffs might have been unable to establish liability and damages.  *See* Berger Decl. at ¶¶41-47.  Additionally, continuing this litigation through additional discovery, defeating Defendants' opposition to class certification, summary judgment, trial and appeals would impose substantial additional costs on the Settlement Class and would result in extended delays before any recovery could be achieved.  The Settlement, which provides a $7.9 million cash payment for the benefit of the Settlement Class, avoids these further costs and delays.

---

[2] This factor encompasses four of the six factors used in the traditional *Bennett* analysis: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; [and] (4) the complexity, expense and duration of litigation." 737 F.2d at 986.

### a. The Risks of Establishing Liability and Damages Support Approval of the Settlement

Although Lead Plaintiffs and Lead Counsel believe the claims asserted against Defendants are meritorious, they recognize that this Action presented a number of significant risks to establishing both liability and damages.

### i. Risks to Proving Liability

As set forth below, Lead Plaintiffs would have faced substantial challenges in proving that Defendants' statements and omissions were materially false and misleading when made and that the statements were made with intent to defraud investors.

Defendants would have argued – as they did in their motion to dismiss briefing – that Lead Plaintiffs could not prove that any Defendant knowingly made statements with the requisite intent to defraud or with severe recklessness, especially because Defendants argued that they believed that a misinterpretation of GAAP does not establish a strong inference of scienter. *See* Berger Decl. at ¶43; *see also* ECF No. 47. Defendants argued that the misstated financial statements were the result of a good faith error in how they interpreted GAAP, and that they did not learn their interpretation was incorrect until they secured new auditors. Further, Defendants would argue that the Individual Defendants' trading histories and bonuses also fail to establish any inference of scienter. *Id*.

While Defendants unsuccessfully asserted certain of these arguments in their motion to dismiss, the Court was required to accept all allegations in the Complaint as true. There was a significant possibility that Defendants could have succeeded in these arguments at subsequent stages of the litigation when allegations in the Complaint would need to be supported by admissible evidence. *See* Berger Decl. at ¶45. On all these issues, Lead Plaintiffs would have to prevail at

several stages—on a motion for summary judgment and at trial, and if it prevailed on those, on the appeals that would likely follow—which would likely have taken years. *See id.* at ¶46.

### ii.    Risks to Proving Damages and Loss Causation

Even assuming that Lead Plaintiffs overcame the risks outlined above and successfully established liability, Lead Plaintiffs would have confronted considerable, additional challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover.").

Loss causation posed a particularly significant risk to Lead Plaintiffs in this action.  This is because on the first trading day following the corrective disclosure, the price of Celsius stock actually rose slightly, before declining significantly the next trading day.  *See* Complaint at ¶89. Put differently, it took two trading days for the price of Celsius stock to decline as a result of the revelation of the truth, and Defendants would have asserted that the causal chain was broken.  In addition, Defendants would have argued that some analysts did not appear to place much importance on the Restatement.   If the Court or a jury agreed with Defendants that Lead Plaintiffs could not satisfy their burden to establish loss causation, the Class would have received nothing.

Defendants would also contend that Lead Plaintiffs bear the burden of proof in "disaggregating" the impact of confounding, non-fraud related information from any actionable disclosures and that Lead Plaintiffs would not be able to so.  These disputed issues would have boiled down to a "battle of experts" at trial.  Defendants would have undoubtedly presented a well-qualified expert who would opine that the Class's damages were small or nonexistent.  As Courts have long recognized, the uncertainty as to which party's expert's view might be credited by the jury presents another substantial litigation risk in securities cases. *See Carpenters Health &Welfare*

11

*Fund v. Coca-Cola Co*., 2008 WL 11336122, at *8 (N.D. Ga. Oct. 20, 2008) ("The reaction of a jury to such expert testimony is highly unpredictable and [as a result of this unpredictability] 'a jury could be swayed by experts for Defendants', and find that there were no damages or only a fraction of the amount of damages Lead Plaintiffs contended.") (quoting *In re Am. Bank Note Holographies, Inc., Sec. Litig*., 127 F. Supp. 2d 418, 426-427 (S.D.N.Y. 2001)). Thus, proving loss causation and damages at summary judgment or at trial would have significant risks making the Settlement the most beneficial outcome for the Class.

> **b.      The Settlement Represents a Favorable Percentage of Likely Recoverable Damages**

The Settlement Amount presents a favorable recovery when considering the aggregate damages that could have been established at trial.  Assuming that Lead Plaintiffs prevailed on all liability and damages issues at trial (which was far from certain), Lead Plaintiffs' expert has estimated that the range of damages recoverable at trial was $45.5 million to $78.5 million. Accordingly, the $7.9 million Settlement recovery represents approximately 10.1% to 17.4% of the estimated class-wide damages likely recoverable at trial, assuming that Lead Plaintiffs were successful in proving liability at trial.  If Defendants' arguments prevailed at summary judgment or trial, the Settlement Class would have recovered nothing or significantly less.

