**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 22-80418-CV-MIDDLEBROOKS

CITY OF ATLANTA POLICE OFFICERS' PENSION PLAN and CITY OF ATLANTA FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,

        Plaintiffs,

        -v-

CELSIUS HOLDINGS, INC., JOHN FIELDLY, and EDWIN NEGRON-CARBALLO,

        Defendants.

<u>CLASS ACTION</u>

**DECLARATION OF DANIEL L. BERGER IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION, CERTIFICATION OF CLASS AND APPOINTMENT <u>OF CLASS REPRESENTATIVES AND CLASS COUNSEL</u>**

Daniel L. Berger, counsel with Grant & Eisenhofer P.A, ("Grant & Eisenhofer P.A." or "Lead Counsel")[1] submits the following declaration in support of Lead Plaintiffs' motion for final approval of (1) the $7.9 million Settlement resolving all claims in the Action; (2) certification of the proposed Class and appointment of Lead Plaintiffs as Class Representatives and appointment of Lead Counsel as Class Counsel; and (3) the proposed Plan of Allocation, and declares as follows:

1.      I, Daniel L. Berger, am a Principal of the law firm Grant & Eisenhofer P.A., Lead Counsel for Lead Plaintiffs City of Atlanta Police Officers' Pension Plan ("Atlanta Police Officers") and City of Atlanta Firefighters' Pension Plan ("Atlanta Firefighters") (together, "Lead Plaintiffs"). I am an attorney duly licensed to practice in all state courts of the State of New York, the Eastern and Southern Districts of New York, and the United States Courts of Appeals for the 1st, 2nd, 3rd, 6th, 7th, and 9th Circuits.  I have been admitted *pro have vice* to appear before the Court in this Action.[2] I have been actively involved in the prosecution and resolution of this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my active participation and supervision of material aspects of the Action as well as my discussions with my colleagues at Grant & Eisenhofer.

2.      I submit this declaration in support of Lead Plaintiffs' motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the Settlement, which provides for a cash settlement amount of $7,900,000 (the "Settlement Amount"); approval of the proposed Plan of

---

[1] Unless otherwise defined, all defined terms used herein have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation" or the "Settlement Agreement") dated August 2, 2023. ECF No. 115-1.
[2] ECF Nos. 31 and 41.

1

Allocation of the settlement proceeds; certification of the proposed settlement class; certification of Lead Plaintiffs as Class Representatives; and appointment of Lead Counsel as Class Counsel.

3. Because of the Court's familiarity with the Action, this Declaration does not elaborate on every event during this litigation. Rather, this Declaration summarizes the material events leading to the Settlement and the basis on which Lead Counsel and Lead Plaintiffs recommend that the Court grant final approval of the Settlement.

## I. OVERVIEW

4. Lead Plaintiffs have obtained a recovery of $7.9 million in cash to benefit the Settlement Class. If approved, the Settlement will resolve all claims against Defendants Celsius Holdings, Inc. ("Celsius" or the "Company"), John Fieldly and Edwin Negron-Carballo (collectively, "Defendants"). The Settlement Class is defined as all Persons who, directly or through an intermediary, purchased or otherwise acquired Celsius common stock at any time during the period between August 12, 2021, and March 1, 2022 inclusive, and were damaged thereby.

5. Although Lead Plaintiffs and Lead Counsel believe that the claims asserted are meritorious, continued litigation through trial—and the appeals that would likely ensue—pose significant risks that made any recovery uncertain.

