**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 22-80418-CV-MIDDLEBROOKS

|  |  |
|---|---|
| CITY OF ATLANTA POLICE OFFICERS' PENSION PLAN and CITY OF ATLANTA FIREFIGHTERS' PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>      -v-<br><br>CELSIUS HOLDINGS, INC., JOHN FIELDLY, and EDWIN NEGRON-CARBALLO,<br><br>      Defendants. | <u>CLASS ACTION</u> |

**LEAD PLAINTIFFS' MOTION FOR AN AWARD OF**
**<u>ATTORNEYS' FEES AND EXPENSES</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................... ii

I.      PRELIMINARY STATEMENT ..................................................................... 1

II.     PROCEDURAL AND FACTUAL BACKGROUND............................................. 1

III.    REQUEST FOR ATTORNEYS' FEES ........................................................... 2

        A.      LEAD PLAINTIFFS' COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS'
                FEES FROM THE COMMON FUND .................................................... 2

        B.      THE COURT SHOULD AWARD A PERCENTAGE OF THE COMMON FUND .................... 2

        C.      THE REQUESTED PERCENTAGE IS FAIR AND REASONABLE ..................................... 3

        D.      THE CAMDEN I FACTORS FURTHER CONFIRM THAT THE REQUESTED FEE IS
                FAIR AND REASONABLE ........................................................................... 4

        E.      LEAD COUNSEL'S REQUEST FOR PAYMENT OF LITIGATION EXPENSES IS
                FAIR AND REASONABLE ......................................................................... 13

IV.     CONCLUSION............................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allapattah Servs. v. Exxon Corp.*,
454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...............................................................................12

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................................................10

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988)..........................................................................................10

*Berman v. GM Ltd. Liab. Co.*,
2019 U.S. Dist. LEXIS 200947 (S.D. Fla. Nov. 15, 2019).................................................11

*Blum v. Stenson*,
465 U.S. 886 (1984)................................................................................................................3

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)................................................................................................................2

*Burns v. Falconstor Software, Inc.*,
2014 U.S. Dist. LEXIS 203061 (E.D.N.Y. Apr. 10, 2014) ..................................................4

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
946 F. 2d 768 (11th Cir. 1991) .................................................................................... *passim*

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
587 F. Supp. 2d 1266 (N.D. Ga. 2008)................................................................................13

*Cent. R.R. & Banking Co. v. Pettus*,
113 U.S. 116 (1885)................................................................................................................2

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..........................................................................10, 11

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
2012 WL 12540344 (N.D. Ga. Oct. 26, 2012) ..............................................................6, 8, 9

*David v. Am. Suzuki Motor Corp.*,
2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ........................................................................8

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D. Ga. 1993)......................................................................................2, 11

*Dukes v. Air Canada*,
    2020 WL 496144 (M.D. Fla. Jan. 30, 2020) ................................................................4

*In re Equifax Inc. Customer Data Breach Litig.*,
    2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .......................................................6, 10, 14

*Faught v. Am. Home Shield Corp.*,
    668 F.3d 1233 (11th Cir. 2012) .......................................................................3

*In re Friedman's, Inc. Sec. Litig.*,
    2009 WL 1456698 (N.D. Ga. May 22, 2009) .................................................10, 11

*Hanley v. Tampa Bay Sports & Entm't LLC*,
    2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) .....................................................4

*Ingram v. Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ......................................................................7

*Internal Imp. Fund Trs. v. Greenough*,
    105 U.S. 527 (1882) .....................................................................................2

*Johnson v. Georgia Highway Express*,
    488 F.2d 714 (5th Cir. 1974) .........................................................................5

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) .....................................................................................2

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ..................................................................................3, 6

*In re NetBank, Inc. Sec. Litig.*,
    2011 WL 13353222 (N.D. Ga. Nov. 9, 2011) .................................................7, 13

*Norman v. Hous. Auth. of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) .....................................................................10

*In re OCA, Inc. Sec. & Derivative Litig.*,
    2009 U.S. Dist. LEXIS 19210 (E.D. La. Mar. 2, 2009) ......................................4