This recovery aligns with other court-approved settlements, where the recovery was a similar or a smaller percentage of the damages.  *See, e.g.*, *Tung v. Dycom Indus., Inc.*, Case No. 18-cv-81448, at ECF No. 95 (S.D. Fla. Oct. 13, 2020) (approving settlement of 5.7% of the maximum possible recovery); *Thorpe v. Walter Inv. Mgmt.*, 2016 WL 10518902, at *10 (S.D. Fla. Oct. 17, 2016) (approving settlement of 5.5% of maximum possible recovery); *Cabot E. Broward 2 LLC v. Cabot*, 2018 WL 5905415, at *5 (S.D. Fla. Nov. 9, 2018) (citing a study finding securities class actions "recover[] between 5.5% and 6.2% of the class members" total estimated losses); *In*

*re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses). Therefore, the Settlement is a favorable outcome for the Class.

### c.   The Costs and Delays of Continued Litigation Support Approval of the Settlement

The substantial costs and delays required before any recovery could be obtained through litigation also strongly support approval of the Settlement.

While this case settled after Lead Plaintiffs engaged in a substantial investigation and defeated Defendants' motion to dismiss, obtaining a litigated verdict in the Action would have required significant additional time and expenses. In the absence of the Settlement, achieving recovery would have required: (i) lengthy and expensive fact discovery, including numerous depositions; (ii) defeating Defendants' opposition to class certification; (iii) conducting complex and expensive expert discovery; (iv) briefing an expected motion for summary judgment and pre-trial motions; (v) a trial involving substantial fact and expert testimony; and (vi) post-trial motions. In addition, no matter what the outcome was at trial, it is almost certain that appeals would be taken from any verdict. Even if Lead Plaintiffs succeeded at these multiple stages, there would have been substantial expense and delay for a recovery for the Class.

The Settlement of $7.9 million avoids the cost, length, and uncertainty of continued litigation, while providing an immediate, significant, and certain recovery for the Class.

### d.   All Other Rule 23(e)(2)(c) Factors Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of

attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)."  Each of these factors supports approval of the Settlement here.

*First*, the procedures for processing the Settlement Class members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation.  Here, the potential class members will submit, by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by the claimants, the Claims Administrator, KCC, will determine each claimant's eligibility to participate and calculate their Recognized Claims based on the Court-approved Plan of Allocation.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest rejection.  Any claim disputes that cannot be resolved will be presented to the Court for determination.

All Authorized Claimants will then be issued checks and each Authorized Claimant, including Lead Plaintiffs, will receive a *pro rata* share of the recovery.  After an initial distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants in an equitable and economic fashion.  Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes and attorneys' fees and expenses, if any, shall be contributed to any appropriate non-profit charitable organization(s) serving the public interest unaffiliated with any party or their counsel.  This is a standard method in securities class actions and has long been found to be effective.  *See In re Immucor Sec. Litig.,*

2007 U.S. Dist. LEXIS 111135, at *11 (N.D. Ga. Sep. 26, 2007) (concluding "that the pro-rata nature of the Plan of Allocation is fair to the Class as a whole").

*Second*, the relief provided for the Class in the Settlement is also adequate when the Court factors in the terms of the proposed award of attorneys' fees.  As discussed in the accompanying motion requesting attorneys' fees and expenses, the requested fee of 25% of the Settlement Fund and litigation expenses of $343,716.03, to be paid upon approval by the Court, are reasonable in light of the efforts of Lead Counsel and the risks in the litigation. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991) ("The majority of common fund fee awards fall between 20% to 30% of the fund," which "may be adjusted in accordance with the individual circumstances of each case.").  Courts regularly approve awards of attorneys' fees that are higher. *See, e.g.*, *Dukes v. Air Canada*, 2020 WL 496144, at *1 (M.D. Fla. Jan. 30, 2020) (approving attorneys' fees and costs representing 33.3% of settlement fund); *Hanley v. Tampa Bay Sports & Entm't*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding fee larger than 1/3 of the common settlement fund and noting that "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund") (collecting cases).

*Third*, Rule 23 asks the Court to consider the fairness of the proposed settlement in light of any agreements required to be identified under Rule 23(e)(3).  *See* FED. R. CIV. P. 23(e)(2)(C)(iv). Here, as explained in Lead Plaintiffs' motion for preliminary approval, the only such agreement is the Parties' confidential Supplemental Agreement defining Defendants' right to terminate the Settlement if the number of Class Members who request exclusion from the Settlement Class exceeds a certain threshold.  This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement.

### 4.      The Settlement Treats Class Members Equitably Relative to Each Other

The proposed Settlement also treats members of the Class equitably relative to one another. As discussed above in Part IV, pursuant to the Plan of Allocation, eligible claimants approved for payment will receive their *pro rata* share of the recovery based on their transactions in Celsius stock.  Lead Plaintiffs will receive the same level of *pro rata* recovery (based on its Recognized Claim as calculated under the Plan of Allocation) as all other Class Members.  This allocation ensures equitable treatment among the Settlement Class.