6. The $7.9 million recovery results from hard-fought litigation and Lead Counsel's diligent prosecution of the Action, which included, among other things:

    i. Conducting an extensive factual investigation, including the identification of potential witnesses, and preparing a detailed and comprehensive Amended Class Action Complaint (ECF No. 44 or the "Complaint") to satisfy the heightened pleading standards of the PSLRA;

    ii. Overseeing the work of a private investigator to investigate claims and examine witnesses;

    iii. Engaging and overseeing the work of consulting experts in areas requiring specialized knowledge such as the Generally Accepted Accounting Principles ("GAAP");

iv.   Vigorously opposing and defeating the motion to dismiss filed by Defendants;

v.   Propounding discovery requests on Defendants and third parties, negotiating the scope of those requests with Defendants, and receiving and reviewing nearly ten-thousand documents;

vi.   Preparing and filing a motion for class certification;

vii.   Preparing and defending Lead Plaintiffs' representatives for depositions pursuant to Rule 30(b)(6); and

viii.   Preparing for and participating in extensive settlement negotiations conducted over the course of an in person, day-long mediation session, mediated by retired United States Circuit Court Judge Michael A. Hanzman, a widely respected mediator.

7.   By the time of the Settlement, Lead Plaintiffs and Lead Counsel had a thorough and realistic understanding of the strengths and weaknesses of the parties' positions concerning liability and damages, their respective abilities to prove or defend the claims at trial, and Defendants' ability to pay a substantial judgment.

8.   The Settlement's $7.9 million cash recovery is well within the range of reasonableness and achieves the certainty of a substantial recovery to the Settlement Class. Particularly given the substantial risks associated with continuing on in litigation—including the significant risk of obtaining no recovery at all—Lead Counsel firmly believe we obtained the best available recovery on behalf of the Settlement Class.

9.   In connection with the Settlement, Lead Counsel proposed a Plan of Allocation to equitably distribute the Net Settlement Fund consistent with Lead Plaintiffs' theory of damages. The Plan of Allocation was developed by Lead Plaintiffs' damages expert in conjunction with Lead Counsel.

10.   For all the reasons discussed in this Declaration, its attached exhibits and in the accompanying memorandum, including the quality of the result obtained and the numerous

significant litigation risks discussed fully below, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement and the Plan of Allocation are fair, reasonable, and adequate and should be approved.

## II.  LITIGATION

### A.  OVERVIEW OF THE ACTION

11.    Celsius is a consumer-packaged goods company known for providing healthy energy drinks, workout supplements, and protein bars.  *See* Complaint at ¶26.

12.    This dispute arises out of Defendants' misapplication of an accounting rule, FASB's ASC 718, which resulted in the overstatement of Celsius's profitability in its financial statements. Lead Plaintiffs contend that these financial statements were false and misleading in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and that Celsius misapplied ASC 718 to boost its net income.  These allegations were based on Celsius's own public disclosures, as well as interviews with former Celsius employees and consultation with Lead Plaintiffs' accounting expert.

13.    The complaint asserts that the falsity of Celsius's financial statements was revealed on March 1, 2022, when Celsius announced that the Company could not timely file its 2021 annual report due to, among other things, "material errors in previous filings."  *See* Complaint at ¶83. Specifically, Celsius "determined that the calculation and expense of noncash share-based compensation … were materially understated…"  *Id*.  As a result of the "material errors," Celsius restated certain financial metrics, including net income and net income per share.  *Id.* at ¶¶84-85. Lead Plaintiffs' Complaint also alleges that after the March 1, 2022 announcement, the price of Celsius shares declined, causing substantial losses to investors.  Complaint at ¶89.

14.    Defendants vigorously deny that they violated federal securities laws related to the allegations described above and asserted a myriad of defenses in response to Lead Plaintiffs' claims.

4

### B.    COMMENCEMENT OF THE ACTION

15.    The initial complaint in this Action was filed on March 16, 2022, against Defendants in the Southern District of Florida.  ECF No. 1.  The complaint asserted claims under Sections 10(b) and Section 20(a) of the Exchange Act.  *Id.*  On May 16, 2022, Lead Plaintiffs filed a Motion for Appointment as Lead Plaintiffs and Approval of Lead Counsel.  ECF No. 33.  Two other Celsius shareholders also filed lead plaintiff motions.  *See* ECF Nos. 24 and 34.  On June 6, 2022, the Court granted Lead Plaintiffs' Motion and appointed Atlanta Police Officers and Atlanta Firefighters as Lead Plaintiffs and Grant & Eisenhofer P.A. as Lead Counsel.  ECF No. 41.  Lead Plaintiffs then conducted a thorough investigation with the help of a paid, private investigator who interviewed several former Celsius employees, and their accounting expert.