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...........................................................6

*In re Rayonier Inc. Sec. Litig.*,
    2017 WL 4542852 (M.D. Fla. Oct. 5, 2017) .................................................6, 13

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992) ...............................................................7, 10

iii

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .......................................................................................10

*Roubert v. Capital One Fin. Corp.*,
  2023 WL 5916714 (M.D. Fla. July 10, 2023) ...................................................................3

*Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*,
  2002 U.S. Dist. LEXIS 25721 (S.D. Fla. May 3, 2002) ....................................................4

*Sprague v. Ticonic Nat'l Bank*,
  307 U.S. 161 (1939)........................................................................................................2, 3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................................2

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ......................................................................................3, 6

Lead Plaintiffs City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan (together, "Lead Plaintiffs"), by and through Lead Counsel Grant & Eisenhofer P.A., respectfully submit this memorandum of law in support Lead Plaintiffs' motion for an award of attorneys' fees and expenses.[1]

## I. PRELIMINARY STATEMENT

In connection with the Settlement achieved as described in Lead Plaintiffs Unopposed Motion for Final Approval of Settlement, filed on this same day, Lead Counsel respectfully applies for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in the amount of 25% of the $7,900,000 Settlement Amount (i.e., $1.975 million including any accrued interest) and litigation expenses of $343,716.03. This fee request is supported by Lead Plaintiffs (*see* Declaration of David Brand ("Brand Decl.") at ¶¶8-11, submitted herewith) and is well within the range of percentages awarded in class actions in this Circuit. It is also reasonable when viewed against the result achieved and the risks Lead Counsel assumed.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Lead Plaintiffs respectfully refer the Court to the Declaration of Daniel L. Berger in Support of Lead Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement (*See* ECF No. 122; the "Final Approval Berger Decl.") for a full discussion of: (i) the factual background and procedural history of the Action; (ii) the efforts of Lead Counsel in prosecuting the claims in this Action; (iii) the negotiations resulting in the Settlement; and (iv) the reasons why the Settlement and the Plan of Allocation are fair and reasonable and should be approved.

---

[1] All capitalized terms not otherwise defined shall have the meanings set forth in the Stipulation of Settlement dated August 2, 2023. ECF No. 115-1.

### III.     REQUEST FOR ATTORNEYS' FEES

#### A.     LEAD PLAINTIFFS' COUNSEL IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

The Supreme Court and the Eleventh Circuit have long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F. 2d 768, 771 (11th Cir. 1991). Awarding attorneys' fee awards from a common fund not only provides compensation, but also encourages skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 353 (N.D. Ga. 1993) ("The purpose of awarding fees is to compensate successful attorneys for the benefits they have achieved for the class as a result of the attorneys' efforts, for the risks the attorneys have taken in prosecuting a long and complex case, and for the hours and expenses the attorney has invested in the case."). Indeed, the Supreme Court has emphasized that private securities actions, such as this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the Securities and Exchange Commission. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

#### B.     THE COURT SHOULD AWARD A PERCENTAGE OF THE COMMON FUND

The Supreme Court has consistently held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fee should be determined on a percentage-of-the-fund basis. *See, e.g.*, *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 532 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 124-25 (1885);

2

*Sprague*, 307 U.S. at 166-67; *Boeing*, 444 U.S. at 478-79. By 1984, this point was so well established that the Supreme Court needed no more than a footnote to make it in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").

Likewise, in the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2012); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999); *see also Roubert v. Capital One Fin. Corp.*, 2023 WL 5916714, at 10 (M.D. Fla. July 10, 2023).

The requested 25% fee is reasonable under the circumstances of this case and falls squarely within the range of percentages regularly approved in the Eleventh Circuit.