### 5.      Other Factors Considered by the Eleventh Circuit Support Approval of the Settlement

Other factors considered by the Eleventh Circuit support approval of the Settlement, including the reaction of the Settlement Class to the Settlement and the stage of proceedings at which the Settlement was achieved.  *Bennett*, 737 F.2d at 986.  Under the Preliminary Approval Order, the deadline for Class Members to exclude themselves from the Settlement Class or object to the Settlement is January 10, 2024.  To date, no objections to the proposed Settlement have been received.  One request for exclusion from the Settlement has been received from a putative class member.  *See* Cavallo Decl. at ¶13.  Lead Plaintiffs will file a reply by January 24, 2024 addressing all requests for exclusion and objections received.  This reaction from the Settlement Class supports approval for the Settlement.  *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017).

Further, the stage of proceedings at which the Settlement was achieved also supports its approval.  Here, as discussed above, the Settlement was reached after months of hard-fought litigation.  As a result, Lead Counsel "had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation."  *Francisco v. Numismatic Guar.*

*Corp.*, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008).   In sum, all the factors that are to be considered under Rule 23(e)(2) support a finding that the Settlement is fair, reasonable, and adequate.

## V.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

The standard of review of a proposed Plan of Allocation for distribution of the Settlement Fund is the same as that for approving a settlement: it must be "fair, adequate and reasonable" and not collusive. *In re Netbank, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 162835, at *7 (N.D. Ga. Nov. 9, 2011).   A plan of allocation need not be precise, but "is [] sufficient where ... there is 'a rough correlation' between the settlement distribution and the relative amounts of damages recoverable by Class Members." *In re Terazosin Hydrochloride Antitrust Litig.*, 2005 U.S. Dist. LEXIS 43082, at *16 (S.D. Fla. Apr. 19, 2005) (alterations in original); *see also Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("An allocation formula need only have a reasonable, rational basis.") (alterations in original).   Courts give great weight to the opinion of experienced counsel in evaluating plans of allocation. *See Yang v. Focus Media Holding, Ltd.*, 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014) ("When evaluating the fairness of a Plan of Allocation, courts give weight to the opinion of qualified counsel.").

The proposed Plan of Allocation here was developed by Lead Plaintiffs' damages expert in consultation with Lead Counsel, and it provides a fair and reasonable method to allocate the Net Settlement Fund among Class Members.   In developing the Plan, Lead Plaintiffs' damages expert calculated the amount of estimated artificial inflation in the price of Celsius's common stock, which allegedly was proximately caused by Defendants' misleading statements, by considering the price changes in Celsius's common stock in reaction to the alleged corrective disclosures, and adjusting for price changes attributable to market and industry factors. *See* Notice at Page 11.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each properly documented share of Celsius common stock purchased or otherwise acquired during the Class Period. *See* Notice at Page 10. In general, the Recognized Loss Amount will be the lesser of the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase and sale price of the stock. *See* Notice at Page 10.

Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Class Members who suffered losses as a result of the alleged misconduct. To date, no objections to the proposed Plan of Allocation have been received. *See* Berger Decl. at ¶40.

## VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

In connection with the Settlement, the Parties have stipulated to the certification of the Settlement Class. As detailed in Lead Plaintiffs' brief in support of preliminary approval, the Settlement Class satisfies all the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. *See* ECF No. 114. None of the facts regarding certification of the Settlement Class have changed since Lead Plaintiffs submitted its motion for preliminary approval, and there has been no objection to certification. Accordingly, Lead Plaintiffs respectfully request that the Court certify the Settlement Class under Rules 23(a) and (b)(3).

## VII.   CONCLUSION

Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate. Proposed orders will be submitted after the deadlines for objecting and seeking exclusion from the Settlement Class have passed.

Dated: January 10, 2024

Respectfully submitted,

*/s/ Daniel L. Berger*
Daniel L. Berger (*pro hac vice*)
Caitlin M. Moyna (*pro hac vice*)
Vincent J. Pontrello (*pro hac vice*)
Mica A. Cocco (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Emails: dberger@gelaw.com
       cmoyna@gelaw.com
       vpontrello@gelaw.com
       mcocco@gelaw.com

*Counsel for Lead Plaintiff and Lead Counsel
for the Proposed Class*

Robert D. Klausner
**KLAUSNER KAUFMAN JENSEN &
LEVINSON**
7080 NW 4th Street
Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com

*Liaison Counsel for City of Atlanta Police
Officers' Pension Plan and City of Atlanta
Firefighters' Pension Plan*

Jeffrey Reeves
**THE REEVES LAW FIRM, LLC**
1100 Peachtree Street
Suite 250
Atlanta, GA 30309
Tel.: (404) 795-6139
Fax: (888) 209-5048
Email: jeff@reeveslawfirmpc.com

*Additional Counsel for City of Atlanta Police
Officers' Pension Plan and City of Atlanta
Firefighters' Pension Plan*

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 10, 2024, I authorized the electronic filing of the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses of all counsel of record.

_/s/ Daniel L. Berger_
Daniel L. Berger

**Grant & Eisenhofer P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com