16.    On July 8, 2022, Lead Plaintiffs filed the amended Complaint, alleging that Defendants disseminated materially false and misleading statements regarding Celsius's financial reporting during the Class Period.  *See* ECF No. 44.  The operative Complaint alleged violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against Defendants, and violations Section 20 of the Exchange Act against John Fieldly and Edwin Negron-Carballo.  *Id.*

### C.    DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT

17.    From the outset of the Action, Defendants have denied all of Lead Plaintiffs' allegations and have consistently maintained, and zealously argued, that they never made statements that were false or misleading.

18.    On August 5, 2022, Defendants filed a motion to dismiss the Complaint (ECF No. 47).  Lead Plaintiffs filed their opposition on August 26, 2022 (ECF No. 48), and Defendants filed their reply on September 9, 2022 (ECF No. 49).

19.    On November 21, 2022, the Court entered an order referring the Motion to Dismiss to United States Judge Bruce E. Reinhart for Report and Recommendation.  ECF No. 51.  On

December 13, 2022, the parties participated in a Zoom hearing on Defendants' Motion to Dismiss before Judge Reinhart. ECF No. 54. On February 13, 2023, Judge Reinhart issued a Report and Recommendation on Defendants' Motion to Dismiss the Complaint (the "Report and Recommendation"). ECF No. 55. On March 22, 2023, the Court entered an Order adopting the Report and Recommendation, granting Defendants' Motion as to John Fieldly and denying Defendants' Motion as to Celsius and Edwin Negron-Carballo. ECF No. 62.

### D.   LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

20.   On May 18, 2023, Lead Plaintiffs filed a Motion for Class Certification (ECF No. 95), and Defendants filed their opposition on June 15, 2023 (ECF No. 100). Lead Plaintiffs' reply in further support of class certification was due July 20, 2023. *See* ECF No. 92. In connection with the Motion for Class Certification, Lead Plaintiffs collected, reviewed and produced documents that support their motion. In addition, representatives from both Atlanta Police Officers' and Atlanta Firefighters' were deposed by Defendants in person in Atlanta, Georgia. Defendants also deposed representatives of Lead Plaintiffs' outside investment managers who made the decisions to purchase Celsius securities on Lead Plaintiffs' behalf. Shortly after Defendants' filed their opposition to Class Certification, the parties agreed to engage in confidential mediation to resolve the Action.

### E.   SETTLEMENT

21.   While Lead Plaintiffs and Lead Counsel believe that the claims asserted in the Action have merit, they are mindful of potential weaknesses in Lead Plaintiffs' claims as well as the expense and length of continued proceedings necessary to prosecute the Action through trial, Lead Plaintiffs believed that it would be beneficial to explore the possibility of a settlement.

22.   While settlement was ultimately achieved through the parties' participation in mediation, that result was made possible only through Lead Counsel's diligent work and Lead

Plaintiffs' dedication and persistence over the course of the Action and leading up to the settlement discussions.

23.     Prior to the mediation, Lead Plaintiffs' Counsel engaged and consulted with Frank Torchio of Forensic Economics to assist with evaluating potential damages to the putative Class in this Action.  Based on various assumptions he made about the composition of the Class and their likely trading patterns, Mr. Torchio estimated that the total class-wide damages ranged from $45.5 million to $78.5 million.

24.     On July 12, 2023, the parties and their counsel participated in a full day mediation with Michael A. Hanzman ("Judge Hanzman") of Bilzin Sumberg Baena Price & Axelrod LLP ("Bilzin Sumberg").  Judge Hanzman joined Bilzin Sumberg as a mediator after serving as a Circuit Court Judge for the Eleventh Judicial Circuit of Florida for twelve years.