## C.   THE REQUESTED PERCENTAGE IS FAIR AND REASONABLE

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were offering their services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum*, 465 U.S. at 903, n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

Lead Counsel seeks a fee award of 25% of the Settlement Amount. Courts within the Eleventh Circuit have found similar fees to be within the range of typical fee awards in common-fund cases. *See Camden I*, 946 F.2d at 774-75 ("The majority of common fund fee awards fall between 20% to 30% of the fund," and district courts consider the middle of that range – 25% – as a "benchmark" that "may be adjusted in accordance with the individual circumstances of each

3

case."). It is also not unusual for courts to approve attorneys' fee percentages higher than the 25% requested by Lead Counsel in this instance. *See, e.g.*, *Dukes v. Air Canada*, 2020 WL 496144, at *1 (M.D. Fla. Jan. 30, 2020) (approving attorneys' fees and costs representing 33.3% of settlement fund); *Hanley v. Tampa Bay Sports & Entm't LLC*, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding fee larger than 1/3 of the common settlement fund and noting that "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund"); *Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*, 2002 U.S. Dist. LEXIS 25721, at *8 (S.D. Fla. May 3, 2002) (30% of a $12 million settlement). In addition, the 25% fee request is also consistent with fees awarded by courts in other Circuits in similarly sized securities class action settlements.[2] When judged against Eleventh Circuit precedent, and compared to fees awarded in class action settlements of similar magnitude, the requested 25% fee is fair and reasonable.

**D. THE *CAMDEN I* FACTORS FURTHER CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE**

In *Camden I*, the Eleventh Circuit recommended that district courts consider the following factors in determining whether a requested percentage fee award is reasonable, including:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[2] *See, e.g., Burns v. Falconstor Software, Inc.*, 2014 U.S. Dist. LEXIS 203061, at *26-27 (E.D.N.Y. Apr. 10, 2014) (finding 30% to be the median of requested attorneys' fees when the settlement is between $5 million and $10 million); *In re OCA, Inc. Sec. & Derivative Litig.*, 2009 U.S. Dist. LEXIS 19210, at *62-63 (E.D. La. Mar. 2, 2009) ("In reported securities cases involving funds in the $5 million to $10 million range, attorneys' fee awards are generally within the 25 to 33 1/3 per cent range.").

946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  A court may also properly consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel . . . and the economics involved in prosecuting a class action."  *Id*. at 775.  A full consideration of these factors provides strong support for approval of the 25% fee request.

### 1.    The Time and Labor Required

The time and diligent effort expended by Lead Plaintiffs' Counsel to achieve the Settlement supports the requested fee.  Lead Counsel committed extensive resources to developing the challenging aspects of Lead Plaintiffs' claims and overcoming the obstacles introduced by Defendants during the course of this hard-fought litigation.  As discussed in greater detail in the Final Approval Berger Decl. at ¶6, Lead Counsel, among other things: (i) conducted an extensive factual investigation into the claims asserted in the Action and prepared a detailed and comprehensive Amended Complaint (ECF No. 44; the "Complaint"); (ii) oversaw the work of a private investigator to investigate claims and examine witnesses; (iii) consulted accounting experts with specialized knowledge of GAAP; (v) vigorously opposed and defeated Defendants' motion to dismiss; (vi) engaged in challenging discovery; (vii) prepared and filed a motion for class certification; and (viii) participated in extensive settlement negotiations.

In total, Lead Plaintiffs' Counsel expended over 2,770 hours in this litigation with a resulting lodestar of $2,149,034.00 (counsel's hours multiplied by their hourly rates).  *See* the accompanying Declaration of Daniel L. Berger in Support of Lead Plaintiffs' Motion for Attorneys' Fees and Expenses ("Fee Motion Berger Decl.") at Exhibit D.[3]  The time and labor

---

[3] This lodestar amount is based on Lead Plaintiffs' Counsels' current hourly rates. The Supreme Court has approved the use of current hourly rates to calculate the base lodestar figure as a means

expended by Lead Plaintiffs' Counsel amply support the requested fee.  *See In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *2 (M.D. Fla. Oct. 5, 2017) (noting when assessing fee request that "Lead Counsel also demonstrated the substantial time and effort they put into the case as well as the uncertainty of the ultimate outcome").