25.     After many hours of negotiations, Judge Hanzman made a mediator's proposal to resolve the Action, which the parties each accepted on a double-blind basis on July 12, 2023.  The parties thereafter executed a Term Sheet memorializing their agreement, which included, among other things, the parties' agreement to fully and finally resolve the Action in return for a settlement payment of $7,900,000 for the benefit of the Class, subject to the negotiation of the terms of the Stipulation of Settlement and approval by the Court.

26.     On July 14, 2023, counsel for the parties notified the Court via telephone that the parties had reached an agreement in principle.  On July 17, 2023, the parties filed a notice advising the Court of the settlement.  ECF No. 109.

27.     Over the next few weeks, Lead Counsel worked diligently to prepare the Stipulation of Settlement and accompanying documents to bring the settlement to the Class for its consideration.

On August 3, 2023, Lead Plaintiffs moved to preliminarily approve the settlement and the manner of giving notice of the settlement to the proposed class. ECF No. 114.

28.     On August 30, 2023, the Court granted the motion to approve the settlement and the manner of giving notice of the settlement to the proposed class for settlement purposes. In this Order, the Court scheduled a final settlement approval hearing for January 31, 2024. ECF No. 117.

## III.   THE PLAN OF ALLOCATION

29.     The Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class (hereinafter "Plan of Allocation").[3]   The Plan of Allocation is a plan for distributing the balance of the Settlement Fund after any Court-awarded attorneys' fees and expenses, notice and administration costs, escrow fees, and all applicable taxes are deducted (i.e., "Net Settlement Fund").

30.     The Plan of Allocation was developed on the basis of an event study performed by Mr. Torchio, and, as is typical in such cases, it was calculated using estimates of the impact of the relevant corrective disclosures.  It provides that the Net Settlement Fund will be distributed to Settlement Class Members who submit timely and valid Proof of Claim Release Forms to the Claims Administrator and that only those who suffered a Recognized Loss on their transactions in Celsius common stock during the Class Period will be eligible to participate ("Authorized Claimants").  The Plan of Allocation provides that Settlement Class Members will be eligible to participate in the distribution of the Net Settlement Fund only if they purchased or otherwise acquired Celsius common stock between August 12, 2021 and March 1, 2022, inclusive.  A Settlement Class Member will be eligible to receive a distribution Fund only if that person has an overall loss, after all profits from

---

[3] The Notice of Pendency and Proposed Settlement of Class is included in the Claims Package, which is Exhibit A to the Declaration of Lance Cavallo on Behalf of Claims Administrator KCC ("Cavallo Decl.") attached hereto as Exhibit 1.

transactions in Celsius common stock are subtracted from all losses.  No distributions will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

31.     The proposed Plan of Allocation was designed to achieve an equitable and rational distribution of the Net Settlement Fund, consistent with Lead Plaintiffs' damages theory.  It was developed in consultation with Frank Torchio of Forensic Economics, who has more than thirty years of experience in assisting with complex financial valuations and damages issues, including the development of plans of allocation.  It is based on Mr. Torchio's analysis of allegations and it was prepared without reference to any particular trading patterns of Lead Plaintiffs.  Lead Plaintiffs and Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitable distribute the Net Settlement Fund among Authorized Claimants.

### A.     ELIGIBLE SECURITIES

32.     The securities for which an Authorized Claimant may be entitled to receive a distribution from the Net Settlement Fund consist of Celsius common stock purchased or otherwise acquired during the Class Period.

### B.     RECOGNIZED LOSS AMOUNTS

33.     For each purchase or acquisition of Celsius common stock that is properly documented, a "Recognized Loss Amount" will be calculated according to the formulas described in the Plan of Allocation.  Such "Recognized Loss Amounts" will be aggregated across all purchases to determine the "Recognized Claim" for each Settlement Class Member.