While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of a 25% award. *See, e.g.*, *Waters*, 190 F.3d at 1298 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison.").  Here, based on the $7,900,000 Settlement Fund, the requested 25% fee award (or $1,975,000 before interest) represents a ***negative*** multiplier of approximately 0.92 to Lead Plaintiffs' Counsel's total lodestar.[4] Given that multipliers ***between 2 and 5*** are commonly awarded in complex class actions with substantial contingency risks, the 0.92 multiplier requested here confirms the reasonableness of the requested fee. *In re Equifax Inc. Customer Data Breach Litig.*, 2020 WL 256132, at *39 (N.D. Ga. Mar. 17, 2020) *rev'd in part* 999 F.3d 1247 (11th Cir. 2021) (awarding fee representing 2.62 multiplier and describing it as "consistent with multipliers approved in other cases"); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5, n.4 (N.D. Ga. Oct. 26, 2012) (noting multiplier of 4 times lodestar is "well within" the accepted range); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (finding that lodestar multipliers

---

of compensating for the delay in receiving payment, inflation, and the loss of interest. *Missouri* v. *Jenkins*, 491 U.S. 274, 284 (1989).

[4] The multiplier is calculated by dividing the total fee requested by Counsel's lodestar. The actual realized multiplier will decline over time, as Lead Plaintiffs' Counsel will devote additional attorney time to preparing for the Settlement Hearing, overseeing the processing of Claims by the Claims Administrator, and overseeing the distribution of the Settlement proceeds to Settlement Class Members with valid Claims.

"in large and complicated class actions" tend to range from 2.26 to 4.5); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694-96 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4). Lead Counsel's request here – which represents a negative multiplier to lodestar – is therefore reasonable.

### 2.    The Novelty and Difficulty of the Questions Involved

As courts have recognized, "multi-faceted and complex" issues are "endemic" to cases based on alleged violations of federal securities law, *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992), and "securities class action litigation is 'notably difficult and notoriously uncertain.'" *In re NetBank, Inc. Sec. Litig.*, 2011 WL 13353222, at *3 (N.D. Ga. Nov. 9, 2011). This Action was no exception. Lead Plaintiffs' faced a number of material challenges to establishing liability and proving loss causation in this Action. *See* Final Approval Berger Decl. at ¶¶41-47. Specifically, Defendants asserted that Lead Plaintiffs would be unable to prove several elements of their claims, including scienter, loss causation and damages.

Lead Plaintiffs faced substantial risk in proving Defendants made the alleged false and misleading statements with the requisite scienter. Defendants argued, and would have continued to argue, that Lead Plaintiffs could not prove that any Defendant knowingly made statements with the requisite intent to defraud or with severe recklessness. Defendants argued in their motion to dismiss that misinterpreting GAAP does not establish scienter. *See* ECF No. 47. Defendants would have further argued that Celsius' Restatement of its financials is not dispositive of scienter. *See id.* Finally, Defendants would have continued to argue that the Individual Defendants' substantial stock holdings further undercut an inference of scienter. *See id.*

While Defendants unsuccessfully asserted these arguments in their motion to dismiss, when the Court was required to accept all allegations in the Complaint as true, there was a

significant possibility that Defendants could have succeeded in reasserting these arguments at subsequent stages of the litigation, including summary judgment, trial, and the appeals that would likely follow.

Lead Plaintiffs had faced additional challenges regarding loss causation. Defendants would contend, as they did in their opposition to Class Certification, that Celsius' Restatement had no price impact, i.e., did not cause Celsius investors' losses. These disputed issues would have boiled down to a "battle of experts" at trial. Defendants would have undoubtedly presented a well-qualified expert who would opine that the Class's damages were small or nonexistent.

The Settlement Class thus faced the very real risk of a lower recovery than achieved through the Settlement, or no recovery at all. However, Lead Counsel overcame these obstacles and achieved an excellent result for the Class. Success in the face of these obstacles strongly supports the requested fee award.