34.     The Plan of Allocation provides that the Claims Administrator will allocate to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants.  The calculations made pursuant to the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial.  Nor are the

calculations pursuant to the Plan of Allocation intended to be estimates of the amounts to be paid to Authorized Claimants pursuant to the Settlement.  Rather, the computations under the Plan of Allocation are only a method to weigh the claims of claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.

35.     The Court retains jurisdiction to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

### C.     CALCULATION OF RECOGNIZED LOSS FOR EXCHANGE ACT CLAIMS

36.     A Recognized Loss Amount is calculated for each Settlement Class Member who purchased or otherwise acquired Celsius common stock during the Class Period between August 12, 2021 through March 1, 2022, inclusive, based on when that claimant purchased and sold its Celsius common stock, or retained such Celsius common stock beyond the end of this period.

37.     Based on the formulas presented below, a Recognized Loss Amount will be calculated for each purchase or acquisition of Celsius common stock made during the period on or between August 12, 2021 through March 1, 2022 that is listed on the Proof of Claim and Release Form and for which adequate documentation is provided.  If a Recognized Loss Amount calculates to a negative number or zero under the formula below, that Recognized Loss Amount will be zero.

38.     The Plan of Allocation calculates a Recognized Loss Amount (per share) in the following ways for Authorized Claimants:

1.     For investors who sold prior to the close of trading on March 1, 2022, the Recognized Loss is zero.

2.     For investors who retained through the close of trading on March 1, 2022, and sold on or before May 27, 2022, the Recognized Loss Amount is equal to the lesser of: (i) the inflation at the time of purchase; and (ii) the purchase price minus the Average Closing Price up to the date of the sale, as set forth in Table 1 in the Plan of Allocation, but the computed Recognized Loss cannot be less than zero.

3.     For investors who retained at the close of trading on May 27, 2022, the Recognized Loss Amount is equal to the lesser of: (i) the inflation at the time of purchase; and

10

(ii) the difference between the purchase price and $54.70, but the computed Recognized Loss cannot be less than zero.

### D. NOTICE TO THE CLASS AND THE CLASS'S REACTION

39.     Attached hereto as Exhibit 1 is the Declaration of Lance Cavallo, on behalf of Class Administrator KCC Class Action Services, LLC, which provides details confirming that every aspect of the notice program provided for in the Court's Notice Order (ECF No. 117) was followed.

40.     Pursuant to the Notice Order, Settlement Class Members' objections to, or requests to be excluded from, the Settlement, the Plan of Allocation, or Lead Counsel's request for fees and expenses are required to be filed and received by January 10, 2024.  To date, Lead Counsel has received no objections to any aspect of the Settlement, and only one request to be excluded from it.[4] Any objections or additional requests for exclusion will be addressed in the reply papers, which will be filed on or before January 24, 2024.

## IV.     FACTORS AFFECTING SETTLEMENT

### A. THE RISKS AND COSTS OF FURTHER LITIGATION DEMONSTRATE THE FAIRNESS AND ADEQUACY OF THE SETTLEMENT

41.      Lead Plaintiffs faced formidable obstacles to recovery at trial, with respect to liability, and damages.

42.     To prevail on their Section 10(b) claims in this Action, Lead Plaintiffs would have to prove each of the following elements: (1) material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation.[5]

---

[4] Cavallo Decl. at ¶13.

[5] *Dura Pharms. Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

43.     Lead Plaintiffs faced a heavy burden in establishing scienter.  Defendants likely would have argued—as they did in their motion to dismiss briefing—that (i) misinterpreting GAAP does not establish scienter; (ii) no scienter arose from Celsius' Restatement of its financials; (iii) the Individual Defendants' trading history rebuts any inference of scienter; (iv) the Individual Defendants' bonuses do not establish scienter; (v) senior leadership roles do not establish scienter; and (vi) the Individual Defendants simply made a good faith error in its accounting. *See* ECF No. 47.