### 3. The Skill Experience, Reputation and Ability of Plaintiffs' Counsel

Two of the *Johnson* factors that the Court should consider are "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one," *David v. Am. Suzuki Motor Corp*., 2010 WL 1628362, at *8 n.15 (S.D. Fla. Apr. 15, 2010), and "the experience, reputation, and ability of the attorneys" involved. *Camden I*, 946 F.2d at 772 n.3; *see also Columbus Drywall*, 2012 WL 12540344, at *4. "The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation." *Id*.

From the inception of the Action, Lead Counsel engaged in a skillful and concerted effort to obtain the maximum recovery for the Settlement Class. As noted above, this case required an in-depth investigation, a thorough understanding of complicated issues regarding GAAP, and the skill to respond to a host of legal and factual issues raised by Defendants during the litigation.

8

Lead Counsel practices extensively in the highly challenging field of complex class action litigation and are some of the nation's leading securities class action litigation firms.  *See* Fee Motion Berger Decl. at Exhibit C.  Without question, Lead Counsel's skills and experience were important factors in obtaining the excellent result achieved in this Settlement.

This Court should also consider "the quality of the opposition" that Lead Plaintiffs' attorneys faced.  *See Columbus Drywall*, 2012 WL 12540344, at *4 (finding the capabilities of all attorneys favored an award of attorney's fees because the "settlement would not have been possible absent skilled counsel representing the class").  Here, Defendants were represented by Alston & Bird LLP, a large and well-respected firm with significant resources that vigorously contested the Action.  Lead Counsel's ability to obtain a favorable Settlement for the Class despite this formidable legal opposition confirms the quality of the representation that Lead Counsel provided.  Therefore, this factor also supports the fee requested.

### 4. The Preclusion of Other Employment

The considerable amount of time spent prosecuting this case – over 2,770 hours (Fee Motion Berger Decl. at Exhibit D) – was time that Lead Plaintiffs' Counsel was not able to devote to other matters.  Moreover, Lead Plaintiffs' Counsel expended the time and effort without any assurance that they would be successful or that they would ever be compensated for their hard work.  Accordingly, this factor also supports the requested fee.

### 5. The Customary and Contingent Nature of the Fee

The Court should also consider two factors: the customary fee and whether it is fixed or contingent.  The "customary" fee in a class action lawsuit of this nature is a contingency fee because virtually no class member possesses a sufficiently large stake in the litigation to justify

9

paying attorneys on an hourly basis. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir. 1988).

The contingent nature of Lead Plaintiffs' Counsel's fees should be given substantial weight in assessing the requested fee award. *See In re Friedman's, Inc. Sec. Litig.*, 2009 WL 1456698, at *3 (N.D. Ga. May 22, 2009); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("[T]he contingent fee risk is an important factor in determining the fee award."). Courts have consistently recognized that the risk that class counsel could receive no recovery is a major factor in determining the award of attorney's fees. *See Ressler*, 149 F.R.D. at 654-55 ("The substantial risks of this litigation abundantly justify the fee requested . . ."). "A contingency fee arrangement often justifies an increase in the award of attorneys' fees," *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990), "because if the case is lost a lawyer realizes no return for investing time and money in the case." *Equifax*, 2020 WL 256132, at *33.

Success in contingent litigation such as this is never assured. In other securities class actions, plaintiffs' counsel have suffered major defeats after years of litigation and investing millions of dollars of time but received no compensation at all. Even a victory at trial is not a guarantee of success.[5] As noted above, Lead Plaintiffs' claims faced multiple hurdles that could have precluded or substantially limited any recovery. Indeed, because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result,

---

[5] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997), *reh'g en banc denied,* 129 F.3d 617 (11th Cir. 1997) (overturning $81 million jury verdict*); In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605, at *1 (S.D. Fla. Apr. 25, 2011) (overturning estimated $42 million jury verdict for plaintiff class, and granting judgment as a matter of law to defendants).

and that such a result would be realized, if at all, only after considerable and difficult effort. Accordingly, the substantial risks of the Action also justify the requested fee.

### 6.    The Amount Involved and Results Achieved

"It is [also] well-settled that one of the primary determinates of the quality of the work performed is the result obtained." *Friedman's*, 2009 WL 1456698, at *3 (alternation in original); *see also Domestic Air*, 148 F.R.D. at 351 ("The most important element in determining" class counsel's fee "is the result obtained for the class through the efforts of such counsel.").