44.     This action also presented difficult issues pertaining to loss causation.  In particular, the price of Celsius's common stock rose immediately following Defendants' Restatement of Celsius's financial statements, before falling two days later.  Defendants would have argued that the Restatement was not connected to the drop in Celsius's stock price.  If Lead Plaintiffs had not been able to prove loss causation, either at the summary judgment phase or during trial, the Class would have received nothing.

45.     Even though Lead Plaintiffs survived Defendants' motion to dismiss, where the Court was required to accept all allegations in the Complaint as true, Lead Plaintiffs still faced significant hurdles associated with engaging in lengthy and challenging discovery, defeating Defendants' opposition to class certification, and would likely have faced additional challenges at the summary judgment phase.  Summary judgment-related motion practice would have likewise been costly and time consuming.  Assuming Lead Plaintiffs were able to surpass those significant hurdles, they would have faced a complex trial with issues that are likely to be unfamiliar to the fact-finders, and potential appeals following any favorable judgment, processes which would no doubt take years to resolve.

46.     If Defendants had prevailed on any of the dispositive motions or at trial, not only would the proposed Class have expended additional time and money for the continued litigation, but the proposed Class would also recover nothing.  And even if the proposed Class succeeded on the

12

merits at trial and recovered a judgment larger than the Settlement Fund, given the time value of money, such a future recovery may not be as beneficial than the recovery available now. Moreover, Defendants would likely appeal any judgment in favor of Lead Plaintiffs following a trial, further delaying any potential recovery.

47. Accordingly, in light of the substantial risks of establishing liability, loss causation, and damages here, Lead Plaintiffs and Lead Counsel believe that the recovery of $7.9 million is a favorable outcome for members of the Settlement Class. For all these reasons, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, and that it is in the best interests of the Settlement Class to accept the immediate and substantial benefit conferred by the Settlement, rather than incur the significant risk that the Settlement Class might recover a smaller amount, or nothing at all.

**B. LEAD COUNSEL'S EXPERIENCE IN SECURITIES LITIGATION**

48. Lead Counsel are leaders in the specialized area of securities litigation. As demonstrated by their Firm Résumé, Lead Counsel are highly experienced in the securities litigation. *See* the Declaration of Daniel L. Berger in Support of Lead Plaintiffs' Motion for Attorneys' Fees and Expenses at Exhibit C. Lead Counsel possess extensive experience litigating securities class actions and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. In particular, given that this case involved complicated issues and affected a nationwide class, the expertise of Lead Counsel was essential in achieving the result. Informed by this experience, they developed and implemented strategies to secure the $7.9 million Settlement.

49. Lead Counsel also worked with Liaison Counsel Robert D. Klausner of Klausner, Kaufman, Jensen & Levinson and Additional Counsel Jeffrey A. Reeves of The Reeves Law Firm, LLC. *See* the Declaration of Jeffrey A. Reeves in Support of Lead Plaintiffs' Motion for Attorneys'

Fees and Expenses at Exhibit A; *see also* the Declaration of Robert D. Klausner in Support of Lead Plaintiffs' Motion for Attorneys' Fees and Expenses at Exhibit A.

50.     The quality of the work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition.  Celsius was represented by Alston & Bird LLP, a very well-respected corporate defense firm.  In the face of this experienced, formidable, and well-financed opposition, Lead Counsel was still able ultimately to persuade them to settle the case on terms favorable to the Settlement Class.

## V.      CONCLUSION

51.     For the foregoing reasons, Lead Counsel respectfully requests that the Court grant final approval of the Settlement, approve the Plan of Allocation, certify the Settlement Class, certify Lead Plaintiffs as Class Representatives, and appoint Lead Counsel as Class Counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of January, 2024, at New York, NY

*/s/ Daniel L. Berger*
Daniel L. Berger