As noted above, the excellent recovery obtained was accomplished despite the substantial difficulties of proving liability for securities fraud and the other risks in this case. The $7,900,000 cash Settlement that Lead Counsel obtained represents 10.1% to 17.4% of the Settlement Class's estimated recoverable damages. The recovery obtained in this Action thus also supports approval of the requested fee.

### 7.    The Undesirability of the Case

In certain circumstances, the "undesirability" of a case can be a factor in justifying the award of a requested fee. *Camden I*, 946 F.2d at 772 n.3; *see Berman v. GM Ltd. Liab. Co.*, 2019 U.S. Dist. LEXIS 200947, at *37 (S.D. Fla. Nov. 15, 2019) ("Class Counsel's willingness to assume such risk makes a reasonable premium appropriate"). Inherently, there are risks in financing and prosecuting a complex litigation of this type. Lead Counsel undertook representation of Lead Plaintiffs in this Action knowing the litigation would require the expenditure of substantial time and money without any assurance of being compensated for their efforts. *See Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1364 (S.D. Fla. 2011) ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight.").

11

Apart from the risk of no recovery, deferring fees in an undertaking like this while at the same time advancing hundreds of thousands of dollars in expenses would deter many firms. *See Allapattah Servs. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1216 (S.D. Fla. 2006) (recognizing "the risks to Class Counsel in accepting representation at the early stages of the proceedings"). Thus, this factor also weighs in favor of awarding the requested fee.

### 8. Awards in Similar Cases

As discussed in Section III, Lead Counsel's requested fee of 25% falls within the range of fees awarded in class action cases in this Circuit. *See Camden I*, 946 F.2d at 774-75. Moreover, courts in this District and Circuit have frequently awarded higher percentage fees in comparable class action settlements. *See* Section III, *supra*. Accordingly, this factor strongly supports the reasonableness of the requested fee.

### 9. The Time Required to Reach the Settlement

As described in the Final Approval Berger Declaration at ¶6, a substantial amount of time and effort was required to resolve the Action and the Settlement was achieved after months of hard-fought litigation. This is not a case where the parties reached an early settlement. To the contrary, before any agreement to settle was reached, Lead Counsel vigorously opposed and defeated Defendants' motions to dismiss, moved for class certification, conducted a significant and thorough investigation, engaged in challenging discovery including reviewing the thousands of pages of documents that Defendants and third parties produced, and engaged in substantial settlement and mediation efforts. *Id*. This significant amount of time expended on the prosecution of the claims, totaling over 2,770 hours dedicated to the Action by Lead Plaintiffs' Counsel, further supports the requested fee award. *See* Fee Motion Berger Decl. at Exhibit D.

### 10.     The Reaction of the Class

Through January 8, 2024, 99,996 copies of the Notice have been mailed to potential Settlement Class Members and their nominees, and the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*. *See* Declaration of Lance Cavallo, submitted by the Court-approved Claims Administrator, KCC Class Action Solutions LLC ("Cavallo Declaration"), at ¶¶8-9.  The Notice advised Class Members that Lead Counsel would apply for fees not to exceed 25% of the Settlement Fund.  *See id.* at Exhibit A.  While the deadline for filing objection to the fee is January 10, 2024, to date, there have been no filed objections to the requested fee.  *See id.* at ¶12.[6]  This weighs in favor of awarding the requested fees.  *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017).

### E.     LEAD COUNSEL'S REQUEST FOR PAYMENT OF LITIGATION EXPENSES IS FAIR AND REASONABLE

Lead Counsel also requests payment of $343,716.03 for the expenses incurred by Lead Plaintiffs' Counsel in prosecuting the Action.  It is well-established that "class counsel's reasonable and necessary out-of-pocket expenses should be reimbursed." *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 587 F. Supp. 2d 1266, 1272 (N.D. Ga. 2008); *see also NetBank*, 2011 WL 13353222, at *4 ("It has long been held that 'plaintiff's counsel is entitled to be reimbursed from the class fund for the reasonable expenses incurred in this action'").

The expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in litigation and routinely charged to clients in non-contingent cases who are billed by the hour.  The expenses include, among other things, costs for experts, investigation,

---

[6] Should any objections be filed, they will be addressed in Lead Counsel's reply papers to be filed on or before January 24, 2024.

online research, court fees, mediation fees, telephone, photocopying, postage, and out-of-state travel. *See* Fee Motion Berger Decl. at ¶¶6-12. Lead Plaintiffs' damages expert: (i) analyzed whether Celsius securities traded on an efficient market and supplied an expert report stating as much in support of Lead Plaintiffs' motion for class certification; (ii) prepared to be deposed in connection with Lead Plaintiffs' motion for class certification; (iii) prepared damages estimates to guide settlement negotiations; and (iv) helped develop the Plan of Allocation. Lead Plaintiffs' accounting expert helped interpret applicable accounting regulations that are at the heart of the allegations as Lead Plaintiffs' were preparing their Amended Complaint, and also analyzed documents produced during discovery, including workpapers and related documents produced by Defendants' accountants. *Id*. at ¶10. A complete breakdown of the expenses incurred by Lead Plaintiffs' Counsel in each category is included in Exhibit B to the Fee Motion Berger Declaration.

The Notice informed potential Class Members that Lead Counsel would apply for payment of Litigation Expenses in an amount not to exceed $350,000. *See* Notice at Page 3. The total amount of Litigation Expenses requested by Plaintiffs' Counsel is $343,716.03, an amount less than the figure listed in the Notice. To date, there have been no objections to the request for expenses.

Because the expenses incurred by Lead Plaintiffs' Counsel are of the type for which payment is regularly approved in common fund cases and were essential to the successful prosecution and resolution of the Action, the requested expenses should be approved. *See Equifax Customer Data Breach*, 2020 WL 256132, at *40 (awarding expenses for "court reporter fees; document and database reproduction and analysis; e-discovery costs; expert witness fees; travel for meetings and hearings; paying the mediator; and other customary expenditures" and finding such expenses "are reasonable and were necessarily incurred on behalf of the class").

14

## IV.    CONCLUSION

For the reasons discussed above and in the accompanying Berger Declaration, Lead Counsel respectfully request that the Court: (i) award attorneys' fees in the amount of 25% of the Settlement Fund, plus interest earned at the same rate as earned by the Settlement Fund; and (ii) award $343,716.03 in payment of the reasonable Litigation Expenses that Lead Plaintiffs' Counsel incurred in prosecuting the Action.

Dated:    January 10, 2024

Respectfully submitted,

*/s/ Daniel L. Berger*
Daniel L. Berger (*pro hac vice*)
Caitlin M. Moyna (*pro hac vice*)
Vincent J. Pontrello (*pro hac vice*)
Mica A. Cocco (*pro hac vice*)
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Emails: dberger@gelaw.com
          cmoyna@gelaw.com
          vpontrello@gelaw.com
          mcocco@gelaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Proposed Class*

Robert D. Klausner
**KLAUSNER   KAUFMAN   JENSEN   & LEVINSON**
7080 NW 4th Street
Plantation, FL 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
Email: bob@robertdklausner.com

*Liaison Counsel for City of Atlanta Police Officers' Pension Plan and City of Atlanta*

15

*Firefighters' Pension Plan*

Jeffrey Reeves
**THE REEVES LAW FIRM, LLC**
1100 Peachtree Street
Suite 250
Atlanta, GA 30309
Tel.: (404) 795-6139
Fax: (888) 209-5048
Email: jeff@reeveslawfirmpc.com

*Additional Counsel for City of Atlanta Police Officers' Pension Plan and City of Atlanta Firefighters' Pension Plan*

16

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on January 10, 2024, I authorized the electronic filing of the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the email addresses of all counsel of record.

*/s/ Daniel L. Berger*
Daniel L. Berger

**Grant & Eisenhofer P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
Email: dberger@gelaw.com